# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA
BRADFORD;    See Attached Additional Parties Attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

GILBERT GARCIA, by and through his Successor in Interest, Paul
Garcia;    See Attached Additional Parties Attachment

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Orange County Superior Court

700 Civic Center Drive West, Santa Ana, California 92701
Central Justice Center Courthouse

| CASE NUMBER:<br>*(Número del Caso):* |
|---|
| 30-2020-01167237-CU-PO-CJC |

Judge Theodore Howard

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lanzone Morgan, LLP, 5001 Airport Plaza Drive, Suite 210, Long Beach, CA 90815; (562) 596-1700

| DATE:<br>*(Fecha)* | 10/27/2020 | DAVID H. YAMASAKI<br>Clerk of the Courts | Clerk, by<br>*(Secretario)* | *Dbml* | Dominique Carr | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Sunrise Senior Living Management, Inc

under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Gilbert Garcia v. Welltower OPCO Group, LLC, et al. | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

PAUL GARCIA, individually; RONALD GARCIA, individually; GARY GARCIA, individually,

Page __2__ of __3__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Gilbert Garcia v. Welltower OPCO Group, LLC, et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 100;

Page 3 of 3

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**LANZONE MORGAN, LLP**
**Ayman R. Mourad SBN 304161**
**Alexander S. Rynerson SBN 329956**
**5001 Airport Plaza Drive, Suite 210**
**Long Beach, California 90815**
**Telephone: 562-596-1700**
**Facsimile: 562-596-0011**

Attorneys for Plaintiffs, GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia, et al.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA, individually; RONALD GARCIA, individually; GARY GARCIA, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 100;<br><br>Defendants. | Case No.: 30-2020-01167237-CU-PO-CJC<br>Complaint Filed:     Assigned for all purposes:<br>Assigned to Department: Judge Theodore Howard<br>Hon.<br>Trial Dates:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Elder Abuse and Neglect (Welfare & Institutions Code sections 15600 et seq.)**<br><br>2. **Wrongful Death**<br><br>3. **Intentional Infliction of Emotional Distress** |

COME NOW Plaintiffs, who allege upon information and belief as follows:

### THE PARTIES

1.     Plaintiff GILBERT GARCIA (hereinafter referred to as "PLAINTIFF" or "GARCIA") is an individual who at all times relevant to this action was a domiciled in the County of Orange, State of California. GARCIA was at all relevant times, over the age of 65, and thus, was an elder pursuant to Welfare and Institutions Code § 15610.27.

2.      GARCIA passed away on July 3, 2020. His son and Successor in Interest, Paul Garcia, brings this action for Elder Abuse and Neglect pursuant to Welfare and Institutions Code section 15600 et seq. Pursuant to Code of Civil Procedure section 377.32 and Welfare and Institutions Code section 15657.2, Paul Garcia's declaration is filed concurrently herewith.

3.      Plaintiffs PAUL GARCIA, RONALD GARCIA, and GARY GARCIA are the surviving sons and lawful heirs of GARCIA. They bring the wrongful death action in their individual capacities.

4.      Defendants WELLTOWER OPCO GROUP LLC, a Delaware limited liability company, SUNRISE SENIOR LIVING MANAGEMENT, INC. and DOES 1 through 25, were the licensees and operators of the residential care facility for the elderly ("RCFE") known as SUNRISE VILLA BRADFORD, doing business at 1180 Bradford Ave, Placentia, CA 92870. Defendants WELLTOWER OPCO GROUP LLC, and SUNRISE SENIOR LIVING MANAGEMENT, INC., dba SUNRISE VILLA BRADFORD and DOES 1 through 25 (hereinafter referenced as the "FACILITY") were at all relevant times in the business of providing custodial care and services to residents as an RCFE. RCFEs are *not* health care providers; they only provide care and supervision to elderly residents.

5.      At all relevant times, Defendants SUNRISE SENIOR LIVING MANAGEMENT, INC. and DOES 26 through 50 (hereinafter, "MANAGEMENT DEFENDANTS") owned, operated, managed, participated in, authorized, and/or directed the conduct of the FACILITY.

6.      Plaintiff is informed and believes, and therefore alleges, that at all times relevant to this Complaint, DOES 1 through 100 were individuals and/or entities rendering care and services to GARCIA and whose conduct caused GARCIA's injuries, as alleged *infra*. (Defendants WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 100 are hereinafter collectively referenced as "DEFENDANTS").

7.      Plaintiff is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 100, and for that reason has sued such Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this Complaint to identify said Defendants

COMPLAINT FOR DAMAGES

1    once their identities are known.

2        8.    Plaintiff is informed and believes, and therefore alleges, that each Defendant
3    designated as a DOE was responsible in any actionable manner for the events and happenings
4    herein referred to, which proximately caused the injuries and damages to GARCIA as alleged
5    *infra*.

6                            **JURISDICTION AND VENUE**

7        9.    The Court has personal jurisdiction over all DEFENDANTS because
8    DEFENDANTS were, at all relevant times, doing business in the State of California, County of
9    Orange, as set forth *supra* as though set fully forth herein. While engaging in this business, the
10   conduct of DEFENDANTS caused injury to GARCIA in the State of California, County of
11   Orange, as set forth more fully *infra*.

12       10.    Venue in this judicial district is proper because DEFENDANTS conducted
13   business in this district in a manner which has caused injury to GARCIA, as set forth more fully
14   *infra*.

15   **DEFENDANTS ARE DIRECTLY AND VICARIOUSLY RESPONSIBLE FOR THE**
16                  **ABUSE AND NEGLECT OF GARCIA**

17       11.    Defendants WELLTOWER OPCO GROUP, LLC and SUNRISE SENIOR
18   LIVING MANAGEMENT, INC. are the co-licensees of SUNRISE VILLA BRADFORD.
19   Accordingly, the FACILITY is responsible for the "exercise of general supervision over the
20   affairs of the licensed facility" and for "establish[ing] policies concerning [that facility's]
21   operation in conformity with [California] regulations and the welfare of the individuals it serves."
22   (Cal. Code Regs., tit. 22, § 87205.)

23       12.    In addition, MANAGEMENT DEFENDANTS are and at all relevant times were
24   the owners of the FACILITY.

25       13.    Upon information and belief, Ruzica "Rose" Calabrese is and at all relevant times
26   was the FACILITY's administrator and Executive Director. Pursuant to Title 22 of the California
27   Code of Regulations § 87405, an administrator of an RCFE must "develop an administrative plan
28   and procedures to ensure clear definition of lines of responsibility, equitable workloads, and

                                    3

1    adequate supervision," "recruit, employ, and train qualified staff," and "ensure the provision of
2    services to the residents with appropriate regard for the residents' physical and mental well-being
3    and needs," among other things. (Cal. Code Regs., tit. 22, §87405 (h).) As such, Calabrese was
4    responsible for performing these duties in order to ensure the FACILITY had adequate staff to
5    supervise and care for GARCIA.

6    14.    DEFENDANTS were legally responsible for establishing and implementing
7    policies regarding the management and operation of the FACILITY, including the staffing, the
8    budgeting, and the training of employees, pursuant to Title 22 of the California Code of
9    Regulations § 87205.

10   15.    At all relevant times, DEFENDANTS managed, and/or controlled all aspects of the
11   operation and management of the FACILITY, including but not limited to the budget, the
12   staffing, staff training, the policy and procedures, accounts payable, accounts receivable, the
13   facility's development and leasing, general accounting, cash management, pricing,
14   reimbursement, capitalization, and profit and loss margins.  In fact, on the FACILITY's website,
15   visitors may seeking a career or job at the FACILITY click a link reading "JOIN OUR TEAM"
16   and are then directed to a general Sunrise Senior Living website. The website offers employment
17   opportunities at a number of Sunrise locations throughout the United States, Canada, and the
18   United Kingdom. Thus, MANAGEMENT DEFENDANTS maintain and actively participate in
19   the hiring of staff at every Sunrise facility, including the FACILITY.

20   16.    At all relevant times, DEFENDANTS through their managers, directors, officers,
21   and other agents created and authorized the budgets, policies, and procedures that employees
22   were required to implement and follow.

23   17.    At all relevant times, DEFENDANTS, and each of their tortious acts and omissions
24   as alleged herein were done in concert with one another in furtherance of their common design
25   and agreement to accomplish a particular result, namely placing profit over resident care by
26   ensuring that the FACILITY's beds were filled, but failing to properly manage, train, and
27   supervise staff to ensure that staff was adequate in training, supervision, and numbers to properly
28   care for GARCIA.

4

COMPLAINT FOR DAMAGES

18.     DEFENDANTS were the knowing agents and/or alter-egos of one another, and each of their officers, directors, and managing agents directed, approved, and/or ratified all of the acts and omissions of the other, and their agents and employees, thereby making each of them vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as alleged herein.

19.     Moreover, DEFENDANTS and each of them agreed with, approved, authorized, ratified, and/or conspired to commit all of the acts and omissions alleged herein.

20.     Executive Director Ruzica "Rose" Calabrese actually does take an active role in day-to-day management. By way of example, Calabrese, or another managing agent of the FACILITY, was required to sign all facility evaluation reports conducted by the California Department of Social Services. Further, Calabrese personally signed and sent numerous letters to residents and friends and family of residents at the FACILITY throughout the events and circumstances described herein. Calabrese also included her phone number in each letter and encouraged recipients to reach out to her personally with questions, comments, or concerns. Thus, Calabrese actively participates in the management and provision of services to residents like GARCIA.

**FIRST CAUSE OF ACTION**

**ELDER ABUSE AND NEGLECT**

**(Pursuant to Welfare and Institutions Code § 15600 et seq.)**

**[By GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia, against all DEFENDANTS]**

21.     Plaintiff hereby incorporates by reference the allegations set forth *supra* as though fully set forth herein.

22.     At all relevant times, GARCIA was an "elder adult" as defined in *Welfare and Institutions Code* § 15610.27. GARCIA was born on December 14, 1930, and was approximately 89 years of age during the events and circumstances described *infra*. At all relevant times, GARCIA was a resident of the County of Orange in the State of California.

23.     GARCIA was admitted as a resident to the FACILITY beginning approximately

August 12, 2017. DEFENDANTS voluntarily and intentionally assumed responsibility for providing supervisory and custodial care and services to GARCIA during his residency at the FACILITY. DEFENDANTS were therefore responsible for GARCIA's custodial needs, as well as his health, safety, and well-being.

24.   The FACILITY owed statutory, regulatory, and standard of care duties to GARCIA. Despite these duties, DEFENDANTS willfully, intentionally, and/or recklessly caused or permitted GARCIA to be injured and/or to be place in a situation such that his health and safety were in danger.

25.   GARCIA was a resident at the FACILITY when the novel coronavirus disease of 2019 ("COVID-19") pandemic began sweeping the world, the nation, and California. COVID-19 poses an extreme risk to vulnerable communities like the elderly or those with preexisting conditions, putting residents of assisted living facilities like the FACILITY at extremely high risk for complications or death related to COVID-19. GARCIA had recently turned 89 years old when the pandemic began, and suffered from a history of heart attacks and stroke, glaucoma, and hypertension. Further, GARCIA became a resident of the FACILITY due to his inability to independently perform his activities of daily living and need for assistance from FACILITY staff in such.

26.   On January 26, 2020, California had its first confirmed COVID-19 case. The California Department of Public Health ("CDPH") began releasing notices applicable to all California healthcare facilities, including the FACILITY, informing them of guidance and recommendations in preparing for and preventing COVID-19 infection.

27.   In late February, 2020, COVID-19 devastated a nursing home in Washington, infecting two-thirds of the residents, 47 workers, and killing over 40 people. The events were widely publicized and the extreme risk COVID-19 poses to elders became highly apparent. As an elderly resident of the FACILITY who suffered from multiple preexisting conditions, GARCIA was at high risk for complications or death related to COVID-19.

28.   Thus, DEFENDANTS had knowledge that GARCIA was substantially certain to suffer injuries if DEFENDANTS denied or withheld necessary services; or at a minimum

6

COMPLAINT FOR DAMAGES

1  DEFENDANTS consciously disregarded the substantially high risk that GARCIA would suffer
2  injuries if DEFENDANTS denied or withheld these necessary services.

3      29.    GARCIA suffered unnecessary pain, injury, and mental suffering when he
4  contracted COVID-19, which caused his death on July 3, 2020.

5      30.    As a direct and proximate result of DEFENDANTS' conduct, GARCIA was
6  allowed to suffer the injuries and death described *infra*.

7      **GARCIA'S DEATH FROM COVID-19 WAS A RESULT OF DEFENDANTS'**
8                          **WRONGFUL CONDUCT**

9      31.    GARCIA was, despite his advanced age, in relatively good health and spirits. He
10 was mentally alert and oriented to person, place, and time, and enjoyed a high level of
11 independence at the FACILITY. GARCIA ate his meals in the dining room and enjoyed frequent
12 outings and visits with his family.

13     32.    On March 4, 2020, California's Governor, Gavin Newsom, declared a state of
14 emergency in California, specifically emphasizing the vulnerability of California's elderly
15 community, and directing local and public health agencies to direct resources toward preparation
16 and control of COVID-19. However, the FACILITY failed to implement appropriate infection
17 control measures or follow local or public health guidelines in preparing for and preventing
18 COVID-19 spread. On March 11, 2020, the FACILITY sent a letter to friends and family of
19 residents informing them that the FACILITY was "discouraging" social visitors, but that visits
20 could be arranged by appointment. On March 12, 2020, FACILITY staff informed GARCIA's
21 son that residents were permitted to be checked out of the FACILITY for outings, if scheduled
22 in advance. Allowing FACILITY residents to leave the FACILITY for outings and return
23 rendered the FACILITY's infection control measures moot.

24     33.    Thereafter, on March 17, 2020, the FACILITY issued a letter stating that visitors
25 were prohibited, except essential medical providers, hospice care providers, and family members
26 of residents at the end of their life.

27     34.    On May 12, 2020, the Chief Executive Officer of SUNRISE SENIOR LIVING
28 MANAGEMENT, INC., Chris Winkle, sent a plea to residents and their friends and family,

1   detailing DEFENDANTS' lack of appropriate personal protective equipment ("PPE") such as
2   gloves, face masks, and gowns. The CEO's letter asked recipients to submit a prewritten message
3   to their local congressperson asking for increased access to PPE and increased financial support
4   due to the high cost of testing for COVID-19. Despite this plea, on May 15, 2020,
5   MANAGEMENT DEFENDANTS sent a letter stating DEFENDANT facilities maintained
6   sufficient PPE.

7        35.   On May 28, 2020, GARCIA exhibited weight loss and his physician ordered that
8   his blood pressure be monitored for a few days. GARCIA experienced a few days of
9   hypertension, in addition to a recent 5-pound weight loss, bringing his weight to 139 pounds.
10   Thus, DEFENDANTS knew, or should have known, GARCIA was at further increased risk of
11   complications or death related to COVID-19 due to his advanced age, weight loss, and
12   preexisting health conditions.

13        36.   On May 31, 2020, the FACILITY itself sent another plea for recipients to contact
14   their local congresspersons to secure more PPE for the FACILITY. Despite that the pandemic
15   showed no signs of slowing and local and public health recommendations continued to stress the
16   importance of infection control in communities like the FACILITY, the FACILITY began
17   relaxing its procedures. On May 31, 2020, the FACILITY announced its plan to resume group
18   dining.

19        37.   Despite DEFENDANTS' reiterations of the FACILITY's infection control
20   measures, like staff monitoring and screening, a FACILITY staff member tested positive for
21   COVID-19 on June 12, 2020. The next day, the FACILITY arranged for GARCIA to have his
22   hair cut by a third-party barber at the FACILITY. However, the FACILITY was supposedly still
23   maintaining a strict no-visitor policy, with exceptions for medical emergencies. Defendants
24   failed to adhere to infection control protocols by allowing third-parties, such as barbers, to enter
25   the FACILITY.

26        38.   On June 13, 2020, GARCIA reported being especially tired. On June 15, 2020,
27   GARCIA began experiencing diarrhea, which persisted for two days. GARCIA's family
28   contacted him via video call and witnessed a FACILITY staff member administering GARCIA's

COMPLAINT FOR DAMAGES

1 medications and eye drops with no gloves or gown on—the staff member wore only a mask.
2 Thus, the FACILITY Failed to follow infection protocol guidelines.

3       39.    On June 17, 2020, the FACILITY notified residents and families that all residents
4 and staff of the FACILITY would be tested for COVID-19 on June 18, 2020. In the afternoon of
5 June 17, GARCIA told his sons he was exhausted and had not eaten all day. Around 5:00 PM,
6 GARCIA began experiencing chills and FACILITY staff called GARCIA's son, Ronald,
7 suggesting Ronald come pick GARCIA up and take him to urgent care.

8       40.    Despite that doing so put Ronald at risk to COVID-19 exposure due to GARCIA's
9 symptoms and the presence of COVID-19 positive person(s) in the FACILITY, Ronald felt he
10 had no choice but to get GARCIA the care DEFENDANTS could not provide. Around 8:00 PM
11 on June 17, 2020, an urgent care physician tested GARCIA for COVID-19 and added that he
12 suspected a positive result due to GARCIA's temperature of 100.4 degrees Fahrenheit, cough,
13 and recent exposure to COVID-19. Ronald returned GARCIA to the FACILITY, where—after
14 being forced to wait in his vehicle for 15 minutes before staff arranged for his entry—he was
15 assisted inside by two staff members who lacked proper PPE and therefore did not follow
16 infection control protocols.

17       41.    FACILITY staff acted in direct contravention of the policies and procedures it held
18 out to residents and their loved ones when staff provided direct care to GARCIA without proper
19 PPE, despite the presence of COVID-19 symptoms and physician assessment suspecting
20 COVID-19.

21       42.    On June 18, 2020, GARCIA was experiencing confusion, and FACILITY staff
22 contacted his family and suggested they take him to the emergency room. Fearing further
23 exposure to COVID-19 for themselves and their loved ones, GARCIA's family requested that
24 DEFENDANTS call an ambulance. GARCIA was then transferred to Placentia-Linda Hospital.

25       43.    On June 20, 2020, GARCIA's COVID-19 test result came back positive. Two days
26 later, the FACILITY sent a notice that two residents and two staff members tested positive for
27 COVID-19.

28       44.    On June 26, 2020, DEFENDANTS' Senior Vice Presidents of Operations for the

COMPLAINT FOR DAMAGES

East and West Divisions sent a notice directing DEFENDANT facilities that had gone 14 consecutive days without a new confirmed COVID-19 case to begin moving to "Phase 1" of the Resumption of Operations plan. Phase 1 included socially distanced dining in community common areas, small group programming, outdoor visitation, and appointments with in-house hair stylists. However, the day before DEFENDANTS' letter indicating Phase 1 activities, the FACILITY sent its own letter explaining that on June 26, it would resume small group activities and communal dining, and that outdoor visitation would begin June 29. Given that the FACILITY received its COVID-19 test results on June 20, 2020, it should have been required to wait until at least July 3, 2020—fourteen days—to commence Phase 1 activities

45.     On June 26, 2020, the CDPH released a notice to long-term care facilities, like the FACILITY, providing guidance for resuming visitation. The notice directed that "Facilities experiencing an outbreak (i.e. one or more confirmed positive cases) should not resume visitation." The notice further recommended compliance with additional CMS guidance, including: cancel communal dining and all group activities; require residents to wear cloth face covering at all times; identify and restrict staff that work at multiple facilities to ensure they do not pose an increased risk; and review and revise interaction with vendors. Once again, the FACILITY acted in direct contravention of this when it proceeded with resuming communal dining and visitation while experiencing an outbreak. Further, the FACILITY provided no plan addressing the identification or restriction of staff that worked at multiple facilities.

46.     On June 29, 2020, a FACILITY staff member called Ronald Garcia to inquire about GARCIA's status. Ronald informed the staff member that GARCIA was still hospitalized. The staff member conceded to Ronald that on June 17, 2020, when GARCIA returned from the urgent care center, the FACILITY was "not ready" to receive him, but readmitted him despite the risks posed to GARCIA and other residents.

47.     Tragically, on July 3, 2020, GARCIA passed away from COVID-19 at the age of 89. GARCIA's three loving sons—one of whom had to take GARCIA to urgent care himself when DEFENDANTS were unable to assess or care for him—trusted DEFENDANTS to protect their father from COVID-19. GARCIA's sons received and read each update and letter from

COMPLAINT FOR DAMAGES

1  DEFENDANTS, all the while believing that DEFENDANTS were implementing appropriate
2  infection control measures. However, DEFENDANTS clearly failed to do so, which resulted
3  directly in the death of GARCIA.

4      48.    Even after a FACILITY staff member tested positive for COVID-19,
5  DEFENDANTS failed to ensure adhere to infection control protocols. Even after GARCIA began
6  experiencing COVID-19 symptoms, including fatigue, loss of appetite, and digestive issues,
7  DEFENDANTS did not take appropriate measures to control the spread of infection, and
8  continued to come into contact with him without proper infection control measures. Rather than
9  isolating GARCIA when he began experiencing symptoms, Defendants asked GARCIA's son to
10 personally transfer GARCIA to urgent care—at great risk to himself. Further, a staff member—
11 a licensed vocational nurse—admitted to Ronald Garcia that the facility was not prepared to
12 handle GARCIA when he returned with his suspected COVID-19 diagnosis.

13     49.    Evidently, DEFENDANTS did not have appropriate plans in place to control and
14 prevent COVID-19 from entering the FACILITY. Even after GARCIA left the FACILITY, it
15 continued to defy State, local, and national guidance from public health officials regarding proper
16 COVID-19 protocol.

17     50.    Upon information and belief, DEFENDANTS' conduct was the calculated result
18 of DEFENDANTS' scheme to prioritize profits over resident care by underfunding,
19 undertraining, and understaffing the FACILITY. This includes taking shortcuts in the hiring,
20 training, and retention of employees, and ignoring proper infection control measures.

21     51.    DEFENDANTS knew that this scheme would result in inadequate care and services
22 to the residents and that these shortcuts and willful ignorance of care needs posed an extreme risk
23 to the health, safety, and welfare of GARCIA as well as other residents.

24 **DEFENDANTS' WRONGFUL CONDUCT CONSTITUTES ELDER ABUSE AND**
25 **NEGLECT**

26     52.    The California Legislature has acknowledged that elders are particularly
27 susceptible to abuse and neglect at the hands of caretakers because of "physical impairments and
28 other poor health that place them in a dependent and vulnerable position." (Welf. & Inst. Code,

§ 15600.)  The Legislature made clear its public policy regarding the care of elderly adults, and sought to incentivize litigation to protect the rights of these vulnerable elders and prosecute those who engaged in elder abuse and neglect.

53.    "Elders," as protected by Welfare and Institutions Code § 15600 et seq. are defined at Welfare and Institutions Code § 15610.27 as California residents aged 65 or older.

54.    "Abuse," as it relates to elders, is defined at Welfare and Institutions Code § 15610.07 as either:

   a. "Physical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering."

   b. "The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering."

55.    "Neglect," as it relates to elders is defined at Welfare and Institutions Code § 15610.57 as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."

56.    State laws and regulations governing Residential Care Facilities for the Elderly set the standard of care in the assisted living home industry and help define the care due to elders. These laws and regulations are therefore appropriate in determining whether DEFENDANTS' conduct amounted to physical abuse, recklessness, oppression, fraud, or malice.  (See *Klein v. BIA Hotel Corp.* (1996) 41 Cal.App.4th 1133; *Gregory v. Beverly Enterprises* (2000) 80 Cal.App.4th 514.) Failure to exercise the degree of a care that a reasonable person in a like position would exercise with respect to caring for elders, then, can constitute neglect and therefore abuse of an elder pursuant to Welfare and Institutions Code § 15600 *et seq.*

57.    DEFENDANTS failed to exercise the degree of care that a reasonable person in a like position would exercise with respect to caring for GARCIA by, among other things, failing to take precautions to prevent GARCIA from contracting COVID-19, which caused his death. This was in strict contravention of DEFENDANTS' duties, including, but not limited to:

   a. Providing "[s]afe and healthful living accommodations and services…" (Cal. Code

12

1
Regs., tit. 22 § 87464(f)(2).)

2        b. Providing "[a]rrangements to meet health needs, including arranging

3          transportation..." (Cal. Code Regs., tit. 22 § 87464(f)(6).)

4        c. "To be accorded dignity in their personal relationships..." (Cal. Code Regs., tit. 22

5          § 87468.1(a)(1).)

6        d. "To provide safe, healthful and comfortable accommodations, furnishings, and

7          equipment." (Cal. Code Regs., tit. 22, § 87468.1(a)(2).)

8       58.    Although DEFENDANTS knew or should have known of these and other duties,

9 as also required by Title 22, DEFENDANTS failed to operate and provide care and services in

10 compliance with all applicable laws and regulations and with accepted standards and principles

11 that apply to providing services in such a facility as required by Title 22 of the California Code

12 of Regulations, and failed to provide sufficient oversight and management to ensure that these

13 violations did not occur. Specific examples of failure to comply with statutory and regulatory

14 duties include but are not limited to:

15        a. Failing to provide services and activities promoting safe, healthful, and

16          comfortable accommodations, that is, as care custodians (*Welfare and Institutions*

17          *Code* § 15610.17(j)), intentionally and/or recklessly exposing GARCIA to

18          COVID-19 by not controlling the infection in his environment.

19

20       59.    The specific examples of DEFENDANTS' violations of laws and regulations

21 specifically set forth *supra* are not meant to limit the numerosity of the allegations contained

22 herein but are simply illustrative of the depth of DEFENDANTS' malicious, oppressive, and/or

23 reckless conduct.

24       60.    By engaging in the conduct, neglect and abuse, as alleged *supra*, including but not

25 limited to the profit scheme by which the FACILITY undercapitalized, understaffed, and

26 undertrained their respective employees, despite the known risk to elders and dependent adults

27 while at the same seeking to increase residency rates to increase revenue, the FACILITY'S

28 actions were malicious, oppressive, fraudulent, and/or reckless.

13

COMPLAINT FOR DAMAGES

61.     In conceiving of, implementing, and carrying through with the profit scheme, the FACILITY willfully, knowingly, recklessly, and with conscious disregard for GARCIA's health, safety, and welfare, breached their duties to GARCIA and did so in a manner which was malicious, fraudulent, and oppressive.

62.     DEFENDANTS each willfully, intentionally, and/or recklessly caused or permitted GARCIA to be injured and/or placed in a situation such that his health was in danger as set forth *supra*.

63.     DEFENDANTS' actions, as alleged *supra*, created circumstances or conditions likely to cause great bodily harm, and DEFENDANTS willfully caused or permitted GARCIA to suffer, or inflicted upon him, unjustifiable physical pain, injuries, damages, suffering, and indignity.

64.     As a direct, actual, legal, and proximate cause of the conduct of DEFENDANTS, as alleged herein, GARCIA suffered unjustifiable and substantial physical pain, mental suffering, and indignity, in an amount according to proof at trial.

65.     Because of the malicious, oppressive, fraudulent, and/or reckless nature of DEFENDANTS' conduct, an award of punitive damages in an amount according to proof at trial is therefore justified and appropriate.

## SECOND CAUSE OF ACTION

## WRONGFUL DEATH

## [By PAUL GARCIA, GARY GARCIA, and RONALD GARCIA against all DEFENDANTS]

66.     Plaintiffs PAUL GARCIA, GARY GARCIA, and RONALD GARCIA (hereinafter the "HEIRS") hereby incorporate the allegations set forth *supra* as though fully set forth herein.

67.     GARCIA died on July 3, 2020, as an ultimate result of the acts and omissions of the DEFENDANTS, as set forth *supra*.

68.     The HEIRS are the surviving sons and rightful heirs of GARCIA and each brings this claim for wrongful death in his individual capacity.

69.     The DEFENDANTS owed standard of care duties to protect GARCIA from the

14

COMPLAINT FOR DAMAGES

1 │ abuse, and neglect alleged *supra*, which ultimately caused GARCIA's death. However, the
2 │ DEFENDANTS breached those duties by failing to prevent GARCIA from contracting COVID-
3 │ 19, which caused his death.

4 │      70.    The breaches of DEFENDANTS' duties caused injury and death to GARCIA.

5 │      71.    The DEFENDANTS' acts and omissions as alleged *supra* were the direct, actual,
6 │ legal, and proximate causes of GARCIA's injuries and death.

7 │      72.    GARCIA would not have suffered death but for DEFENDANTS' conduct and
8 │ breaches of duty.

9 │      73.    Prior to GARCIA's death, the HEIRS enjoyed the love, society, comfort, and
10 │ attention of their loving father.

11 │      74.    As a proximate result of the acts and omissions by all the DEFENDANTS alleged
12 │ *supra*, the HEIRS sustained the loss of love, society, comfort, and attention of their loving father,
13 │ GARCIA, for which they seek general damages.

14 │      75.    As an additional result of the acts and omissions by all DEFENDANTS alleged
15 │ *supra*, GARCIA's family incurred funeral and burial expenses for the burial of GARCIA, for
16 │ which they seek special damages.

### THIRD CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### [By RONALD GARCIA against all DEFENDANTS]

20 │      76.    Plaintiff RONALD GARCIA hereby incorporates the allegations set forth supra as
21 │ though fully set forth herein.

22 │      77.    As discussed supra, DEFENDANTS knew a FACILITY staff member had tested
23 │ positive for COVID-19. Further, DEFENDANTS knew GARCIA was exhibiting COVID-19
24 │ symptoms, including chills, fever, and loss of appetite. With this knowledge, DEFENDANTS
25 │ asked RONALD GARCIA to personally take GARCIA to an urgent care center or emergency
26 │ room. Out of concern for his father, RONALD GARCIA made the difficult choice to expose
27 │ himself to COVID-19 in order to get GARCIA the care he needed that DEFENDANTS would
28 │ not provide.

78.    DEFENDANTS' conduct alleged herein was extreme and outrageous and is beyond the bounds of that tolerated in a decent society. DEFENDANTS were aware that COVID-19 poses a serious risk of harm and death to individuals exposed to it, and that it is highly infectious. DEFENDANTS were aware that GARCIA had been exposed to COVID-19 and that he was exhibiting symptoms indicative of COVID-19.  DEFENDANTS knew that they had accepted responsibilities for the health, safety and well-being of GARCIA, but they refused to provide the requisite care and instead requested that RONALD GARCIA expose himself to COVID-19 to seek medical assistance for his father.

79.    Left with no other option, RONALD GARCIA was forced to put his own health and safety in jeopardy to satisfy DEFENDANTS' duty to GARCIA.

80.    DEFENDANTS engaged in conduct alleged herein with reckless disregard as to whether it would cause extreme emotional distress to RONALD GARCIA.

81.    Plaintiff RONALD GARCIA suffered severe emotional distress due to being exposed to a COVID-19 infected individual.

82.    DEFENDANTS' conduct was a substantial factor in causing RONALD GARCIA's severe emotional distress.

As a result of DEFENDANTS' conduct, RONALD GARCIA incurred and will continue to incur damages in an amount to be proven at trial.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

16

# **PRAYER FOR RELIEF**

**WHEREFORE, PLAINTIFFS** pray for judgment and damages as follows:

1.     For pre-death pain and suffering damages pursuant to Welfare and Institutions Code section 15657;

2.     For general damages according to proof against all DEFENDANTS;

2.     For special damages according to proof against all DEFENDANTS;

3.     For attorney's fees against all DEFENDANTS;

4.     For punitive and exemplary damages against all DEFENDANTS;

5.     For costs of suit against all DEFENDANTS;

6.     For such other and further relief as the Court deems just and proper.


Respectfully submitted,

Dated:   October 26, 2020

LANZONE MORGAN, LLP


By: _____

Ayman R. Mourad
Attorney for Plaintiffs

17

COMPLAINT FOR DAMAGES

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>— Ayman R. Mourad, Esq., SBN 304161<br>Lanzone Morgan, LLP<br>5001 Airport Plaza Drive, Suite 210<br>Long Beach, CA 90815<br>TELEPHONE NO.: (562) 596-1700    FAX NO.: (562) 596-0011<br>ATTORNEY FOR *(Name)*: Plaintiffs, GILBERT GARCIA, et al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
  STREET ADDRESS: 700 Civic Center Drive West
  MAILING ADDRESS: Same as above
  CITY AND ZIP CODE: Santa Ana, California 92701
  BRANCH NAME: Central Justice Courthouse

CASE NAME:
Garcia v. Welltower OPCO Group, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>30-2020-01167237-CU-PO-CJC |
|---|---|---|
| ☑ **Unlimited**    ☐ **Limited**<br>(Amount     (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ **Counter**    ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Theodore Howard<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☑ Other PI/PD/WD (23) |     condemnation (14) |     above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) |     types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify)*: Elder Abuse & Neg.; WD; Intentional Infliction of Emotional Distress
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 26, 2020
Ayman R. Mourad, Esq.
_____       ▶ _(signature)_       _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

*Page 1 of 2*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

1  **LANZONE MORGAN, LLP**
2  **Ayman R. Mourad SBN 304161**
3  **Alexander S. Rynerson SBN 329956**
   **5001 Airport Plaza Drive, Suite 210**
4  **Long Beach, California 90815**
   **Telephone: 562-596-1700**
5  **Facsimile: 562-596-0011**

6  Attorneys for Plaintiffs, GILBERT GARCIA, by and through his Successor in Interest,
   Paul Garcia, et al.

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
              **FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

9  GILBERT GARCIA, by and through his          Case No.: 30-2020-01167237-CU-PO-CJC
10 Successor in Interest, Paul Garcia; PAUL     Complaint Filed:          Assigned for all purposes:
   GARCIA, individually; RONALD                 Assigned to Department: Judge Theodore Howard
11 GARCIA, individually; GARY GARCIA,           Hon.
12 individually,

13                        Plaintiffs,           **DECLARATION OF PAUL GARCIA**
                                                **PURSUANT TO CODE OF CIVIL**
14        vs.                                    **PROCEDURE §377.32 AND WELFARE &**
                                                **INSTITUTIONS CODE §15657.3**
15
16 WELLTOWER OPCO GROUP LLC dba
   SUNRISE VILLA BRADFORD;
17 SUNRISE SENIOR LIVING
   MANAGEMENT, INC.; and DOES 1
18 through 100;

19                        Defendants.

20

21

22

23

24

25

26

27

28

                                    1

**DECLARATION OF PAUL GARCIA PURSUANT TO CODE OF CIVIL**
**PROCEDURE §377.32 AND WELFARE & INSTITUTIONS CODE §15657.3**

## DECLARATION OF PAUL GARCIA

I, Paul Garcia, declare:

1.  I am the son and heir of Gilbert Garcia, who died July 3, 2020.  A true and correct copy of Gilbert Garcia's Certificate of Death is attached to this declaration as <u>Exhibit A</u>.

2.  No proceeding is now pending in California for the administration of the decedent Gilbert Garcia's estate.

3.  I am a Successor in Interest (as defined in § 377.11 of the California Code of Civil Procedure and § 15657.3 of the Welfare and Institutions Code) and succeed to Gilbert Garcia's interests in this action.

4.  No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this _24th_ day of July, 2020, in Villa Park, California.

Paul Garcia
Declarant

**DECLARATION OF PAUL GARCIA PURSUANT TO CODE OF CIVIL PROCEDURE §377.32 AND WELFARE & INSTITUTIONS CODE §15657.3**

EXHIBIT "A"

# CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
## HEALTH CARE AGENCY

STATE FILE NUMBER 3052020149926 — **CERTIFICATE OF DEATH** — LOCAL REGISTRATION NUMBER 3202030011330

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| GILBERT | ALONZO | GARCIA |

AKA, ALSO KNOWN AS – (Include YEAR, FIRST, MIDDLE, LAST)

4. DATE OF BIRTH mm/dd/ccyy — 5. SEX M

6. BIRTH STATE/FOREIGN COUNTRY: CA
13. SOCIAL SECURITY NUMBER: [redacted]
14. EVER IN U.S. ARMED FORCES?: YES ☒ NO
15. MARITAL STATUS at time of death: WIDOWED
7. DATE OF DEATH mm/dd/ccyy: 07/03/2020
8. HOUR: 1729

EDUCATION: SOME COLLEGE ☒ — HISPANIC: MEXICAN AMERICAN — RACE: WHITE

USUAL OCCUPATION: MAINTENANCE — KIND OF BUSINESS OR INDUSTRY: ANAHEIM SCHOOL DISTRICT — YEARS IN OCCUPATION: 30

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| ORANGE | ORANGE | | 89 | CA |

26. INFORMANT'S NAME, RELATIONSHIP: PAUL GARCIA, SON
27. INFORMANT'S MAILING ADDRESS: 10531 PHELAN DRIVE, VILLA PARK, CA 92861

28. NAME OF SURVIVING SPOUSE/SRDP—FIRST

31. NAME OF FATHER/PARENT—FIRST: PEDRO — LAST: GARCIA — BIRTH STATE: TEXAS
34. NAME OF MOTHER/PARENT—FIRST: AURELIA — LAST: ALONZO — BIRTH STATE: CA

38. DISPOSITION DATE: 07/25/2020
39. PLACE OF FINAL DISPOSITION: HOLY SEPULCHER CEMETERY 7845 E. SANTIAGO CANYON ROAD, ORANGE, CA 92869

41. TYPE OF DISPOSITION: BU
SIGNATURE OF EMBALMER: GREG KRUPA — LICENSE NUMBER: EMB8811
NAME OF FUNERAL ESTABLISHMENT: BROWN COLONIAL MORTUARY — FD59
LOCAL REGISTRAR: CLAYTON CHAU, MD, PhD — DATE mm/dd/ccyy: 07/10/2020

PLACE OF DEATH: ST. JOSEPH HOSPITAL
FACILITY ADDRESS: 1100 W. STEWART DRIVE
CITY: ORANGE — COUNTY: ORANGE

107. CAUSE OF DEATH:
IMMEDIATE CAUSE (A): COVID 19 PNEUMONIA

TIME INTERVAL: WEEK

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH: NONE

114. I CERTIFY... DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED.
Decedent attended since: 06/25/2020 — Decedent last seen alive: 07/03/2020
115. SIGNATURE AND TITLE OF CERTIFIER: JAMES W ROH, M.D. — 116. LICENSE NUMBER: G88140 — 117. DATE: 07/10/2020
118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE: TRUONGSON XUAN NGUYEN M.D. 2501 E CHAPMAN AVE STE 311, ORANGE, CA 92869

119. DATE OF INJURY — 120. HOUR — 121. INJURY DATE — 122. HOUR

MANNER OF DEATH: Natural

STATE REGISTRAR



CERTIFIED COPY OF VITAL RECORDS
* 0 0 4 5 3 5 8 3 2 *

DATE ISSUED July 14, 2020

STATE OF CALIFORNIA } SS
COUNTY OF ORANGE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the VITAL RECORDS SECTION, ORANGE COUNTY HEALTH CARE AGENCY.

ERIC G. HANDLER, M.D.
HEALTH OFFICER
ORANGE COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.



**LANZONE MORGAN, LLP**
**Ayman R. Mourad SBN 304161**
**Alexander S. Rynerson SBN 329956**
**5001 Airport Plaza Drive, Suite 210**
**Long Beach, California 90815**
**Telephone: 562-596-1700**
**Facsimile: 562-596-0011**
**Eservice: eservice@lanzonemorgan.com**

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA, individually; RONALD GARCIA, individually; GARY GARCIA, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 100; <br><br> Defendants. | Case No.: 30-2020-01167237-CU-PO-CJC <br> Complaint Filed: <br> Assigned to Department: <br> Hon. <br> Trial Date: <br><br> **NOTICE OF POSTING JURY FEES** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

///

///

///

///

///

///

1

1    PLEASE TAKE NOTICE that GILBERT GARCIA, by and through his Successor in

2    Interest, Paul Garcia; PAUL GARCIA, individually,  RONALD GARCIA, individually and

3    GARY GARCIA, individually hereby post their portion of jury fees in accordance with Code of

4    Civil Procedure § 631(b).

5

6    Dated:  October 26, 2020

    Respectfully submitted,
    LANZONE MORGAN, LLP

7

8

9    By:  _____

10    Ayman R. Mourad, Esq.
    Attorney for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its website as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

## ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May Not Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**   STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                  STATE:      ZIP CODE:<br>TELEPHONE NO.:            FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY<br><br>**For your protection and privacy, please press the Clear This Form button after you are done printing this form.** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-4593 | |
| **PLAINTIFF/PETITIONER:**<br><br>**DEFENDANT/RESPONDENT:** | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
        ☐ Under section 1141.11 of the Code of Civil Procedure
        ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____     _____   _____
                         (SIGNATURE OF PLAINTIFF OR ATTORNEY)     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____     _____   _____
                         (SIGNATURE OF DEFENDANT OR ATTORNEY)   (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**