Michael P. West, Esq. (SBN 172478)
Ashley A. Escudero, Esq. (SBN 250473)
**CLARK HILL LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
mwest@clarkhill.com
aescudero@clarkhill.com

*Attorneys for Defendants,*
Welltower OpCo Group, LLC dba Sunrise Villa Bradford, and
Sunrise Senior Living Management, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA, individually; RONALD GARCIA, individually; GARY GARCIA, individually, <br><br> Plaintiff, <br> v. <br><br> WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; RUZICA CALABRESE, an indivudal; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 8:20-cv-02250-JVS-KES <br><br> *Assigned to Hon. James V. Selna* <br><br> **DEFENDANTS WELLTOWER OPCO GROUP, LLC dba SUNRISE VILLA BRADFORD AND SUNRISE SENIOR LIVING MANAGEMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, ALTERNATIVELY, FOR 12(B)(1) HEARING** <br><br> Date:  February 8, 2021 <br> Time:  1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ...................................................... iii

I.    INTRODUCTION ........................................................ 1

II.   FACTUAL BACKGROUND ................................................ 4

III.  ARGUMENT AND AUTHORITIES ......................................... 7

      A.    LEGAL STANDARD FOR MOTION TO DISMISS ...................... 7

            1.    Rule 12(b)(6) – Failure to State a Claim ................... 7

            2.    Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction ......... 8

      B.    DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE PREP
            ACT ...................................................................... 9

            1.    Defendants are "Covered Persons" Under the PREP Act. ........ 12

                  i.     Defendants are "Program Planners" under the PREP Act 12

                  ii.    Defendants are "Qualified Persons" under the PREP Act 14

            2.    Plaintiffs' Allegations Involve "Covered Countermeasures" ... 15

                  i.     Personal Protective Equipment (Masks, Gloves, Gowns) 17

                  ii.    Diagnostic Devices .......................................... 18

                  iii.   Other Covered Countermeasures Within the Infection
                         Control Program ............................................. 19

            3.    Defendants engaged in "Recommended Activities" ............. 20

            4.    Plaintiffs Failed to Exhaust Administrative Remedies. ............ 21

            5.    Plaintiffs' Exceptions to Immunity Must Be Filed Elsewhere.. 22

            6.    Plaintiffs Fail to Comply with the Special Pleadings Standards. 23

            7.    Alternatively, the Complaint Should be Dismissed Without
                  Prejudice or Stayed. ..................................................... 24

      C.    THIS COURT LACKS SUBJECT MATTER JURISDICTION ........ 25

      D.    DEFENDANTS REQUEST A HEARING UNDER F.R.C.P. 12(i) ... 25

      E.    PLAINTIFF DOES NOT (AND CANNOT) PLEAD A CAUSE OF
            ACTION FOR INTENTIONAL INFLICTION OF DISTRESS ......... 26

i

F.      THE FAC'S ADDITION OF AN INDIVIDUAL DEFENDANT
DOES NOT IMPACT THIS MOTION. ............................................... 28

IV.     CONCLUSION ............................................................................. 30

CERTIFICATE OF SERVICE ................................................................. 31

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................... 7, 8, 24

*Bakshi v. Bayer Healthcare, LLC*, No. C07-00881 CW, 2007 WL 1232049
(N.D. Cal. Apr. 26, 2007) ..................................................................... 29

*Berkley v. Dowds*,
152 Cal. App. 4th 518, 61 Cal. Rptr. 3d 304 (2007) ........................... 27, 28

*Calderon v. Lowe's Home Centers, LLC*, No. 2:15-CV-01140-ODW, 2015
WL 3889289 (C.D. Cal. June 24, 2015) .............................................. 29, 30

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .................................................................. 24

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .................................................................... 8

*Dixon v. City of Long Beach*,
244 Fed.Appx. 128 n. 1 (9th Cir. 2007) ................................................. 9, 26

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ...................................................... 5

*Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*,
545 U.S. 308 (2005) ................................................................................. 2

*Heine v. Vilsack*,
No. 1:12-CV-01992-AWI, 2014 WL 7447619, at *4 (E.D. Cal. Dec. 31,
2014)........................................................................................................ 28

*Hughes v. Pair*,
46 Cal. 4th 1035, 209 P.3d 963 (2009)................................................. 27, 28

*Hunter v. Bryant*,
502 U.S. 224 (1991) .................................................................................. 3

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008)...................................................... 8

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979)..................................................................... 24

*Moore v. Avery*,
125 F. App'x 763 (9th Cir. 2005) .............................................................. 8

*Ni v. Royal Bus. Bank of Los Angeles*,
607 F. App'x 720 (9th Cir. 2015) .............................................................. 8

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Orsonio v. Armond*,
  No. B174092, 2005 Cal. App. Unpub. LEXIS 6054, at \*24–25 (July 13, 2005) ............................................................................................................... 3

*Parker v. St. Lawrence County Pub. Health Dept.*,
  954 N.Y.S.2d 259 (NY App. Div. 2012) ................................................................. 9

*Physicians Com. For Responsible Medicine v. Tyson Foods, Inc.* (2004)
  119 Cal. App. 4th 120 ............................................................................................. 3

*Rivas v. Coverall N. Am., Inc.*,
  No. SACV181007JGBKKX, 2019 WL 7166972, at \*3 (C.D. Cal. Feb. 28, 2019) ............................................................................................................... 22

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ................................................................................ 9

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ................................................................................ 8

*Serrano v. Francis*,
  345 F.3d 1071 (9th Cir. 2003) ................................................................................ 8

*Simmons v. Galvin*,
  575 F.3d 24 (1st Cir. 2009) .................................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................... 8

*Transamerica Life Ins. Co. v. Joyce Ponso et. al. Additional Party Names: Catherine Cannady*,
  No. 220CV03738MCSMRW, 2020 WL 6875181, at \*5 (C.D. Cal. Nov. 18, 2020) ............................................................................................................... 28

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................. 5

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ................................................................................ 9

**<u>Statutes</u>**

28 U.S.C. 1447(e) ...................................................................................................... 29

42 U.S.C. § 247d–6d(a)(1)&(b)......................................................................... 10, 27

42 U.S.C. § 247d-6d(a)(2)(A)................................................................................... 10

42 U.S.C. § 247d-6d(a)(2)(A)(ii)-(iii) ...................................................................... 27

42 U.S.C. § 247d-6d(a)(2)(B)................................................................................... 10

42 U.S.C. § 247d-6d(b)(1)........................................................................................ 10

42 U.S.C. § 247d-6d(c)(3)........................................................................................ 22

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

42 U.S.C. § 247d-6d(e)(1),(5) ............................................................ 23, 25

42 U.S.C. § 247d-6d(e)(3) ...................................................................... 23

42 U.S.C. § 247d-6e(d)(1) ...................................................................... 22

42 U.S.C. § 247d-6e(d)(4) ...................................................................... 22

42 U.S.C.A. § 247d-6d(a)(1)(6) ............................................................. 16

42 U.S.C.A. § 247d-6d(a)(3) ................................................................... 21

42 U.S.C.A. § 247d-6d(b)(2)(E) .............................................................. 18

42 U.S.C.A. § 247d-6d(b)(8) ................................................................... 23

42 U.S.C.A. § 247d-6d(e)(1),(5) .............................................................. 24

42 U.S.C.A. § 247d-6d(i)(1) .............................................................. 16, 19

42 U.S.C.A. § 247d-6d(i)(1),(8) ............................................................... 15

42 U.S.C.A. § 247d-6d(i)(2)(B) ............................................................... 12

42 U.S.C.A. § 247d-6d(i)(2)(B)(v) ........................................................... 15

42 U.S.C.A. § 247d-6d(i)(6) .................................................................... 12

42 U.S.C.A. § 247d-6d(i)(8) .................................................................... 15

42 U.S.C.A. § 247d-6e(a) ....................................................................... 22

42 U.S.C.A. §§ 247d-6d(c)(4) ................................................... 23, 24, 25

42 U.S.C.A. §§ 247d-6d, 247d-6e .............................................. 1, 11, 21

85 Fed. Reg. 15198-15201 ...................................................................... 11

85 Fed. Reg. 15200 ....................................................................... 18, 21

85 Fed. Reg. 15201 ................................................................................ 20

85 Fed. Reg. 21012-02 ............................................................................ 11

85 Fed. Reg. 21014 Sec. VI (Apr. 15, 2020) ......................................... 16

85 Fed. Reg. 35101 ................................................................................ 11

85 Fed. Reg. at 15202 ................................................................. 12, 16, 19

CAL. CODE REGS. TIT. 22, § 87101(u)(1) ................................... 12, 15

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

## Other Authorities

Centers for Disease Control and Prevention, *Considerations for Preventing Spread of COVID-19 in Assisted Living Facilities* (May 29, 2020), https://www.cdc.gov/ coronavirus/2019-ncov/hcp/assisted-living.html ....................... 6

Centers for Disease Control and Prevention, *Preparing for COVID-19 in Nursing Homes* (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/long-term-care.html ................................................................. 6

Determination that a Public Health Emergency Exists, https://www. phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx ........................ 4

Executive Order N-27-20 dated March 15, 2020: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.15.2020-COVID-19-Facilities.pdf ................................................................................. 5

*Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, No. SACV1801721ABFFMX, 2019 WL 8017809 (C.D. Cal. Nov. 27, 2019) .................................................................................................. 26

https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (as of December 2, 2020) .................................................................................. 2

Letter from President Donald J. Trump on Emergency Determination Under the Stafford Act, https://www.whitehouse.gov/briefings-statements/letter-president-donald-j-trump-emergencydetermination-stafford-act/ ................................................................................................. 4

P. Binzer, *The PREP Act: Liability Protection for Medical Countermeasure Development, Distribution, and Administration, Biosecurity and Bioterrorism: Biodefense Strategy, Practice, and Science*, Vol. 6, No 4, 2008 ........................................................................................................... 10

Proclamation of a State of Emergency (Mar. 4, 2020) https://www. gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/ ................................................. 5

Pub. Law. No. 115-127, Sec. 6005 ................................................................. 18

U.S. Food & Drug Administration, Emergency Use Authorization (last visited May 7, 2020), https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization#covid19euas ......................................................................... 17

U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download ...................................... 18

U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download; U.S. Food & Drug Administration, FDA Combating COVID-19 With Therapeutics (May 4, 2020) https://www.fda.gov/media/136832/download ................................................. 17

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

WHO Director-General's Opening Remarks at the Media Briefing on
    COVID-19 (Mar. 11, 2020),
    https://www.who.int/dg/speeches/detail/who-director-general-s-opening-
    remarks-at-the-mediabriefing-on-covid-19---11-march-2020 ....................................4

WRIGHT & MILLER, 5C FED. PRAC. & PROC. CIV. § 1373, Notes 11-15 (3d
    ed.) ...........................................................................................................................25

**Rules**

Fed. R. Civ. P. 15(a) ........................................................................................................29

FED.R.CIV.P. 12(b)(1) .......................................................................................................7

FED.R.CIV.P. 12(b)(6) .......................................................................................................7

FED.R.CIV.P. 12(i) ...........................................................................................................30

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# I.   __INTRODUCTION__

Plaintiffs again bring claims against Defendants in the context of Defendants' provision of care to Mr. Gilbert Garcia during the COVID-19 pandemic via the First Amended Complaint ("FAC"), even though Plaintiffs continue to concede that Defendants undertook efforts to prevent the spread of COVID-19 within their facility, including symptom screening and testing, and using personal protective equipment ("PPE") such as masks, gloves, and gowns.  In fact, the only "new" allegations in the FAC solely relate to Plaintiffs' addition of the Executive Director of Sunrise Villa Bradford ("Sunrise Villa") as a defendant, in furtherance of Plaintiffs' calculated strategy seeking to destroy diversity jurisdiction and have this matter remanded to the California Superior Court.[1]

Therefore, since Plaintiffs have not added any new allegations or amended their prior allegations relating to Defendants' use of countermeasures designed to prevent the spread of COVID-19, Defendants continue to assert the position outlined in the Motion to Dismiss the original Complaint that they are immune from these claims under the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e ("PREP Act") because Defendants are "covered persons" engaged in "recommended activities" involved in the administration and use of "covered countermeasures" during

---

[1] The new individual defendant is added in paragraph 5 of the FAC, and referenced by name in paragraphs 14 and 21.  Plaintiffs reference the California Superior Court via additions in paragraphs 10 and 11.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

the COVID-19 global pandemic and health emergency.[2]

This federal liability protection is critically important because the COVID-19 pandemic is an unprecedented and ongoing crisis that warrants constant adjustment by our care providers.  The World Health Organization (WHO), Centers for Disease Control and Prevention (CDC), and other public health authorities have issued continuously evolving recommendations, guidance, and advice based on the science of the moment.  Nevertheless, despite aggressive efforts by our government and care community, the pandemic continues to spread.  To date in the United States, nearly twenty-one million people have contracted the virus, and over 301,679 people have died as a result of the pandemic.  These numbers have disproportionately impacted older Americans, with approximately 92% of COVID-19 deaths being individuals aged 55 or older.[3]

In addressing the needs of this population, dedicated staff from Sunrise Villa are on the front lines combating this deadly illness, caring for residents suffering from sickness or advanced age, while also striving to shield them from the novel virus that can be passed from person-to-person even without sign or symptom.  Sunrise Villa specifically had an

---

[2] These federal interests protected by the PREP Act invoke "complete preemption" justifying federal jurisdiction under the *Grable* doctrine.  The Fourth Amendment to the Secretary's Declaration "makes explicit . . . that there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private sector entities."  *See* Ex. 10, p. 13.

[3] *See* https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (as of December 30, 2020).

2

infection control program, which included screening and monitoring staff and residents, including Mr. Gilbert Garcia, for COVID-19.

Despite these efforts by Defendants, Mr. Garcia contracted COVID-19 and died of the illness on July 3, 2020.  This and other examples of how COVID-19 challenges our senior living communities only reinforce the critical need for legal immunities so that individuals and entities like Defendants are not subject to lawsuits which hinder and discourage their critical and ongoing work in the face of constantly evolving standards of care and treatment.  This Court can and should decide now, as a matter of federal law, that Defendants are immune from liability.  *See Physicians Com. For Responsible Medicine v. Tyson Foods, Inc.* (2004) 119 Cal. App. 4th 120, 129. "The court has repeatedly . . . stressed the importance of resolving immunity questions at the ***earliest stage in litigation***." *Orsonio v. Armond*, No. B174092, 2005 Cal. App. Unpub. LEXIS 6054, at \*24–25 (July 13, 2005) (emphasis added) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). This is especially so where, in cases like this, "the PREP Act exists, in part, to remove legal uncertainty and risk." (Advisory Opinion 20-04, at 1)[4]. Delaying this determination until a later stage of the proceedings will only force care providers to engage in expensive, disruptive, and protracted discovery in the middle of an unprecedented pandemic, thus diverting resources and depriving them of the very protections the federal immunities are

---

[4] Department of Health and Human Services ("HHS") Advisory Opinion 20-04, page 1, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-public-readiness-emergency-preparedness-act.pdf

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

intended to confer.[5] Accordingly, Defendants respectfully request that the Court determine that Defendants are immune from liability under the PREP Act and dismiss the FAC.

## II.   FACTUAL BACKGROUND[6]

In August 2017, Gilbert Garcia was admitted to Sunrise Villa, a Residential Care Facility for the Elderly ("RCFE") licensed by the state of California. (FAC ¶ 24).  At that time, he was 87 years old with co-morbidities resulting in a need for residential placement, and required constant assistance with his medications and Activities of Daily Living ("ADL"), including toileting, bathing, dressing, and daily hygiene.  (*Id*. ¶ 26).

By January 27, 2020, HHS declared a public health emergency because of COVID-19[7], and on March 11, 2020, the WHO declared a global pandemic.[8]  On March 13, 2020 the President of the United States declared a nationwide emergency pursuant to the Stafford Act.[9] Further, on March 4, 2020, Governor Gavin Newsom issued a Proclamation

---

[5] Indeed, as discussed below, on August 14, 2020, the Office of the General Counsel, Secretary of the HHS, issued an opinion letter (the "August 2020 OGC Letter") that unequivocally confirmed that senior living communities, such as Sunrise Villa, may be "covered persons," entitled to immunity under the PREP Act by virtue of their status as both "program planners" and "qualified persons." Ex. 8.

[6]Defendants assume the facts in Plaintiffs' FAC as true for the purpose of this Motion only.

[7]*See* Determination that a Public Health Emergency Exists, https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.

[8] *See* WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-mediabriefing-on-covid-19---11-march-2020.

[9] *See* Letter from President Donald J. Trump on Emergency Determination Under the Stafford Act, https://www.whitehouse.gov/briefings-statements/letter-president-donald-j-trump-emergencydetermination-stafford-act/

4

declaring a state of emergency in California concerning COVID-19.[10] And, on March 15, 2020, Governor Newsom issued Executive Order N-27-20, in part, because of the expected significant challenges that residential care facilities would face in staffing and capacity as a result of COVID-19. This Order reaffirmed the important role of facilities like Sunrise Villa, directed collaboration between the state and covered persons, and specifically authorized the continued work of asymptomatic workers to address shortages in staffing.[11]

Plaintiffs concede that Defendants undertook a number of precautionary measures to prevent the spread of COVID-19 within Sunrise Villa, including those detailed in the correspondence referenced and relied upon in Plaintiffs' FAC.[12] Among other infection control procedures implemented by Defendants at Sunrise Villa, Defendants:

☐ Prohibited non-essential visitation, implemented social distancing, and confined residents to their rooms where possible (FAC. ¶ 34; Exs. 2, 4);

---

[10] *See* Proclamation of a State of Emergency (Mar. 4, 2020) https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/.

[11] *See* Executive Order N-27-20 dated March 15, 2020: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.15.2020-COVID-19-Facilities.pdf

[12] In their FAC, Plaintiffs expressly reference and rely on letters and messages issued by the Defendants dated March 11, March 17, May 12, May 15, May 31, and June 17, 2020. (FAC ¶¶ 33-40). This correspondence is attached hereto as Exhibits 1-6 and may be considered as part of this Motion to Dismiss. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015) (in deciding a motion to dismiss, a court can consider the pleadings and documents that are incorporated by reference or are properly the subject of judicial notice) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

5

☐ Performed daily temperature checks and symptom screening of staff, essential visitors, and residents (FAC ¶ 38; Exs. 1, 2, and 5);

☐ Implemented disinfecting, sanitization and hand washing procedures (*Id.*);

☐ Tested new residents for COVID-19 before move-in (Ex. 4);

☐ Required staff and, to the extent tolerated,[13] residents to wear masks at all times (Exs. 4, 6);

☐ Communicated assurance that staff would strive to wear "full" PPE, "such as masks, gloves, and gowns, while providing direct care to any residents with symptoms, and continuing . . . infection control protocols" (FAC ¶ 40; Ex. 6); and

☐ Served as a facility at which COVID-19 testing occurred, including on June 16, 2020 for residents of Sunrise Villa's memory care unit, and again on June 18, 2020 for all residents and staff (FAC ¶ 40; Ex. 6).

Plaintiffs acknowledge that Defendants faced a nationwide shortage of PPE and COVID-19 tests during this time, and Defendants urged families of residents to contact their local congresspersons to secure more PPE and testing for the facility. (FAC ¶¶ 35, 37; Ex. 3).

---

[13] *See* Centers for Disease Control and Prevention, *Considerations for Preventing Spread of COVID-19 in Assisted Living Facilities* (May 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/assisted-living.html ("Encourage residents to wear a cloth face covered (*if tolerated*) whenever they are around others…") (emphasis added); *see also* Centers for Disease Control and Prevention, *Preparing for COVID-19 in Nursing Homes* (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/long-term-care.html ("Residents should wear a cloth face covering or facemask (*if tolerated*) whenever they leave their room…") (emphasis added).

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6

As part of these efforts, Defendants conducted COVID-19 testing for Mr. Garcia on June 17, 2020, which returned a positive result on June 20, 2020.  (FAC ¶¶ 41, 44).  Prior to Mr. Garcia's positive test results, Mr. Garcia had already been transferred to Placentia-Linda Hospital on June 18, 2020. (*Id.* ¶ 43).[14] Tragically, Mr. Garcia passed away at St. Joseph's Hospital due to COVID-19 on July 3, 2020. (*Id.* ¶ 48; FAC Ex. A).

7
8
9
10
11
12
13

Plaintiffs' state law claims of elder abuse and neglect, wrongful death, and intentional infliction of emotional distress, all arise out of certain activities involving the exposure, diagnosis, and treatment of COVID-19, and the distribution, administration, or use of countermeasures to prevent the spread of COVID-19 within Sunrise Villa.  Thus, Plaintiffs' claims fit squarely within the scope of immunity of the PREP Act.

14

### III.    ARGUMENT AND AUTHORITIES

15
16

### A.  LEGAL STANDARD FOR MOTION TO DISMISS

17
18
19
20

The FAC should be dismissed under FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief may be granted, and alternatively may be dismissed under FED.R.CIV.P. 12 (b)(1) for lack of subject matter jurisdiction.

21

### 1.    Rule 12(b)(6) – Failure to State a Claim

22
23
24
25
26

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a

27
28

---

[14] The FAC includes a number of irrelevant allegations relating to Defendants alleged conduct <u>after</u> Mr. Garcia was admitted to the hospital on June 18 and no longer a resident of Sunrise Villa, which cannot form the basis for liability.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id*. Legal conclusions and mixed questions of law and fact do not receive the presumption of truth even at the pleading stage. *See id.*; *Ni v. Royal Bus. Bank of Los Angeles*, 607 F. App'x 720 (9th Cir. 2015).

Questions of statutory interpretation "are questions of law ripe for resolution at the pleadings stage." *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009). Further, "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). This includes where there is a challenge on qualified immunity grounds. *See, e.g., Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003). Dismissal under this standard is also appropriate where there is a failure to exhaust administrative remedies, s*ee, e.g., Moore v. Avery*, 125 F. App'x 763, 764 (9th Cir. 2005), and if the Complaint does not meet heightened pleading requirements imposed by statute. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327-28 (2007).

Finally, when deciding a motion to dismiss under Rule 12(b)(6), a court may consider "matters of public record and facts susceptible to judicial notice." *Daniels-Hall v. National Educ. Ass'n*, 629 F.2d 992, 998 (9th Cir. 2010) (taking notice of information made publicly available by government entities); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking notice of information on FDA website).

### 2.   Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) can raise lack of subject matter jurisdiction

through either a facial or factual attack. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering a factual attack, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The court may also consider "affidavits or other evidence properly before the court." *Meyer*, 373 F.3d at 1039. In this case, a factual attack is not essential; however, the Defendants can submit any additional facts necessary to resolve the question of immunity. "Plaintiffs' state law claims . . . are preempted by the PREP Act and . . . the complaint must be dismissed for lack of subject matter jurisdiction."   *Parker v. St. Lawrence County Pub. Health Dept.*, 954 N.Y.S.2d 259, 263 (NY App. Div. 2012). Importantly, the Court must resolve the immunity question "at the earliest stage of litigation to avoid the expenses and delays of unnecessary trials." *Dixon v. City of Long Beach*, 244 Fed.Appx. 128, 129 n. 1 (9th Cir. 2007).

### B.   DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE PREP ACT

Defendants are immune under the PREP Act, as well the implementing Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), and various amendments -- including the Fourth Amendment

9

dated December 3, 2020 (Ex. 10) (collectively, "the Declaration"). The intent of the PREP Act was to remove liability concerns -- specifically for countermeasures *and* covered persons -- so that resources would remain available during an emergency; otherwise, such critical resources would simply shut down rather than expose themselves to endless lawsuits.[15] Here, the PREP Act applies to all of Plaintiffs' state law claims regarding the administration of medications, treatment, diagnosis and use of devices to treat, prevent, or mitigate COVID-19.[16] The Act has a broad reach in its intended scope of protection, and empowers the Secretary of HHS to issue a written declaration identifying the "covered persons" who shall be immune from suit and liability under Federal and State law with respect to **all claims for loss**[17] caused by, arising out of, relating to, or resulting from the administration or use of a "covered countermeasure" during a health emergency. 42 U.S.C. § 247d–6d(a)(1)&(b).

---

[15] *See* P. Binzer, *The PREP Act: Liability Protection for Medical Countermeasure Development, Distribution, and Administration, Biosecurity and Bioterrorism: Biodefense Strategy, Practice, and Science*, Vol. 6, No 4, 2008.

[16] The Act states that "[a] covered person shall be immune from suit and liability under Federal and State law with respect to claims for loss *caused by, arising out of, relating to, or resulting from* the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(b)(1) (emphasis added).

[17] "Loss" is broadly defined as "any type of loss," including death, physical injury, mental injury, emotional injury, fear, property loss and damage, and business interruption loss. *Id*. § 247d-6d(a)(2)(A). Moreover, the immunity applies to any claim "that has a causal relationship with the administration to or use by an individual of a covered countermeasure." *Id*. § 247d-6d(a)(2)(B).

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

The Declaration provides liability immunity for "recommended activities," including the distribution, administration and use of covered countermeasures against COVID 19. *See* 85 Fed. Reg. 15198-15201. The Declaration was amended on April 10, 2020 to reflect newly enacted legislation and the addition of "respiratory protective device[s] approved by NIOSH" to the list of "covered countermeasures." *See* 85 Fed. Reg. 21012-02. A June 8, 2020 Amendment then retroactively included as "covered countermeasures" additional products that "limit the harm such a pandemic or epidemic might otherwise cause." 85 Fed. Reg. 35101. The Office of the General Counsel of HHS also issued an Advisory Opinion on April 17, 2020. *See* Advisory Opinion on the PREP Act and the March 10, 2020 Declaration Under the Act April 17, 2020, as Modified May 19, 2020 (Ex. 7). Most recently, the Declaration was amended again on December 3, 2020 which, *inter alia*, incorporates the Advisory Letters into the Declaration itself. (Ex.10, p. 3).

Together, these authorities provide immunity to an individual or entity under the PREP Act if (1) they are a "covered person," (2) they are administering or using a "covered countermeasure," (3) the claim against which immunity is asserted "arises out of, relates to, or results from" the administration or use of the subject countermeasure, (4) the administration or use occurs during "effective period", and (5) the "covered countermeasure" was obtained through a specified "means of distribution." PREP Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e; Declaration, *supra*. Here, Defendants and their activities meet all of these elements.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

**1.   Defendants are "Covered Persons" Under the PREP Act.**

Plaintiffs' own allegations establish that Defendants are "covered person[s]," as defined by 42 U.S.C.A. § 247d-6d(i)(2)(B).  As more fully explained below, Defendants satisfy the definitions of both a "program planner" and a "qualified person."

**i.   Defendants are *"Program Planners"* under the PREP Act**

The Act defines a "program planner" as a person or entity who:

[S]upervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with [the Secretary's declaration].

42 U.S.C.A. § 247d-6d(i)(6). Importantly, a "private sector employer or community group or other 'person' can be a program planner when it carries out the described activities." 85 Fed. Reg. at 15202.  HHS has already concluded that a senior living community is a "program planner" to the extent it performs the above functions.  (Ex. 8.)

In the context of RCFEs like Sunrise Villa, the administration and distribution of covered countermeasures includes an infection control program against COVID-19. California law expressly requires RCFEs to implement infection control programs, as discussed below.  *See* CAL. CODE REGS. TIT. 22, § 87101(u)(1). In addition, Sunrise Villa

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

necessarily provides a facility to administer or use such covered countermeasures.[18]   As alleged in the FAC, Sunrise Villa supervised and administered an infection control program using covered countermeasures, which included, *inter alia,* symptom screening for all residents and staff, diagnostic testing for COVID-19, and the use of approved PPE, such as masks, gloves, and gowns. (FAC ¶¶ 38-47, 52; Ex. A, Exhibits 1-6).

Importantly, this provision also protects omissions by covered persons, including those which may be caused by shortages or delays in countermeasure deployment.  *See* Ex. 7 at p. 7 (noting that certain "acts or ***omissions***" remain immune from suit) (emphasis added). The Fourth Amendment to the Declaration confirms this:

> Where there are limited Covered Countermeasures, ***not*** administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d . . . . [such as] when [t]he person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. ***Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections."***

---

[18] As discussed *supra*, it is undisputed that Sunrise Villa served as a facility at which PPE, symptom screening, and COVID-19 testing, *inter alia*, were administered or used.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

(Ex. 10, pp. 24-25) (emphasis added)[19]   For all of these reasons, "administration" may include decisions and actions, including reasonable choices, involving how covered countermeasures are used, allocated, or dispensed.

Such non-physical "administrations" certainly apply here, where Plaintiffs allege injuries stemming from decisions resulting in alleged omissions or inaction, including shortages, that directly relate to covered countermeasures at Sunrise Villa. (*See* FAC *generally*). In short, and as further discussed below, Plaintiffs allege that, but-for Defendants' decisions and administration of the infection control program, including COVID-19 testing and the use of PPE when possible and despite shortages, Mr. Garcia would not have contracted COVID-19. Accordingly, Plaintiffs purported injuries "arise out of and relate to" Defendants administration of covered countermeasures triggering PREP Act immunity.

### ii.   Defendants are *"Qualified Persons"* under the PREP Act

Under the PREP Act, a "qualified person who prescribed, administered, or dispensed" the countermeasure at issue is considered a "covered person." The term "qualified person" includes:  (A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the

---

[19] Here, the challenges in program planner decision-making were exacerbated not only by shortages, but by conflicting advice. (Comp. ¶¶ 35, 37; Ex. 3). For example, some infectious disease experts initially recommended *not* wearing masks during the initial COVID-19 response because they wanted to ensure the limited supply went to hospital ICU units and first responders.  Testing shortages also resulted in limiting testing to certain people who met strict criteria.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

State in which the countermeasure was prescribed, administered, or dispensed; or (B) a person within a category of persons so identified in a declaration by the Secretary. 42 U.S.C.A. § 247d-6d(i)(8).[20]  Again, HHS has confirmed that a senior living community may be a "qualified person" where it was authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to, *inter alia*, prescribe or administer a Covered Countermeasure. (Ex. 8).

Here, Plaintiffs allege Defendants are subject to the licensing requirements of state of California governing RCFEs. (FAC ¶¶ 4, 14). As such, Sunrise Villa was required to implement universal precautions to prevent infections. *See* CAL. CODE REGS. TIT. 22, § 87101(u)(1). Further, Sunrise Villa's staff were among the class of workers directed to continue to work and to take precautions against the spread of COVID-19. (Executive Order N-27-20 pp. 1-2 (Ex. 9)).  Therefore, Sunrise Villa and its employees are "qualified persons" for purposes of PREP Act immunity.

## 2. Plaintiffs' Allegations Involve "Covered Countermeasures"

Plaintiffs' allegations also establish that Defendants were engaged in the administration of "covered countermeasures." The PREP Act defines a "covered countermeasure" to include, *inter alia*, "qualified pandemic or epidemic products," as well as "drugs, biological products or devices authorized for investigational or emergency use," or "a respiratory protective device." *See* 42 U.S.C.A. § 247d-6d(i)(1),(8); *see also* Ex.

---

[20] "[A]n official, agent or employee of a person or entity" that meets the above requirement is included in the definition of a "covered person."  42 U.S.C.A. § 247d-6d(i)(2)(B)(v).

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

10.[21]  Here, Plaintiffs repeatedly concede that Defendants implemented an infection control program that included, *inter alia*, specific covered countermeasures, such as symptom monitoring and screening, testing, and the use of PPE, like masks, gloves, and gowns. (FAC ¶ 33-34, 38-40; Exs. 1-6).

Additionally, the Declaration defines "covered countermeasure" as "any antiviral, any other drug, any biologic, any diagnostic, any other device . . . used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product . . . ." provided such countermeasure fits into at least one of the categories set forth under the PREP Act: "qualified pandemic or epidemic products"; "drugs," "biological products," and "devices" authorized for emergency use under the FD&C Act; or "respiratory protective devices." 42 U.S.C.A. § 247d-6d(i)(1); 85 Fed. Reg. at 15202; Ex. 10.[22] The April 2020 OGC Letter explains that for immunity to attach, the "drug," "biological product," or "device": (1) must be used for COVID-19; and (2) must be (a)

---

[21] On March 18, 2020, the Families First Coronavirus Response Act (the "FFCRA") added "respiratory protective device[s]" to the list of "covered countermeasures."  The Secretary of HHS later amended the Declaration to include "any respiratory protective device." 85 Fed. Reg. 21014 Sec. VI (Apr. 15, 2020).  The Secretary determined "that use of any respiratory protective devise approved by NIOSH under 42 CFR part 84, or any successor regulations, is a priority for use during the public health emergency …." *Id.* at 21013.

[22] Moreover, the PREP Act establishes "a rebuttable presumption that any administration or use, during the effective period of the emergency declaration by the Secretary …, of a covered countermeasure shall have been for the category or categories of diseases, health conditions, or threats to health with respect to which such declaration was issued." 42 U.S.C.A. § 247d-6d(1)(6).  Here, there is no dispute that Mr. Garcia's care was rendered during the effective period of the Secretary's Declaration. *See* Declaration (March 17, 2020); FAC ¶¶ 33-44.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

approved, licensed, or cleared by FDA, (b) authorized under an EUA [Emergency Use Authorization], (c) described in an EUI [Emergency Use Instruction], or (d) used under either an Investigational New Drug (IND) application or an Investigational Device Exemption (IDE). *See* Ex. 7 at p. 4. The April 2020 OGC Letter also recognizes that "[t]he number of products used for COVID-19 that are approved, licensed, or cleared are too numerous to list."[23] Here, Plaintiffs' claims arise out of several categories of covered countermeasures described below:

### i.   *Personal Protective Equipment (Masks, Gloves, Gowns)*

Plaintiffs expressly allege the utilization of PPE at Sunrise Villa, such as masks, gloves, and gowns.  For example, Plaintiffs reference specific correspondence from the facility communicating assurance that staff would strive to wear "full" PPE, "such as masks, gloves, and gowns, while providing direct care to any residents with symptoms, and continuing . . . infection control protocols" (FAC ¶ 40, Ex. 6); *see also* FAC ¶ 39 (staff

---

[23] The Advisory Opinion cites to lists of medical devices and therapeutics that are covered by EUAs. *See* U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download; U.S. Food & Drug Administration, FDA Combating COVID-19 With Therapeutics (May 4, 2020) https://www.fda.gov/media/136832/download. *See also* U.S. Food & Drug Administration, Emergency Use Authorization (last visited May 7, 2020), https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization#covid19euas.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

wore "a mask" when treating Mr. Garcia).[24]

PPE is identified as a covered countermeasure through March 2020 federal legislation. *See* Pub. Law. No. 115-127, Sec. 6005. Additionally, the FDA has included numerous categories of PPE in their Emergency Use Authorizations related to COVID-19.[25] Further, the PREP Act permits the Secretary to grant immunity for "covered countermeasures" that are obtained through a particular means of distribution, including those related to "public health and medical response of the Authority Having Jurisdiction to . . . distribute, or dispense the Covered Countermeasures . . . ." 42 U.S.C.A. § 247d-6d(b)(2)(E). Here, Plaintiffs allege Defendants are subject to the licensing laws and regulations of California concerning RCFEs (FAC ¶¶ 4, 14), which state directed facilities like Sunrise Villa to take "precautions to prevent [the] transmission" of COVID-19, and as explained more fully *infra*. *See* Executive Order N-27-20 (Ex. 9). Defendants therefore qualify as "covered persons" administering or using a "covered countermeasure."

### ii.   *Diagnostic Devices*

Plaintiffs also plead the use of diagnostic testing for COVID-19 at Sunrise Villa for

---

[24] Significantly, Plaintiffs allege only that Defendants "lacked *proper* PPE," but concede this lack of "proper" PPE was caused by a national shortage. (FAC ¶¶ 35, 37, 41). The PREP Act and its protection of "program planners" are expressly intended to shield care providers from liability in such circumstances. *See* 85 Fed. Reg. 15200 (defining "administration" to include "activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing …."").

[25] *See* U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download.

18

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

both staff and residents. (FAC ¶¶ 38, 40, 49; Exs. 2, 5, 6).  Plaintiffs concede that, by early June 2020, Defendants were engaging in "staff monitoring and screening" and that a "staff member tested positive for COVID-19 on June 12, 2020." (FAC ¶ 38). Plaintiffs also concede that, prior to Mr. Garcia's COVID-19 test and diagnosis, Defendants had already tested residents in Sunrise Villa's memory care unit for COVID-19 and had arranged for the testing of all residents and staff on June 18, 2020. (*Id.* ¶ 40; Ex. 6).

Again, the Declaration identifies "any . . . *diagnostic*, any other device, or any vaccine, used to treat, *diagnose*, cure, prevent, or mitigate COVID-19 . . . ." provided such countermeasure fits into at least one of the categories set forth under the PREP Act. 42 U.S.C.A. § 247d-6d(i)(1); 85 Fed. Reg. at 15202 (emphasis added).  To date, a very large number of diagnostic tests for use in detecting or preventing the spread of COVID-19 have been approved, licensed, or cleared by the FDA, or subject to an EUA.  The use (or allegedly negligent use) of diagnostic testing constitutes a covered countermeasure and, in this matter, it is expressly alleged that such covered countermeasure was administered by Defendants to the staff and residents of Sunrise Villa.

### iii.    *Other Covered Countermeasures Within the Infection Control Program*

The FAC alleges that Defendants were administering "infection control protocols" at Sunrise Villa, including limiting visitation, conducting symptom checks, and using available PPE. (*E.g.,* FAC ¶¶ 33-34, 37-38). These allegations directly implicate California RCFE regulations and, in turn, trigger immunity under the PREP Act. Specifically, Title 22, Section 87411(c)(3)(B) of the California Code of Regulations

19

requires that RCFE staff receive training in "universal precautions."  Further, Plaintiffs specifically allege that the California Department of Public Health ("CDPH") began releasing guidance and recommendations to facilities like Sunrise Villa regarding preparing for and preventing COVID-19 infections. (FAC ¶ 27).  Plaintiffs' allegations also expressly reference California Executive Order N-27-20 issued on March 15, 2020, which expressly concerned RCFEs and directed "human services care providers and workers who are asymptomatic to continue working during the period of [the COVID-19] emergency" and directed "taking precautions to prevent transmission." (FAC ¶ 33; Ex. 9). Thus, Sunrise Villa's infection control protocols trigger PREP Act immunity because the facility uses qualified countermeasures under the PREP Act to achieve compliance with California law.

### 3.  Defendants engaged in "Recommended Activities"

Defendants were involved in "recommended activities," defined as the manufacture, testing, development, distribution, *administration and use* of one or more "covered countermeasures." *See* 85 Fed. Reg. at 15201. This includes any activity that is part of an authorized emergency response at any level of government. *See* Ex. 7 at p. 2. These activities can be authorized through guidance, requests for assistance, agreements, or other arrangements, and are covered under the PREP Act even if a state or local authority has not declared a state of emergency. *See id*.

Here, the covered countermeasures were administered or used within the effective period of the Declaration, and for the categories of diseases, health conditions, or threats

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

to health contemplated by the Declaration. *See* 42 U.S.C.A. § 247d-6d(a)(3); FAC at ¶¶ 33-40. The Declaration defines "Administration of a Covered Countermeasure" as the physical provision of countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures. *See* 85 Fed. Reg. at 15200. The definition of administration extends to the provision of a countermeasure to a recipient *and* also includes activities related to management and operation of programs and locations for providing countermeasures to recipients, such as administering a vaccine or handing drugs to a patient, and activities related to management of operations of programs and locations, such as decisions and actions involving security and queuing. *See id*.  Here, Plaintiffs allege the administration and use of testing, PPE, and other countermeasures to residents and staff at Sunrise Villa. (*See generally* FAC).  Even "monitoring" a patient who has been exposed to COVID-19 may be considered a "recommended activity" as it is part of the management of an infection control protocol implemented in response to the virus.

### 4.     Plaintiffs Failed to Exhaust Administrative Remedies.

The PREP Act provides a limited exception to its immunity protections where defendants have engaged in "acts or ***omissions***" that meet the specified definition of "willful misconduct." 42 U.S.C. § 247d-6d(c)(1)&(d). In apparent recognition of this limited exception, Plaintiffs repeatedly includes bare, conclusory allegations that

Defendants "willfully" failed to care for Mr. Garcia and caused his injuries. (FAC ¶¶ 25, 52, 62-64).  However, Plaintiff's claim (i) can only be maintained after an exhaustion of administrative remedies, (ii) must be brought in federal court in Washington, D.C., and (iii) must be pled with particularity. *See* 42 U.S.C. § 247d-6d(c)(3). Alternatively, assuming Plaintiff has sufficiently alleged willful misconduct, and assuming any other part of the FAC survives dismissal, this matter should be dismissed without prejudice or stayed pending Plaintiffs' pursuit of the willful misconduct claim administratively and in Washington, D.C.

Regarding administrative remedies, "a covered individual may not bring a civil action under [the Act] against a covered person . . . unless such individual has exhausted such remedies as are available under subsection (a)[.]" 42 U.S.C. § 247d-6e(d)(1). These subsection (a) remedies include an "emergency fund" established when the Secretary issues a declaration under the PREP Act "for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries." 42 U.S.C.A. § 247d-6e(a). This remedy is "exclusive of any other civil action or proceeding for any claim or suit" to which it applies. § 247d-6e(d)(4).  Here, Plaintiffs did not first apply for these benefits, and their failure to do so warrants dismissal.[26]

### 5.    Plaintiffs' Exceptions to Immunity Must Be Filed Elsewhere.

To the extent Plaintiffs allege any exception to immunity, the PREP Act still

---

[26] *See Rivas v. Coverall N. Am., Inc.*, No. SACV181007JGBKKX, 2019 WL 7166972, at *3 (C.D. Cal. Feb. 28, 2019).

preempts any conflicting state law claims.[27] Further, any suits alleging an exception can only be brought before a three-judge panel in the United States District Court for the District of Columbia. *See* 42 U.S.C.A. §§ 247d-6d(c)(4); § 247d-6d(e)(1),(5). "Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons is an exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct by such Covered Person. In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act." (Ex. 10, pp. 13-14). The Act therefore clearly contemplates an alternative avenue of relief for Plaintiffs and those similarly situated.  In short, this is not the forum for Plaintiffs' action.

### 6. Plaintiffs Fail to Comply with the Special Pleadings Standards.

To the extent Plaintiffs attempt to plead willful misconduct, Plaintiffs' allegations also fail to meet the PREP Act's heightened pleadings standards which requires, among other things, that each element be pled with particularity, including the specific acts or omissions constituting misconduct by each defendant, as well as facts supporting proximate causation with respect to serious physical injury or death. *See* 42 U.S.C. § 247d-6d(e)(3). Rather, Plaintiffs' allegations contain merely labels, conclusions, "formulaic recitation of the elements," and "naked assertions" that do not meet the PREP Act's

---

[27] The Act provides that "no state … may establish, enforce or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that (A) is different from, or is in conflict with, any requirement applicable under section; and (B) related to the…use, …dispensing, or administration by qualified persons of the covered countermeasure." 42 U.S.C.A. § 247d-6d(b)(8).

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

heightened pleading requirement. *See Iqbal*, 556 U.S. at 678. Plaintiffs also fail to satisfy the special Verification, Certification, and attachment of Medical Records requirements for willful misconduct suits. *See* 42 U.S.C. § 247d-6d(e)(4).

### 7. Alternatively, the Complaint Should be Dismissed Without Prejudice or Stayed.

The PREP Act unquestionably provides exclusive jurisdiction in the federal court of the District of Columbia for any "act *or omission*" by a Covered Person constituting willful misconduct. *See* 42 U.S.C.A. §§ 247d-6d(c)(4); § 247d-6d(e)(1),(5). Even if Plaintiffs willful misconduct allegations are properly pled, they must be pursued administratively and in the District of Columbia. To the extent the Court declines to dismiss with prejudice the remainder of Plaintiffs' claims, this Court should dismiss such claims without prejudice or, alternatively, stay this matter pending the resolution of Plaintiffs' willful misconduct claims. Trial courts possess the discretion to stay matters "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).[28]  Among the factors to be considered when exercising this discretion, the district court may consider the possible damage that may result from granting the stay, the hardship that may be suffered by requiring a party go forward, and the orderly course of justice, as measured in terms of simplifying issues in dispute. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

---

[28] The discretion applies "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 864.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

In this matter, no harm will result from staying the remainder of Plaintiffs' claims (to the extent they survive dismissal), as Plaintiffs will be afforded the opportunity to recover amounts against the PREP Act emergency fund and, potentially, in an action before a D.C. federal court.  In contrast, Defendants will suffer significant prejudice by being forced to litigate inter-connected claims in two separate forums simultaneously and in the midst of an on-going pandemic.  These competing claims may also lead to conflicting results and waste of resources.

## C.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

The FAC also should be dismissed for lack of subject matter jurisdiction, as the PREP Act's immunity provision preempts all of Plaintiffs' state law claims. To the extent an exception is claimed for allegations of willful misconduct, those exceptions *must* be referred to the United States District Court for the District of Columbia, as explained *supra*.  *See* 42 U.S.C.A. §§ 247d-6d(c)(4); § 247d-6d(e)(1),(5).

## D.   DEFENDANTS REQUEST A HEARING UNDER F.R.C.P. 12(i)

Fed.R.Civ.P. 12(i) permits a party bringing a motion under Rule 12(b)(1)-(7) to request that the defenses be "heard and decided before trial unless the court orders a deferral until trial." Among other factors to be balanced by the Court when deciding whether to conduct a hearing, the Court should consider the right of the party to have his defense decided promptly and the ability to avoid costly and protracted litigation. *See* WRIGHT & MILLER, 5C FED. PRAC. & PROC. CIV. § 1373, Notes 11-15 (3d ed.).

Defendants request that this Motion be heard in an expedited manner because (i) it

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

implicates subject-matter jurisdiction, (ii) Plaintiffs have not exhausted alternative administrative remedies, and (iii) because immunity applies under the PREP Act.  Further, the application of these immunity laws now will completely resolve Plaintiffs' claims thereby saving the parties and the Court significant time and resources. *See Dixon*, 244 Fed.Appx. at 129 n. 1.  Accordingly, to the extent that the Court declines to decide the Motion on the papers alone, Defendants request an evidentiary hearing to determine the applicability of the various immunities discussed above.

### E.   PLAINTIFF DOES NOT (AND CANNOT) PLEAD A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF DISTRESS

In another apparent attempt to circumvent the PREP Act, Plaintiff Ronald Garcia asserts that Defendants intentionally inflicted emotion distress upon him when Defendants "suggest[ed]" or "asked" that he transport his father to urgent care on the evening of June 17, 2020. (FAC ¶¶ 40, 78).  Like Plaintiffs first two causes of action, this third claim also fails.

First, Ronald Garcia's claim is expressly premised on Gilbert Garcia having contracted COVID-19 due to Defendants' alleged improper conduct. (*See* FAC ¶¶ 78-79 (asserting claim based on Gilbert Garcia's COVID-19 illness).  Ronald Garcia's "IIED" claim is therefore derivative of Plaintiffs' other claims relating to Gilbert Garcia's illness and death, and Defendants' administration and use of covered countermeasures.  As these claims fail, so too does Ronald Garcia's IIED claim. *See Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, No. SACV1801721ABFFMX, 2019 WL 8017809 (C.D. Cal. Nov. 27, 2019) (IIED claim dismissed where it was derivative of other failed claims).

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Second, and relatedly, PREP Act immunity expressly bars Ronald Garcia's IIED claim. The PREP Act immunities extend to "***all claims for loss*** caused by, arising out of, relating to, or resulting from the administration or use of a covered countermeasure." 42 U.S.C. § 247d–6d(a)(1)&(b) (emphasis added). "Loss" broadly includes "any type of loss," including "emotional injury" and even "fear of physical, mental, or emotional injury." *Id*. § 247d-6d(a)(2)(A)(ii)-(iii). Again, Ronald Garcia's IIED claim arises out of, relates to, and results from Gilbert Garcia having contracted COVID-19 despite Defendants' use of covered countermeasures. The PREP Act therefore expressly bars Ronald Garcia's claim.

Finally, even if the PREP Act were inapplicable, a cause of action for intentional infliction of emotional distress exists only when there is: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009). A defendant's conduct is "outrageous" only when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id. See also Berkley v. Dowds*, 152 Cal. App. 4th 518, 534, 61 Cal. Rptr. 3d 304, 317 (2007) ("Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court …."). Further, the required "severe emotional distress" is a "high bar" and must be "of such substantial quality or enduring quality that

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

no reasonable person in civilized society should be expected to endure it." *Hughes*, 209 P.3d at 976.

The FAC lacks allegations satisfying any of these elements. Plaintiffs allege only that Defendants "suggest[ed]" or "asked" that Ronald Garcia take his father to urgent care on the evening of June 17 – the night before COVID-19 testing was already scheduled to occur at Sunrise Villa. (FAC ¶¶ 40, 78). This conduct did not compel Ronald Garcia's actions and in no way "exceed[ed] all bounds … tolerated in a civilized community." *See Berkley*, 61 Cal. Rptr. 3d at 317 ("urg[ing]" plaintiff to "pull the plug" on husband's lift-support did not support IIED claim where statements concerned "bests interests of the patient"). Further, Plaintiffs merely allege that Ronald Garcia "suffered severe emotional distress," without explanation or detail. This threadbare and conclusory allegation is insufficient, and Plaintiffs' IIED claim should be dismissed. *See Transamerica Life Ins. Co. v. Joyce Ponso et. al. Additional Party Names: Catherine Cannady*, No. 220CV03738MCSMRW, 2020 WL 6875181, at *5 (C.D. Cal. Nov. 18, 2020) (dismissing IIED claim "based on conclusory allegations which do nothing more than parrot some of IIED's elements"); *Heine v. Vilsack*, No. 1:12-CV-01992-AWI, 2014 WL 7447619, at *4 (E.D. Cal. Dec. 31, 2014) ("conclusory" allegation of "severe emotional distress" insufficient to state claim).

## F.     THE FAC'S ADDITION OF AN INDIVIDUAL DEFENDANT DOES NOT IMPACT THIS MOTION.

The FAC's naming of an individual defendant is a blatant attempt to destroy the diversity existing at the time of removal. By not seeking leave to amend or referencing the

28

basis for the amendment within the FAC, it can only be presumed that Plaintiffs are attempting to amend as a matter of course under Fed. R. Civ. P. 15(a). However, the liberal amendment standard set forth in Rule 15 does not apply where, as here, the proposed amendment is "diversity-destroying." *Bakshi v. Bayer Healthcare, LLC*, No. C07-00881 CW, 2007 WL 1232049, at *2 (N.D. Cal. Apr. 26, 2007). Instead, a proposed amendment must be considered under 28 U.S.C. 1447(e), which "clearly gives the district court discretion to deny joinder." *Calderon v. Lowe's Home Centers, LLC*, No. 2:15-CV-01140-ODW, 2015 WL 3889289, at *3 (C.D. Cal. June 24, 2015).

The six "*Palestini*" factors should lead to the denial of the joinder of this non-diverse defendant. *Id*. Ms. Calabrese is not "needed for just adjudication" of the parties' dispute, and no prejudice will result from her non-joinder since the FAC alleges that the entity defendants are "vicariously responsible" for her actions. FAC ⁋ 19. Thus, Ms. Calabrese's actions are imputed to her employers pursuant to the doctrine of *respondent superior. See Calderon*, 2015 WL 3889289 at *4 (alleged negligent employee not necessary for just adjudication of claims against employer). Indeed, as SSLMI and Welltower represent the "deep-pocket[ed]" employers ultimately responsible for damages under *respondent superior*, Ms. Calabrese's addition as a defendant only serves "a tactical legal purpose [of] defeating diversity." *Id*.

Finally, Plaintiffs' proposed amendment filed approximately a month after removal and three weeks after the filing of Defendants' Motion to Dismiss is clearly intended to destroy diversity by asserting claims against Ms. Calabrese, which Plaintiffs

purposefully declined to assert in their initial Complaint.  The only Defendants identified in Plaintiffs' initial Complaint were SSLMI and Welltower. *See generally* Compl. While allegations are offered regarding Ms. Calabrese's role as Sunrise Villa's administrator and Executive Director, Plaintiffs purposefully elected <u>not</u> to name Ms. Calabrese as among the Defendants.[29] The Amended Complaint does not specifically allege that Ms. Calabrese cared for Mr. Garcia, or that her conduct was for her own benefit or personal advantage such that she can be personally liable. *See Calderon*, 2015 WL 3889289 at *6.  The timing and circumstances of this addition of an employee defendant therefore demonstrate that Plaintiffs having "nothing to gain … except for defeating diversity." *Id.* at *5.

## IV.   <u>CONCLUSION</u>

Plaintiffs' claims are preempted by the PREP Act and are otherwise improper, and should therefore be dismissed. To the extent a clarification of facts is necessary, Defendants request a hearing pursuant to FED.R.CIV.P. 12(i). Defendants also request such other relief as the Court deems proper.

Date: 1/6/21        Respectfully submitted by Attorneys for Defendants,

**CLARK HILL LLP**
By: /s/Michael P. West
Michael P. West / Ashley A. Escudero
mwest@clarkhill.com/aescudero@clarkhill.com
One America Plaza
600 West Broadway, Suite 500        Telephone: (619) 557-0404
San Diego, CA 92101                Facsimile: (619) 557-0460

---

[29] Nor can Plaintiffs allege that Ms. Calabrese is among the "DOES" referenced in their initial Complaint.  Plaintiffs allege that they are "ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 100 …." Compl. at ¶ 7. However, the Complaint expressly references Ms. Calabrese and her role as Sunrise Villa's Executive Director.

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

Dated: January 6, 2021

/s/ Michael P. West
Michael P. West

*Attorneys for Defendants*,
Sunrise Senior Living Management, Inc.,
Welltower OpCo Group, LLC dba Sunrise
Villa Culver City

*Attorney for Plaintiffs:*

Ayman R. Mourad, Esq.
Alexander N. Rynerson, Esq.
**LANZONE MORGAN LLC**
5001 Airport Plaza Dr., Suite 210
Long Beach, CA  90815
Tel:  (562) 596-1700
Fax:  (562) 596-0011
Email: eservice@lanzonemorgan.com
Email: arm@lanzonemorgan.com
Email: asr@lanzonemorgan.com

261689113.v1

MEMORANDUM ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT