**LANZONE MORGAN, LLP**
**Ayman Mourad, SBN 304161**
**Alexander S. Rynerson, SBN 329956**
**5001 Airport Plaza Drive, Suite 210**
**Long Beach, California 90815**
**Telephone: 562-596-1700**
**Facsimile: 562-596-0011**
eservice@lanzonemorgan.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA, individually; RONALD GARCIA, individually; GARY GARCIA, individually,<br><br>                              Plaintiffs,<br><br>         vs.<br><br>WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 100;<br><br>                              Defendants. | Case No.: 8:20-cv-02250-JVS (KESx)<br>Filed: 11-30-20<br>District James V. Selna<br>Assigned to Courtroom: 10C<br>Magistrate Judge Karen E. Scott<br>Assigned to Courtroom: 6D<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Ayman Mourad in Support thereof]<br><br>Date:    February 8, 2021<br>Time:   1:30 p.m.<br>Judge:  James V. Selna |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA, individually; RONALD GARCIA, individually; GARY GARCIA, individually; hereby submit this opposition to Defendants WELLTOWER

i

OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.'S Motion to Dismiss or Alternatively, for 12(b)(1) Hearing on the grounds that Defendants are not entitled to jurisdiction in this Court or application of immunity under the Public Readiness and Emergency Preparedness Act because Plaintiff Gilbert Garcia's injuries were not the direct result of the administration or use of a covered countermeasure.

Plaintiffs' opposition is based upon this Opposition, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Ayman Mourad in Support thereof, all previously-filed documents on file in this matter, and upon such other and further argument and evidence as may be presented at the time of hearing.

///

///

Dated: January 19, 2021                        Respectfully Submitted,


By:    /s/Ayman Mourad

**LANZONE MORGAN, LLP**
Ayman Mourad, SBN 304161
Alexander S. Rynerson, SBN 329956
5001 Airport Plaza Drive, Suite 210
Long Beach, California 90815
Telephone: 562-596-1700
Facsimile: 562-596-0011
eservice@lanzonemorgan.com
*Attorneys for Plaintiffs*

ii

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL SUMMARY ...................................................................................... 2

III.  LEGAL STANDARD .......................................................................................... 6

IV.   Legislative Background ...................................................................................... 7

V.    THE PREP ACT DOES NOT APPLY TO THE CASE AT BAR ........................ 8

   A.  The Plain Language of The PREP Act Establishes That It Does Not Apply to The Case at Bar ................................................................................................ 8

   B.  PREP Act Immunity is Not Available to Defendants .......................................... 9

   C.  Plaintiffs' Claims Are Not Preempted by The Prep Act ..................................... 10

      1.   The PREP Act Only Concerns the *Use* or *Administration* of a Covered Countermeasure, not the *Withholding* of Such ............................................ 10

      2.   PREP Act Immunity is Only Appropriate for a Narrow Class of Claims ....... 11

   D.  CONCLUSION .................................................................................................. 16

VI.   DEFENDANTS' OTHER ARGUMENTS ARE INVALID ................................. 16

   A.  DEFENDANTS DID NOT MEET AND CONFER REGARDING A LACK OF SUBJECT MATTER JURISDICTION ................................................................ 17

   B.  THE D.C. DISTRICT COURT DOES NOT HAVE JURISDICTION OF THIS CASE .. 17

   C.  PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ........................................................ 18

VII.  ALTERNATIVELY, PLAINTIFFS RESPECTFULLY REQUEST THAT THE COURT STAY THIS MATTER PENDING RULING ON PLAINTIFFS' MOTION TO REMAND ..... 20

VIII. CONCLUSION ................................................................................................... 21

iii

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 556 (2007)........................................................................... 6

*Bell v. Hood*,
   327 U.S. 678, 682-83 (U.S. 1946) ........................................................... 20

*Casablanca v. Mount Sinai Med. Ctr., Inc.*
   2014 WL 10413521 (N.Y. Sup. Ct. 2014).............................................. 15

*CMAX, Inc. v. Hall*,
   300 F.2d 265, 268 (9th Cir. 1962) ........................................................... 22

*Holden v. Hagopian*,
   978 F.2d 1115, 1118 (9th Cir. 1992) .................................................. 6, 19

*Kehler v. Hood*
   2012 WL 1945952 (E.D. Mo. 2012)....................................................... 16

*Kerins v. Hartley*
   27 Cal.App.4th 1062, 1075 (1994) .......................................................... 21

*Leyva v. Cert. Grocers of Cal., Ltd.*
   593 F.2d 857, 864 .................................................................................... 22

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871, 889 (U.S. 1990)................................................................ 20

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962, 969 (9th Cir. 2009) ............................................................. 6

*Parker v. St. Lawrence County Pub. Health Dept.*
   102 A.D.3d 140 (N.Y. App. Div. 2012) ................................................. 15

*Plotnik v. Meihaus*
   208 Cal.App.4th 1590, 1614 (2012) ....................................................... 21

*Potter v. Firestone Tire & Rubber Co.*
   6 Cal.4th 965, 1000 (1993)...................................................................... 21

*Puri v. Khalsa*,
   844 F.3d 1152, 1158 (9th Cir. 2017) .................................................. 6, 10

*Rivera v. Peri & Sons Farms, Inc..*
   735 F.3d 892, 902 (9th Cir. 2013.) ............................................... 7, 10, 13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035, 1039 (9th Cir. 2004) .................................................. 19, 20

*Wolfe. v. Strankman*,
   392 F.3d 358, 362 (9th Cir. 2004) ........................................................... 20

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## STATUTES

42 *U.S.C.* § 247d-6d ................................................................................................ 10

42 *U.S.C.* § 247d-6d(a)(1) ................................................................................... 8, 12

42 *U.S.C.* § 247d-6d(a)(2)(B) .................................................................................. 7

42 *U.S.C.* § 247d-6d(a)(3)(C)(i) ............................................................................ 10

42 *U.S.C.* § 247d-6d(b)(4) ....................................................................................... 9

42 *U.S.C.* § 247d-6d(d) ............................................................................................ 7

42 *U.S.C.* § 247d-6d(e) .......................................................................................... 16

42 *U.S.C.* § 247d-6d(e)(3)(A) ............................................................................... 16

42 *U.S.C.* § 247d-6d(i)(8) ...................................................................................... 13

42 *U.S.C.* § 247d-6d(a)(1) ...................................................................................... 11

*Federal Rule of Civil Procedure* 8(a)(2) ............................................................ 6, 18

## OTHER AUTHORITIES

Hon. Karen Shichman Crawford & Jeffrey Axelrad, *Legislative Modifications to Tort Liability:*
*The Unintended Consequence of Public Health and Bioterrorism Threats*, 45 Creighton
L.Rev. 337, 359 (Feb. 2012) ................................................................................... 7

*Local Rules – Central District of California,* Rule 7-3 ........................................ 12

## TREATISES

5B Wright & Miller, Federal Practice & Procedure § 1357 (3rd Ed. 2020) ......................... 6, 12

## REGULATIONS

42 *C.F.R.* 110 ............................................................................................................ 9

42 *C.F.R.* § 110.3(g) ........................................................................................ 12, 20

42 *C.F.R.* § 110.3(n) ........................................................................................ 12, 20

42 *C.F.R.* § 110.3(v) ........................................................................................ 12, 20

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs have brought only state law claims against Defendants for Elder Abuse and Neglect, Wrongful Death, and Intentional Infliction of Emotional Distress which arose due to Defendants' neglectful operations of the Residential Care Facility for the Elderly [hereinafter "RCFE"], Sunrise Villa Bradford [hereinafter "Sunrise" or the "Facility"]. As the owners of Sunrise, Defendants managed and operated the Facility in a manner which placed Plaintiff Gilbert Garcia at a profound risk of injury and death arising from the withholding of care, goods, and services necessary to provide for his basic needs, health, and welfare.

In response Defendants have attempted to remove this matter to Federal Court in an effort to dispense with all claims as being preempted by the Public Readiness and Emergency Preparedness Act [hereinafter "PREP Act"]. Defendants advance an extraordinarily broad application of the PREP Act which would essentially grant any entity which utilizes Covered Countermeasure Personal Protective Equipment [hereinafter "PPE"] such as N95 masks, immunity from any suit, irrespective of whether such use was the direct or proximate cause of the plaintiff's injuries. Despite the fact that district courts have repeatedly struck down efforts at removal filed under identical rationale, Defendants have persisted that the PREP Act preempts all of Plaintiffs' Claims because they utilized PPE within the facility. However, the PREP Act is a law primarily passed to immunize vaccine manufacturers and suppliers from liability in the event the federal government required their services to combat a pandemic or bioterrorism event, not to immunize custodial care providers from acts of reckless neglect revolving around systemic withholdings of care, irrespective of whether they coincidentally utilized PPE.

Defendants' argument necessarily fails on multiple grounds. The PREP Act provides immunity only to enumerated entities from claims related to the production, distribution, administration, or use of medical countermeasures. Plaintiffs' causes of action do not fall under this category because they arise not from the provision of medical

1

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

countermeasures, but rather, from Defendants' <u>failure to provide</u> basic custodial care. Further, Defendants are not among the category of entities who may claim PREP Act immunity. Similarly, Plaintiff Ronald Garcia's claim of Intentional Infliction of Emotional Distress [hereinafter "IIED"] is also not barred by PREP Act immunity. Finally, Plaintiffs' IIED claim pleads sufficient information to survive a motion brought under rule 12(b)(6). Therefore, Defendants' Motion to Dismiss lacks legal bases and must be denied.

## II.   <u>FACTUAL SUMMARY</u>

Plaintiff Gilbert Garcia [hereinafter "Plaintiff"] was an elderly resident of Sunrise, an RCFE located in Placentia, in the County of Orange, California. *First Amended Complaint* [hereinafter "FAC"], ¶¶ 23-24. Relevantly, RCFEs are <u>not</u> health care providers; they only provide basic custodial care and supervision to elderly residents. *Id.* ¶ 4. While Plaintiff resided at Sunrise, he was dependent upon Sunrise for the provision of his basic custodial needs, as well as his health, safety, and wellbeing. *Id.* ¶ 24.

Plaintiff resided at Sunrise when the novel coronavirus disease of 2019 [hereinafter "COVID-19"] pandemic began to have a global impact. *Id.* ¶ 26. COVID-19 poses an extreme risk to vulnerable communities such as the elderly, putting residents of RCFEs at an extremely high risk for complications or death related to COVID-19. *Ibid.* By January 26, 2020, California had its first confirmed COVID-19 case, which the California Department of Public Health [hereinafter "DPH"] responded to by providing Sunrise with guidance and recommendations to prepare for and prevent the spread of COVID-19. *Id.* ¶ 27. By late February 2020, COVID-19 had ravaged a nursing home in Washington, infecting two-thirds of the residents, forty-seven employees, and killing over forty of their number, which made nationwide headlines regarding the extremely high risk COVID-19 posed to the elderly. *Id.* ¶ 28. Defendants knew that Plaintiff suffered from multiple preexisting conditions which placed him at a particularly high risk of complications or death related to COVID-19, and therefore, that his health and safety demanded that Sunrise strictly observe infection control measures. *Ibid.* Thus, Defendants have knowledge that Plaintiff was substantially certain to suffer injuries if they denied of

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

withheld basic custodial care such as food, water, and the observation of simple infection control measures. *Id.* ¶ 29.

By March 4, 2020, Governor Gavin Newsom declared a state of emergency in California, specifically emphasizing the vulnerability of the state's elderly community and directing local and public health agencies to direct resources toward preparation and control of COVID-19. *Id.* ¶ 33. Despite this directive, Sunrise flaunted Governor Newsom's orders, the recommendations of the DPH, and local health guidelines by allowing visitors into the Facility and allowing residents to leave, thereby failing to implement reasonable infection control measures irrespective of the administration or use of PPE. *Ibid.* Only on March 17, 2020 did Sunrise begin to restrict the Facility's flow of traffic, weeks after the disease began to ravage elderly communities – weeks which were critical to prevent the spread of the infection among the population of Sunrise. *Id.* ¶ 34.

On May 12, 2020, Sunrise's CEO sent out a plea to its residents and their loved ones instructing them that the Facility lacked appropriate PPE necessary to observe basic infection control measures as required by the DPH and state and local orders. *Id.* ¶ 35. However, days later Defendant Sunrise Senior Living Management, Inc. [hereinafter "Sunrise Management"] dispatched a letter to the DPH stating that the Facility maintained sufficient PPE. *Ibid.* Yet, on May 31, 2020 Sunrise again sent a plea to its residents and their loved ones to contact their local congresspersons to provide more PPE for the Facility, which it lacked in appropriate numbers and quality to comply with state and local orders. *Id.* ¶ 37. That same day, despite this state of affairs and the increasing severity of the COVID-19 pandemic, Sunrise inexplicably relaxed its infection control measures by resuming group dining, thereby placing all of its residents at an unjustifiable risk of contracting COVID-19. *Ibid.* Further, Sunrise allowed third-party service providers to enter the Facility and have direct close-contact with residents in violation of its "strict no-visitor policy" of the infection control program, thereby placing residents and Plaintiff at an extreme risk of contracting outside pathogens such as COVID-19. *Id.* ¶ 38. Simultaneously, a Sunrise employee tested positive for COVID-19 on June 12, 2020. *Ibid.*

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

The foregoing failures to observe basic infection control protocols, as required by federal and state regulation, occurred without any relation to the administration or use of PPE or any other countermeasure covered under the PREP Act.

On June 13, 2020, Plaintiff reported being especially tired and shortly thereafter began experiencing diarrhea. *Id.* ¶ 39. During this time Plaintiff's family visited him via a video call and observed Sunrise staff administering Plaintiff's medications and eye drops without any gloves or gown, evincing the Facility's failing to follow infection control guidelines unrelated to the application or use of PPE. *Ibid.* On June 17, 2020, Sunrise informed residents and their families that all residents would be tested for COVID-19 the next day. That same day, Plaintiff informed his family that he was exhausted and had not been provided with any food all day. *Id.* ¶ 40. Later that day, Plaintiff began experiencing chills, which prompted Sunrise staff to suggest to Plaintiff Ronald Garcia that he personally transport Plaintiff to urgent care despite the risk posed both to Plaintiff and Ronald Garcia. *Id.* ¶¶ 40-41. Believing his had no choice but to transport Plaintiff to acute care, Ronald Garcia took his father to urgent care that night. *Id.* ¶ 41. At urgent care, physicians suspected that Plaintiff had been allowed to contract COVID-19 while under the care of Sunrise. *Ibid.*

Upon Plaintiff's return to Sunrise that night, he was forced to wait for fifteen minutes within the circulated air of his son's vehicle before being assisted back into the Facility by two employees who lacked PPE and therefore were not following infection control protocols. *Ibid.* Sunrise later admitted that it was not prepared for Plaintiff's return but admitted him despite the risks posed to his health, and Sunrise's residents and employees. *Id.* ¶ 47. Thus, for months Sunrise knowingly flaunted its own infection control measures which it held out to its residents and their loved ones while providing direct care to critically at-risk elders until Plaintiff contracted COVID-19. *Id.* ¶ 42.

On June 18, 2020, Plaintiff was experiencing confusion such that he was emergently transported to the hospital at the request of his family, where it was confirmed he had been allowed to contract COVID-19. *Id.* ¶¶ 43-44. Unsurprisingly, two days later Sunrise

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

provided notice to its residents that two residents and two employees had tested positive for COVID-19. *Id.* ¶ 44.

On June 26, 2020, Sunrise Management's Senior Vice President of Operations directed Sunrise to move to a lower degree of infection control precautions, provided they had gone fourteen consecutive days without a new confirmed case of COVID-19. *Id.* ¶ 45. Also on this day, the DPH released a notice to facilities such as Sunrise providing guidance on the resumption of visitation. *Id.* ¶ 46. This notice directed RCFEs with one or more confirmed cases of COVID-19 to suspend visitation, cancel communal dining and all group activities, require all residents to wear masks at all times, identify and restrict staff that work at multiple facilities to prevent cross-facility contamination, and review and restrict interaction with third-party vendors. *Ibid.* Inexplicably, on that same day – June 26, 2020 – despite the foregoing instance of COVID-19 infection on June 18th and 20th Sunrise resumed small group activities and communal dining and provided no plan to address the identification or restriction of employees working at multiple facilities *Id.* ¶¶ 45-46. Thus, Sunrise continued to act in direct contravention to all guidelines from state and local agencies and placed its residents and employees at an extreme risk of contracting COVID-19, irrespective of any administration of use of PPE or any other countermeasure covered under the PREP Act. *Id.* ¶ 46. As a logical consequence of such withholdings – namely failing to adhere to infection control protocols, ignoring Plaintiff's symptoms, ignoring Plaintiff's weight loss, and allowing staff to come into close contact with Plaintiff – Plaintiff Gilbert Garcia passed away on July 3, 2020. *Id.* ¶ 48-49. Despite Plaintiff's premature death, Sunrise continued to fail to develop and implement appropriate infection control protocols designed to prevent or minimize COVID-19 infection, in defiance of state, local, and national guidelines. *Id.* ¶ 50.

Financial and budgetary interests motivated Sunrise's foregoing withholdings of care. *Id.* ¶¶ 51-52. Its acts and omissions were not the result of mistake or inadvertence, rather, they were the natural result of Defendants' scheme to prioritize profits over resident health and wellbeing by underfunding, undertraining, and understaffing the Facility, and

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

ignoring proper infection control measures. *Ibid*. As an RCFE, Defendants knew that this scheme would result in extreme risk to the health, safety, and welfare of its residents, its employees, and Plaintiff Gilbert Garcia.

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure, Rule 8, states that complaints in federal court must consist of "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Fed. R. Civ. Proc* ["*FRCP*"] 8(a)(2). This is a purposefully low bar, as a claim "may proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and the plaintiff is unlikely to succeed on the merits. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A motion to dismiss brought under FRCP Rule 12(b)(6) will only be granted provided the pleadings fail to state a claim upon which relief may be granted. The Court is required to assume the truth of all well-pled factual allegations and draw "all reasonable inferences in favor of the nonmoving party." *Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992). Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

An affirmative defense can serve as the basis for dismissing a complaint at the pleading stage under FRCP Rule 12(b)(6) "<u>only when the elements of the defense appear on the face of the complaint</u>." *Puri v. Khalsa*, 844 F.3d 1152, 1158 (9th Cir. 2017) [emphasis added]. To serve as the basis for dismissal under FRCP Rule 12(b)(6), "the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." 5B Wright & Miller, Federal Practice & Procedure § 1357 (3rd Ed. 2020). Put succinctly, the affirmative defense must be "obvious on the face of the complaint" to be the basis of a Rule 12(b)(6) dismissal. *Rivera v. Peri & Sons Farms, Inc.*. 735 F.3d 892, 902 (9th Cir. 2013.)

\\\

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## IV.   **LEGISLATIVE BACKGROUND**

In 2005, Congress enacted the PREP Act to protect vaccine manufacturers from financial risk in the event of a public health emergency such as a pandemic or bioterrorism attack. Hon. Karen Shichman Crawford & Jeffrey Axelrad, *Legislative Modifications to Tort Liability: The Unintended Consequence of Public Health and Bioterrorism Threats*, 45 Creighton L.Rev. 337, 359 (Feb. 2012). The PREP Act does not provide immunity to medical providers for negligence claims "unrelated to vaccine administration and use." *Ibid.* Nor was the PREP Act intended to provide immunity to nonmedical custodial care providers such as RCFEs because they are not legally allowed to administer or distribute vaccines. *Ibid*; *see*, 42 *U.S.C.* § 247d-6d(a)(2)(B). Finally, the PREP Act provides no immunity for acts of willful misconduct, which are not dissimilar to the acts of reckless neglect central to causes of action for Elder Abuse. 42 *U.S.C.* § 247d-6d(d).

The PREP Act permits the United States Department of Health and Human Services Secretary [hereinafter "HHS Secretary"] to declare a public health emergency through publication in the Federal Register, recommending the manufacture, development, testing, distribution, administration or use, of one or more "covered countermeasures," and to activate the immunity protections of the PREP Act. On March 17, 2020, the HHS Secretary issued an emergency declaration related to COVID-19 and issued an amendment to it on April 15, 2020. 85 *Fed.Reg.* 15198-203 (Mar. 17, 2020): Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19; 85 *Fed.Reg.* 21012-14 (Apr. 15, 2020).

Additionally, as part of the PREP Act, Congress created the Covered Countermeasures Injury Compensation Program [hereinafter "CICP"], to provide extremely limited relief to those injured by "covered countermeasures," with strict requirements. The CICP provides remedy to plaintiffs who claim that they 1) received or used a "covered countermeasure," and 2) the "covered countermeasure" directly caused the countermeasure recipient serious bodily injury or death. 42 *U.S.C.* § 247d-63(b)(4); 42 *C.F.R.* Part 110 (2020). Only an "injured countermeasure recipient" may request

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

compensation under the Program. 42 *C.F.R.* § 110.3(g), (n), and (v) (2020) [emphasis added].

## V.   THE PREP ACT DOES NOT APPLY TO THE CASE AT BAR

Defendants' primary argument that the FAC fails to state a claim is that the PREP Act completely preempts all of Plaintiffs' state law claims and precludes recovery except as narrowly provided within the Act itself. This argument lacks merit as Plaintiffs' claims are not preempted by the PREP Act because they do not implicate "covered countermeasures," and because Defendants are not of the class of entities intended for immunity.

### A. The Plain Language of The PREP Act Establishes That It Does Not Apply to The Case at Bar

In determining the applicability of any legislative act, this Court must look to the plain meaning of its statutory text. The language of the PREP Act itself makes extensive reference to affirmative actions taken to administer, supply, or otherwise use an "approved countermeasure". 42 *U.S.C.* § 247d-6d(a)(1) ["resulting from the administration to or the use by…"]; *Id.* at (a)(2)(B) ["[immunity] applies to any claim for loss that has a causal relationship with the administration to or use … including … the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure."]. Thus, the plain language of the statute itself speaks to granting immunity for <u>affirmative acts</u> related to the administration of an "approved countermeasure," which makes sense within the legislative intent to protect vaccine manufacturers and suppliers from lawsuits arising from critically needed vaccines during times of emergency. Notably absent from the language of the statute is the legislative intent to provide immunity for a covered entity's failure to take any action, which is a highly dissimilar state of culpability.

Here, a comparison of the plain language of the PREP Act with the allegations of the FAC demonstrate that Plaintiffs' suit concerns only Defendants' <u>inaction</u> [i.e.

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

withholding of food, withholding of PPE, withholding infection control measures, failure to observe DPH guidance, failure to observe local agency guidance, failure to restrict visitors, failure to restrict third party vendors, failure to isolate residents, etc.], as opposed to any affirmative action related to a covered countermeasure, as detailed above. Thus, Plaintiffs' claims fall outside of the scope of PREP Act.

Furthermore, the language of the CICP expressly states that the injury or death of the claimant must be "the direct result of the administration or use of the covered countermeasure." 42 *U.S.C.* § 247d-6d(b)(4); 42 *C.F.R.* 110 (2020) [emphasis added]. Thus, the remedial portion of the PREP Act similarly speaks only to individuals harmed by the direct administration or use of a "covered countermeasure," as opposed to an individual harmed by the failure to provide as much. Considering the extremely narrow remedial requirements provided by the CICP, Plaintiffs' claims fall outside of its scope, leaving them without any remedy within the PREP Act itself. Thus, the remedies under the CICP demonstrate that Plaintiffs' claims fall outside of the scope of the types of injuries which the PREP Act concerns.

Therefore, the plain language of the PREP Act and of the CICP carve out an implicit exception for cases arising out of facts as alleged in the FAC – those stemming from a defendant's *failure to act* as opposed to a defendant's *negligent acts*.

### B. PREP Act Immunity is Not Available to Defendants

The PREP Act provides immunity to a covered entity under a very narrow set of criteria – criteria which Defendants cannot satisfy as an affirmative defense.

For a party to claim any affirmative defense, its elements must be obviously present upon the face of the complaint. (*Puri v. Khalsa, supra,* 844 F.3d 1158; *accord, Rivera v. Peri & Sons Farms, Inc., supra*, 735 F.3d, 902 [the elements of an affirmative defense must be "obvious" on the face of the operative complaint].) The PREP Act provides immunity to a covered entity if the following elements are obviously present upon the face of the complaint: (1) during the effective period of the Declaration; (2) to combat the health threat identified in the Declaration; (3) a "covered countermeasure"; (4) is

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

<u>administered</u> to or <u>used</u> by an individual in the identified population; and (5) that individual claims a loss that was caused by, arises out of, relates to or results from the <u>administration</u> to, or <u>use</u> by the individual of a covered countermeasure. 42 *U.S.C.* § 247d-6d(a)-(b) [emphasis added]. Thus, for PREP Act immunity to apply, the complaint must plainly allege that the plaintiff's injuries arose from the *administration* of a covered countermeasure, and that this covered countermeasure *caused* the injuries.

Here, all of allegations present upon the face of the FAC concern Sunrise's withholding of care, goods, and services to Plaintiff. Absent from the face of the FAC are any allegations that Sunrise administered or used PPE at any time, let alone that Plaintiff was harmed by Sunrise's use administration or use of PPE. Accordingly, PREP Act immunity is unavailable to Defendants as an affirmative defense and cannot provide grounds for their motion to dismiss.

Therefore, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss based upon the plain inapplicability of PREP Act immunity as an affirmative defense to the FAC.

**C. Plaintiffs' Claims Are Not Preempted by The Prep Act**

As discussed *supra*, the PREP Act can only provide immunity from claims which arise from, and are caused by, the administration or use of a covered countermeasure. Further, as none of Plaintiffs' claims implicate these narrow criteria on the face of the complaint, PREP Act immunity is unavailable to defendants as an affirmative defense. However, assuming *arguendo* that Defendants' affirmative defense was available, Defendants' argument that these claims are subject to immunity necessarily fails because Plaintiffs' claims are not covered by PREP Act immunity.

**1.    The PREP Act Only Concerns the *Use* or *Administration* of a Covered Countermeasure, not the *Withholding* of Such**

While the PREP Act itself fails to define the class of persons it applies to, it directs to the relevant Declaration from the HHS Secretary. 42 *U.S.C.* § 247d-6d(a)(3)(C)(i). The HHS Secretary's Declaration provides that it is the end-use recipient of a countermeasure

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

who is the class of persons who are deemed to have used a covered countermeasure, or to whom a countermeasure was administered – those who should be vaccinated, medicated, or provided some other countermeasure, namely, the **patient**. 85 *Fed. Reg.* 15200, Section X [the population includes 'any individual who uses or who is administered a Covered Countermeasure in accordance with the Declaration.'"].

Thus, the ambit of the PREP Act concerns only those countermeasures which are actually administered to or used by a patient. Consequently, whether a facility or its staff utilize PPE for themselves or other patients is immaterial, and cannot provide the basis for PREP Act immunity as Defendants claim. As the FAC contains no allegations that Plaintiff's own use or lack of use of PPE contributed to his death, it follows that there exist no grounds to support an affirmative defense of PREP Act immunity. Rather, it is because the FAC alleges only that Sunrise *withheld* PPE and *failed* to create and manage proper infection control protocols unrelated to PPE, that its scope is necessarily outside of the type of injuries contemplated under the PREP Act.

### 2. PREP Act Immunity is Only Appropriate for a Narrow Class of Claims

The PREP Act may provide immunity, but only from a very narrow class of claims which allege a loss "caused by, arising out of, relating to, or resulting from the *administration* to or the *use* by an individual of a covered countermeasure…" 42 *U.S.C.* § 247d-6d(a)(1) [emphasis added]. While the term "administration" is not defined by the Act itself, the Declaration provides that "administration" within the context of the PREP Act refers **only to the patient who uses or is administered a covered countermeasure.** 85 *Fed. Reg.* 15200, Section IX ["The definition of 'administration' extends only to physical provision of a countermeasure to a recipient, such as a vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations providing countermeasures to recipients, such as decisions and actions involving security or queuing, but only insofar as those activities directly relate to countermeasure activities. **Claims for which Covered Persons are provided immunity under the Act**

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**are losses caused by, arising out of, relating to, or resulting from the administration to or use by an individual of a Covered Countermeasure consistent with the terms of a Declaration issued under the Act.**" [emphasis added]]. The Secretary even provided examples of the types of claims which the PREP Act would preclude: "for example, liability claims alleging negligence by a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing the wrong dose…" *Ibid.* "However, a liability claim alleging an injury … that was not directly related to the countermeasure activities is not covered, such as a slip and fall with no **direct connection to the countermeasure's administration or use**." *Ibid.*

Here, for Defendants to invoke PREP Act immunity, Plaintiffs' claims must have been based upon injuries arising from the *actual* administration or use of a covered countermeasure by Plaintiff, not Defendants' failures to provide such because the Secretary's Declaration explicitly carves out an exception for any and all claims with no direct connection to the countermeasure's *actual* administration or use. Considering that the FAC alleges no injuries arising from the administration to or use of a covered countermeasure by Plaintiff, it follows that Defendants' PREP Act argument must fail. 42 *U.S.C.* § 247d-6d(a)(1); 85 *Fed. Reg.* 15200.

        a. <u>Defendants are not "Qualified Persons" nor "Program Planners"</u>

It is not "clearly indicated," nor "obvious" on the face of the FAC that Defendants are "qualified persons" or "program planners" entitled to immunity under the PREP Act. *Rivera, supra,* 735 F.3d at 902 [to support an affirmative defense must be obvious on the face of the complaint]; 5B Wright & Miller, Federal Practice & Procedure § 1357 (3rd Ed. 2020) [facts supporting an affirmative defense must be clearly indicated on the face of the complaint].

Further, under the Declaration, an entity may qualify as a "Program Planner," or "Qualified Person," only "**when the countermeasure is either used by or administered to [patients]**." 85 *Fed. Reg.* 15200, Section X. As none of Plaintiffs' allegations concern

12

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

injuries arising from the actual use or administration of a Covered Countermeasure, none of Defendants may qualify as a "Qualified Person," nor "Program Planner."

Furthermore, a "Program Planner" "means a … person who supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a Covered Countermeasure." 85 *Fed. Reg.* 15200, Section V. Defendants do not operate a program which exists to administer, dispense or otherwise do any of the foregoing tasks associated *with the dispensing of vaccines*, and Plaintiffs have alleged that Defendants *failed* to operate any sort of program to properly administer a Covered Countermeasure. In truth, Defendants operate a for-profit RCFE which does not even qualify as a healthcare provider. Defendants are no more of a "Program Planner" than any other business which happens to utilize N95 masks.

Finally, a "Qualified Person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures…" 42 *U.S.C.* § 247d-6d(i)(8). Importantly, the term "licensed health professional" is modified by the phrase "or other individual," meaning that the former refers only to an actual person licensee as opposed to a corporate licensee who owns or operates a business. There is nothing on the face of the FAC which supports the conclusion that any of Defendants were "Qualified Persons."

      b. No Covered Countermeasure was Administered to or Used by Plaintiffs

First, the FAC alleges that Plaintiffs were injured because Defendants failed to provide Covered Countermeasures and failed to create and manage proper infection control protocols, despite knowledge of the danger posed by such a practice. Absent from the FAC are any allegations that Plaintiffs' claims were caused by the administration or use of a Covered Countermeasure. Therefore, Plaintiffs' claims fall outside of the scope of the PREP Act.

As discussed *supra*, PREP Act immunity is afforded only to those claims which are directly related to a Covered Countermeasure actually being administered to, or used by,

a patient. This fact is crucial, as the FAC contains no allegations that Plaintiffs' injuries were caused by the administration or use of a Covered Countermeasure. Therefore, under this strict framework provided by the Declaration and PREP Act itself, Defendants arguments can largely be dispensed with because they rely upon the premise that because a Covered Countermeasure was used within the facility, it must necessarily follow that they are immune from any claims whatsoever. This interpretation is unreasonably broad and does not comport with the plain language of the Act itself nor the Declaration. In truth, Defendants simply cannot shoehorn these claims into the scope of the PREP Act.

Three courts have interpreted the PREP Act's "administered to" language, and have all ruled that "administered to" is to be strictly construed to mean the actual and physical provision of a Covered Countermeasure to the plaintiff. *See, Parker v. St. Lawrence County Pub. Health Dept.* 102 A.D.3d 140 (N.Y. App. Div. 2012) [finding that a battery claim arising from an actual nonconsensual vaccination was preempted by the PREP Act because the alleged misconduct was actual, affirmative, and physical].[1] However, if a plaintiff's injuries arose out of a *failure* to provide a Covered Countermeasure, or due to misconduct unrelated to the physical provision of a Covered Countermeasure, **the PREP Act does not apply**. *See, Casablanca v. Mount Sinai Med. Ctr., Inc.* 2014 WL 10413521 (N.Y. Sup. Ct. 2014) [finding that plaintiff's death due to a hospital's alleged failure to administer a vaccine fell outside the PREP Act because it only concerned defendants' failure to provide the vaccine, as opposed to the "physical provision of a countermeasure to a recipient"]; *Kehler v. Hood* 2012 WL 1945952 (E.D. Mo. 2012) [finding that plaintiff's claim of damages arising from a physician's failure to obtain informed consent prior to administering a vaccine not preempted by the PREP Act because the misconduct arose from the failure to obtain informed consent, not the physical act of administrating the vaccine.].

---

[1] It is worth noting that *Parker* is the only directly-applicable authority to which Defendants cite to support their argument that the PREP Act precludes Plaintiffs' state law claims.

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

None of Plaintiffs' injuries are alleged to have been caused by the administration/use of PPE, and the fact that PPE was used within the facility does not bring these claims under the scope of the PREP Act. *Defendants' Motion to Dismiss* (hereinafter "*MTD*"), pg. 17, ln. 10. None of Plaintiffs' injuries are alleged to have been caused by the administration/use of diagnostic devices, and all of Defendants' citations from the FAC are unrelated to Plaintiffs' injuries and causation. *MTD* pg. 18, ln. 18. Neither can Defendants reasonably argue that because they utilize covered countermeasures in their infection control program [assuming an infection control program had actually been enacted and managed properly], that they must be afforded complete immunity to all infectious-disease claims, irrespective of their relation to the related Covered Countermeasure. *MTD* pg. 19, ln. 21. Finally, Defendants cannot claim immunity from suit because they merely "engaged in Recommended Activities" unrelated to the actual administration/use of a Covered Countermeasure directly to Plaintiff. Plaintiffs have alleged only that their injuries arose from Defendants' *failures* to provide goods and services amounted to knowing withholdings – acts and omissions which are plainly outside of the scope of the Act under the plain language of the PREP Act itself, the Declaration, and the authority of other district courts.

### c. There are No Administrative Remedies Available to Plaintiffs

Defendants' argument that Plaintiffs failed to exhaust administrative remedies and that remedy should have been sought elsewhere is incorrect as it assumes that the PREP Act applies, and because there are no alternative means of seeking remedy beyond filing this lawsuit. In truth, should the Court dismiss this case under Defendants' rationale, Plaintiffs will be left entirely without remedy.

As discussed, *supra* at pg. 13, lns. 6-15, the CICP only provides a remedy to plaintiffs who claim that 1) a "covered countermeasure" was administered to or used by the patient, and 2) the "covered countermeasure" directly caused the plaintiff countermeasure recipient serious bodily injury or death. 42 *C.F.R.* § 110.3(g),(n) and (v). Plaintiffs do not allege that a test, mask or other PPE was administered to or used by

Plaintiffs, much less that such activity directly led to Plaintiff's death. Accordingly, the FAC does not raise a claim related to masks or other PPE that could be heard by the CICP. Therefore, Plaintiffs may not bring these claims under the CICP, and no administrative remedies are available to exhaust.

Further, the FAC could not state a cause of action under 42 *U.S.C.* § 247d-6d(e) – the alternative "remedy" Defendants suggest Plaintiffs should pursue. To pursue a claim under 42 *U.S.C.* § 247d-6d(e) a plaintiff needs to allege "willful misconduct relating to the covered countermeasure administered to or used by the person on whose behalf the complaint was filed." 42 *U.S.C.* § 247d-6d(e)(3)(A). As no covered countermeasure was alleged to have been administered to or used by Plaintiffs and no injuries are alleged to have arisen from such, Plaintiffs simply cannot meet the requirements under 42 *U.S.C.* § 247d-6d(e).

### D. CONCLUSION

In light of the foregoing, the FAC does not implicate the PREP Act, and the PREP Act is entirely inapplicable to the case at bar. Therefore, Defendants' Motion to Dismiss should be denied in its entirety as PREP Act immunity is unavailable to Defendants.

## VI. <u>DEFENDANTS' OTHER ARGUMENTS ARE INVALID</u>

In an effort to dispense with the entirety of Plaintiffs' entire case and thereby deprive them of any remedy whatsoever, Defendants argue that the Court lacks subject matter jurisdiction to hear any of their claims. This argument relies entirely on the conclusion that the PREP Act applies to the case at bar, and that administrative remedy would be available to Plaintiffs. Further, Defendants' argument ignores the clear standard of evaluating a pleading based upon the allegations contained therein. For the following reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction, and for failure to state a claim must be overruled.

///

///

///

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## A. DEFENDANTS DID NOT MEET AND CONFER REGARDING A LACK OF SUBJECT MATTER JURISDICTION

"In all cases … counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." *See, Local Rules – Central District of California,* Rule 7-3.

Here, on December 23, 2020, counsel for Defendants met and conferred with counsel for Plaintiffs regarding the grounds for their motion to dismiss. In that discussion, at no point was a lack of subject matter jurisdiction ever raised, nor Defendants' argument that the D.C. District Court is the only proper venue for this matter. *See, Declaration of Ayman R. Mourad, Esq.* Therefore, Defendants have failed to comply with the Local Rule of the Central District of California No. 7-2, and Defendants' 12(b)(1) motion should be denied on that ground.

## B. THE D.C. DISTRICT COURT DOES NOT HAVE JURISDICTION OF THIS CASE

As discussed, *supra*, Plaintiffs' case does not fall under the scope of the administrative remedy contemplated under the CICP. The only exception to this administrative remedy is for cases which concern willful misconduct, which must be referred to the D.C. District Court. However, under the same rationale detailed *supra*, all of Plaintiffs' claims fall outside of the scope of the PREP Act because they only concern Defendants' failures to provide basic custodial care including following federal and local guidelines and observing basic infection control protocols, **not** from the actual and physical administration or use of a Covered Countermeasure. Therefore, the D.C. District Court does not have jurisdiction over this case because the PREP Act is inapplicable.

///

///

///

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

### C. PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants' motion to dismiss for failure to state in claim in regard to Plaintiffs' Intentional Infliction of Emotional Distress [hereinafter "IIED"] claim necessarily fails because it facially attacks the claim while implicating evidentiary matters without admitting evidence in support thereof. Facially, Plaintiffs' IIED claim presents a claim which may be adjudged, and which a trier of fact must weigh.

To state a claim, plaintiffs must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *FRCP* 8(a)(2). When a defendant facially attacks subject matter jurisdiction by "assert[ing] that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction [*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)], the court is required to assume the truth of all well-pled factual allegations and draw "all reasonable inferences in favor of the nonmoving party." *Holden v. Hagopian*, *supra* at 1118 (9th Cir. 1992); *accord*, *Wolfe. v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). As such, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (U.S. 1990). The Ninth Circuit has noted that "jurisdictional dismissals in cases premised on federal-questions jurisdiction are exceptional" and may be granted only "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial." *Safe Air for Everyone v. Meyer*, *supra* at 1039 (9th Cir. 2004) [quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (U.S. 1946)].

Here, Defendants have provided a facial attack upon Plaintiff Ronald Garcia's IIED claim, arguing that he has failed to state a claim because of a lack of outrageous conduct on the part of Defendants. However, all of the authority offered in support of this argument is predicated upon a weighing of evidence necessary to determine if requiring someone to expose themselves to COVID-19 in order to safeguard the health of their infected loved one is outrageous enough to prevail on the claim. Defendants fail to attack the *pleading*, and instead attack the sufficiency of the evidence, which must be left to the trier of fact to

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

determine. While Defendants could have factually attacked this claim in support of their motion, the neglected to do so. To be sure, Plaintiffs have properly pled a claim of IIED.

In determining whether a claim of IIED may survive a pleading challenge, "the trial court initially determines whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Where reasonable mend can differ, the jury determines whether the conduct has been extreme and outrageous to the result in liability. Otherwise stated, the court determines whether severe emotional distress can be found; the jury determines whether on the evidence it has, in fact, existed." *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1614. The COVID-19 pandemic needs no introduction, but has posed an extreme risk of serious injury, permanent disability, and death to almost every person in the United States. While this cutting-edge of the law has not been ruled on as of yet, numerous cases have found that knowingly exposing or failing to disclose exposure to a serious and very publicly-known illness is sufficient to constitute extreme and outrageous conduct to support an IIED claim. *See, Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1000 [defendant engaged in extreme and outrageous conduct by dumping hazardous waste and thereby causing fear of cancer]; *Kerins v. Hartley* (1994) 27 Cal.App.4th 1062, 1075 [defendant surgeon engaged in extreme and outrageous conduct by operating without disclosing his HIV infection]; *See also,* 41 Santa Clara L. Rev. 661 [discussing emotional distress issues raised by the release of toxic and viral materials]. Thus, whether a care provider delegating their duty to provide care to a COVID-19-infected elder to their loved one, and in the process knowingly exposing them COVID-19, in order to transport the elder to a hospital to receive critically-necessary care may be extreme and outrageous is a matter which should be left to the trier of fact. Regardless, Plaintiffs have properly pled conduct which a reasonable trier of fact could find to be extreme and outrageous.

///

///

///

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## VII.   **ALTERNATIVELY, PLAINTIFFS RESPECTFULLY REQUEST THAT THE COURT STAY THIS MATTER PENDING RULING ON PLAINTIFFS' MOTION TO REMAND**

To the extent the Court is inclined to grant Defendants' motion to dismiss, Plaintiffs respectfully request that the Court stay this matter until such time as Plaintiffs' Motion to Remand may be heard. As discussed *supra*, should the Court grant Defendants' motion to dismiss, Plaintiffs will be left without any remedy whatsoever. However, should the Court remand this case back to state court, Defendants' motion to dismiss will be moot and Plaintiffs will be able to pursue remedy in their chosen venue, the Superior Court of California.

As Defendants have briefed, a trial court possesses the discretion to stay matters "pending resolution of independent proceedings which bear upon the case." *Leyva v. Cert. Grocers of Cal., Ltd.* 593 F.2d 857, 864 (9th Cir. 1979). In determining whether to exercise such discretion, the court should look to: (1) whether damage will result from granting the stay; (2) the hardship posed to forcing a party to proceed without a stay; and (3) the orderly course of justice, as measured in terms of simplifying issues in dispute. *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962).

Here, Plaintiffs' motion to remand is set for hearing on February 1, 2021. It is highly likely that the Court will hear this matter before making a ruling on Defendants' motion to dismiss, but in the event Plaintiffs' motion to remand is continued, neither party will suffer prejudice by having this matter stayed until the matter of remand may be decided. In fact, staying this matter pending resolution of Plaintiffs' motion to remand will relieve the burden on the parties to submit additional briefing and to attend a hearing on a matter that may be moot. Further, dismissing Plaintiffs' case before hearing the motion to remand will leave Plaintiffs without any remedy whatsoever, as discussed *supra*. Such facts dictate that extreme hardship will be imposed upon Plaintiffs by forcing this matter to proceed. Finally, staying this matter pending resolution of remand will relieve the burden on the Court in having to issue a ruling on a matter than may be moot.

**VIII.  <u>CONCLUSION</u>**

In consideration of the foregoing, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety. Alternatively, Plaintiffs respectfully request that the Court stay ruling on this matter until such time as Plaintiffs' motion to remand may be heard.

Dated: January 19, 2021                              Respectfully Submitted,


By:   /s/Ayman Mourad

**LANZONE MORGAN, LLP**
Ayman Mourad, SBN 304161
Alexander S. Rynerson, SBN 329956
5001 Airport Plaza Drive, Suite 210
Long Beach, California 90815
Telephone: 562-596-1700
Facsimile: 562-596-0011
eservice@lanzonemorgan.com
*Attorneys for Plaintiffs*

21

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**