Michael P. West, Esq. (SBN 172478)
Ashley A. Escudero, Esq. (SBN 250473)
**CLARK HILL LLP**
600 West Broadway, Suite 500
San Diego, California 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460
mwest@clarkhill.com
aescudero@clarkhill.com

*Attorneys for Defendants,*
Welltower OpCo Group LLC,
Sunrise Senior Living Management, Inc.,
and Ruzica Calabrese

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA individually; RONALD GARCIA, individually; GARY GARCIA, individually,<br><br>        Plaintiffs,<br><br>v.<br><br>WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; RUZICA CALABRESE; and DOES 1 through 100,<br><br>        Defendants. | Case No.   8:20-CV-02250-JVS (KESx)<br><br>**DEFENDANTS WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD, SUNRISE SENIOR LIVING MANAGEMENT, INC., and RUZICA CALABRESE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:     February 8, 2021<br>Time:     1:30 p.m.<br>Judge:   James V. Selna |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................................i

TABLE OF AUTHORITIES ................................................................. iii

I.      INTRODUCTION ...........................................................................1

II.     ARGUMENT...................................................................................2

        A.      Scope and Intent of the PREP Act. ......................................2

        B.      Plaintiffs Plead Acts and Omissions Involving Covered
                Countermeasures. ................................................................4

                1.      Plaintiffs Plead Affirmative Acts of Covered
                        Countermeasures.......................................................4

                2.      Plaintiffs Plead Omissions (Failure to Act) Involving
                        Covered Countermeasures. .......................................5

                3.      Plaintiffs Plead Causation........................................8

        C.      The PREP Act Completely Preempts Plaintiffs' Claims. .....8

                1.      The PREP Act Preempts Plaintiffs' California Statutory
                        and Common Law Claims. .......................................9

                2.      Defendants Have Not Failed to Comply With Guidance.
                        ..............................................................................10

                3.      Plaintiffs Have Not Pled a Failure to Meet a Standard of
                        Care. ......................................................................12

                4.      The Case Law Cited by Plaintiffs Is Inapplicable or
                        Distinguishable. .....................................................13

        D.      Plaintiffs' Allegations of Willful Misconduct Must Be
                Dismissed. .........................................................................15

        E.      Plaintiffs' Intentional Infliction of Emotional Distress Claim
                Must Be Dismissed. ...........................................................17

        F.      All Meet and Confer Requirements Were Met. ..................20

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G.    Defendants' Motion to Dismiss Should Not Be Stayed Pending Remand.................................................................................20

III.    CONCLUSION ..........................................................................22

CERTIFICATE OF SERVICE ..............................................................23

ii

# TABLE OF AUTHORITIES

## CASES

*Aguinaldo v. Ocwen Loan Servicing, LLC*,
5:12-CV-01393-EJD, 2012 U.S. Dist. LEXIS 125400, at *19-20,
(N.D. Cal. Sept. 04, 2012) .................................................................. 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 11

*Berkley v. Dowds*,
152 Cal. App. 4th at 534 (2007) .................................................... 17, 18

*Casablanca v. Mount Sinai Med. Ctr.*,
2014 WL 10413521 (N.Y. Sup. Ct. 2014) ...................................... 13, 14

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) ............................................................................. 4

*Galvan v. Walt Disney Parks & Resorts*, U.S., Inc.,
No. SACV1801721ABFFMX, 2019 WL 8017809 (C.D. Cal. Nov.
27, 2019) .......................................................................................... 17

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .............................................. 11

*Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*,
545 U.S. 308 (2005) ...................................................................... 10, 21

*Hugh v. Pair*,
46 Cal. 4th 1035, 209 P.3d 963 (2009) ................................................ 18

*Hunter v. Bryant*,
502 U.S. 224 (1991) ........................................................................... 21

*JKC3H8 v. Colton*,
221 Cal. App. 4th 468 (Cal. App. 2013) ............................................... 9

*Kantrow v. Celebrity Cruises, Inc.*,
2020 U.S. Dist. LEXIS 245374, *33-34 (S.D. Fla. Dec. 29, 2020) ............. 19

*Kehler v. Hood*,
    2012 WL 1945952 (E.D. Mo. May 30, 2012).........................................13, 15

*Kerins v. Hartley*,
    27 Cal. App. 4th 1062, 33 Cal. Rptr. 2d 172 (1994)................................19

*Khan v. 7-Eleven, Inc.*,
    14-00522-DMG, 2015 U.S. Dist. LEXIS 186848, *13 (C.D. Cal. May 6, 2015).....................................................................................................18

*Moore v. Avery*,
    125 F. App'x 763 (9th Cir. 2005) ...........................................................20

*Ni v. Royal Bus. Bank of Los Angeles*,
    607 F. App'x 720 (9th Cir. 2015) ...........................................................10

*Orsonio v. Armond*,
    No. B174092, 2005 Cal. App. Unpub. LEXIS 6054, at *24–25 (July 13, 2005)...........................................................................................21

*Parker v. St. Lawrence Cty.*,
    Pub. Health Dep't, 102 A.D.3d 140, 954 N.Y.S.2d 259 (3d Dep't App. Div. 2012)....................................................................................13, 14

*Physicians Com. For Responsible Medicine v. Tyson Foods, Inc.*,
    (2004) 119 Cal. App. 4th 120...................................................................21

*Plotnik v. Meihaus*,
    (2012) 208 Cal.App.4th 1590...................................................................19

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965, 25 Cal. Rptr. 2d 550 (1993) ...........................................18

*Potter v. Firestone Tire & Rubber Co.*,
    (1993) 6 Cal.4th 965.................................................................................19

*Serrano v. Francis*,
    345 F.3d 1071 (9th Cir. 2003) .................................................................20

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...................................................................11

*Van Horn v. Hornbeak*,
    2009 U.S. Dist. LEXIS 16134, *16 (E.D. Cal. Feb. 18, 2009)..............18, 19

iv

1

## <u>STATUTES</u>

**42 U.S.C. § 247d-6(e)(a)** .................................................................. 1, 15

42 U.S.C. § 247d–6d(a)(1) ............................................. 9, 12, 14, 17

42 U.S.C. § 247d-6d(a)(2)(A)(ii)-(iii) ......................................... 17

42 U.S.C. § 247d–6d(a)(2)(A)(ii)-(iii) ............................................ 9

42 U.S.C. § 247d–6d(a)(b)(8) ........................................................ 9

42 U.S.C. § 247d–6d(b) .......................................... 9, 12, 17

42 U.S.C. § 247d-6d(b)(1) ........................................................... 4

42 U.S.C. § 247d-6d(b)(4) ........................................................... 4

42 U.S.C. § 247d-6d(b)(7) ........................................................... 4

42 U.S.C. § 247d-6d(c)(1)(B) ...................................................... 6

42 U.S.C. § 247d-6d(c)(4) .............................................. 2, 6, 7, 16

42 U.S.C. § 247d-6d(e)(1) .................................................... 2, 16

42 U.S.C. § 247d-6d(e)(4) ......................................................... 16

42 U.S.C. § 247d-6d(e)(5) .................................................... 2, 16

42 U.S.C. § 247d-6e(c) .............................................................. 16

42 U.S.C.A. § 247d-6d ............................................................... 1

42 U.S.C.A. § 247d-6e ............................................................... 1

## <u>OTHER AUTHORITIES</u>

Executive Order N-27-20 dated March 15, 2020:
https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.15.2020-
COVID-19-Facilities.pdf ........................................................ 11

HHS Advisory Opinion 20-04,
https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-
ogc-publicreadiness-emergency-preparedness-act.pdf ............... 3, 7, 14, 21

https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-
        documents/prep-act-coverage-for-screening-in-congregate-
        settings.pdf.................................................................................................3

https://www.ncsbn.org/HHS_Secretary_Letter_to_States_Licensing_Waiv
        ers.pdf...................................................................................................13

Secretary of HHS, Alex Azar II, *Letter to Governors* (March 24, 2020),
        https://www.ncsbn.org/HHS_Secretary_Letter_to_States_Licensing
        _Waivers.pdf........................................................................................13

## RULES

Fed.R.Civ.P. 12 ..............................................................................................1

Fed.R.Civ.P. 12(b)(1) ...................................................................................20

Fed.R.Civ.P. 12(b)(6) ...................................................................10, 17, 20

Fed.R.Civ.P. 12(b)(i) ....................................................................................22

## REGULATIONS

42 C.F.R. § 110.3(g) ...............................................................................15, 16

42 C.F.R. §§ 110.3(n) .............................................................................15, 16

72 Fed. R. 4710 ............................................................................................14

74 Fed. R. 50968 ..........................................................................................14

74 Fed. R. 51153 ..........................................................................................14

85 Fed. Reg. 15200 ........................................................................................6

85 Fed. Reg. 79190 ...........................................................................2, 6, 10, 21

Defendants WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD, SUNRISE SENIOR LIVING MANAGEMENT, INC., and RUZICA CALABRESE ("Defendants") hereby file this Reply in support of their Motion to Dismiss First Amended Complaint for Damages ("FAC") filed by Plaintiff GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia, as well as PAUL GARCIA, RONALD GARCIA, and GARY GARCIA in their individual capacities (collectively "Plaintiffs").

## I.    INTRODUCTION

Plaintiffs' Opposition fails to raise any compelling arguments that would overcome the broad immunities afforded to Defendants, or preclude dismissal of these claims, under the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e ("PREP Act"). Plaintiffs' allegations of "failure to act" cannot "plead around" the PREP Act, as they expressly invoke, not avoid, the PREP Act's "acts and *omissions*" clause.[1]  The Secretary of Health and Human Services (HHS) confirms that PREP Act immunity extends to alleged failure to act where, for example, a program planner allocates or prioritizes resources, there is conflicting guidance, or the relevant guidance supports inaction -- all of which certainly existed here.  Further, Plaintiffs fail to plead any alleged violation of guidelines or standard of care that is not preempted by the PREP Act or otherwise subject to dismissal under Rule 12 pleading standards.

Even if Defendants' alleged facts constitute "willful misconduct," which is an exception to immunity under the PREP Act, Plaintiffs must first pursue administrative remedies through the federal "emergency fund" designated for eligible individuals with covered injuries. **42 U.S.C. § 247d-6(e)(a)**.  Once those administrative remedies are exhausted, Plaintiffs may file suit alleging willful

---

[1] The Black's Law Dictionary definition of "omission" is "*failure* to complete a duty or task, usually as a result of apathy, complacency or neglect." (emphasis added).

misconduct only in the United States District Court for the District of Columbia ("D.D.C."), which is designated as the ***exclusive jurisdiction*** by the PREP Act, and the case is handled by a three-judge panel. *See* 42 U.S.C. §§ 247d-6d(c)(4), (e)(1)&(5). The Declaration, as amended, confirms the mandatory nature of this jurisdictional requirement: "Under the PREP Act, the ***sole exception*** to the immunity from suit and liability of covered persons is an ***exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct*** by such Covered Person."[2] (emphasis added). Plaintiffs offer no legitimate reason why they cannot pursue these remedies in the District of Columbia instead of burdening this Court with their claims.

In short, each of the arguments in Plaintiffs' Opposition is easily rebutted by their own allegations in the FAC, the plain language of the PREP Act and Declaration (as amended), and the controlling authorities from HHS. This Court has both the power and obligation to apply the plain language of the statute and Declaration to these alleged facts, and dismiss this case.

## II.   ARGUMENT

### A.   Scope and Intent of the PREP Act.

In an attempt to show that the PREP Act does not apply to their claims, Plaintiffs inaccurately present the PREP Act as merely a vaccine statute that protects only health care providers.[3] This characterization is completely contradicted by the PREP Act and its Declaration, as amended, as the Secretary has authorized numerous covered countermeasures under the PREP Act during COVID-19, including personal protective equipment ("PPE") such as masks, gowns, and gloves, as well

---

[2] *See* 85 Fed. Reg. 79190.
[3] Plaintiffs primarily rely upon a 2012 secondary source article to support their "Legislative History," and mischaracterize the article's "willful misconduct" discussion to suggest that claims unrelated to vaccines are not protected by the PREP Act. *See* Opp. 1-2.

as diagnostic testing, temperature screening, sanitizer, and disinfectants.[4] As discussed more fully below, Plaintiffs' FAC specifically alleges the use or administration of each and every one of these covered countermeasures (or alleged failure to use or administer them), and also pleads that they are the proximate cause of Plaintiffs' alleged damages.

Likewise, the PREP Act does not limit "Covered Persons" only to healthcare entities, as advocated by Plaintiffs. HHS confirms that "any individual or organization can potentially be a program planner and receive PREP Act coverage" -- even grocery stores, universities, private businesses, places of worship, and private transportation providers.[5] As explained in Defendants' Motion to Dismiss, HHS issued separate guidance letters confirming that senior living communities, such as Defendants and other residential care facilities for the elderly (RCFEs), are also program planners or qualified persons under the PREP Act when they engage in the types of diagnostic testing and other covered countermeasures described in Plaintiffs' FAC.[6]

In their Opposition, Plaintiffs not only fail to refute these HHS authorities cited in Defendants' Motion to Dismiss, they completely disregard them. These authorities are irrefutable and controlling. To be clear, the Secretary has now incorporated all HHS Advisory Opinions pertaining to COVID-19 into the Declaration itself, and proclaimed that the Declaration "must" be construed in accordance with them. As such, the HHS Advisory Opinions are no longer

---

[4] In their Motion to Dismiss, Defendants provide the specific FDA or other authorization for each and every one of these covered countermeasures under the Declaration to the PREP Act (*see* pp. 15-19), and Plaintiffs have failed to refute them.

[5] HHS Advisory Opinion 20-04, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-publicreadiness-emergency-preparedness-act.pdf.

[6] *See* Exhibit 8 to Defendants' Motion to Dismiss; *see also* HHS Guidance Aug. 31, 2020, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-coverage-for-screening-in-congregate-settings.pdf

"advisory"; they now have the same "controlling weight" as the Declaration and PREP Act itself.  Where Congress has expressly delegated interpretative authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843–44 (1984). Further, Congress has reinforced the Secretary's ultimate authority in the PREP Act itself, and warns that "[n]o court . . . shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under [the PREP Act]."  42 U.S.C. § 247d-6d(b)(1), (4) & (7).  Plaintiffs' disregard of these controlling authorities completely undermines their arguments.

**B.   Plaintiffs Plead Acts and Omissions Involving Covered Countermeasures.**

Plaintiffs' Opposition recharacterizes their factual allegations in an attempt to argue that Mr. Garcia's death did not involve covered countermeasures.  But the FAC expressly pleads both affirmative acts and omissions involving the use of administration of covered countermeasures, and also pleads that these acts and omissions were the proximate cause of Mr. Garcia's death and other damages.  The specific allegations of acts, omissions, and proximate cause are summarized below.

**1.   Plaintiffs Plead Affirmative Acts of Covered Countermeasures.**

The FAC alleges that Defendants engaged in affirmative acts involving covered countermeasures, including the following:

- Performed daily temperature checks and symptom screening of staff, essential visitors, and residents (FAC ¶ 38; Exs. 1, 2, and 5);

- Implemented disinfecting, sanitization and hand washing procedures (*Id.*);

- Diagnostic testing of new residents for COVID-19 before move-in (Ex. 4);

- Required staff and, to the extent tolerated, residents to wear masks at all times (Exs. 4, 6);

- Communicated assurance that staff would strive to wear "full" PPE, "such as masks, gloves, and gowns, while providing direct care to any residents with symptoms, and continuing . . . infection control protocols" (FAC ¶ 40; Ex. 6); and

- Served as a facility at which COVID-19 testing occurred, including on June 16, 2020 for residents of Sunrise Villa's memory care unit, and again on June 18, 2020 for all residents and staff (FAC ¶ 40; Ex. 6).

Plaintiffs also plead the use of diagnostic testing for COVID-19 at Sunrise Villa for both staff and residents. (FAC ¶¶ 38, 40, 49; Exs. 2, 5, 6). As part of these efforts, Defendants arranged for COVID-19 testing for Mr. Garcia on June 17, 2020, which returned a positive result on June 20, 2020. (FAC ¶¶ 41, 44). Prior to Mr. Garcia's positive test results, Mr. Garcia had already been transferred to Placentia-Linda Hospital on June 18, 2020. (FAC ¶ 43).

Plaintiffs also concede that, prior to Mr. Garcia's COVID-19 test and diagnosis, Defendants had already tested residents in Sunrise Villa's memory care unit for COVID-19 and had arranged for the testing of all residents and staff on June 18, 2020. (Id. ¶ 40; Ex. 6).  Also during this time, Plaintiffs acknowledge that Defendants faced a nationwide shortage of PPE and COVID-19 tests, and Defendants urged families of residents to contact their local congresspersons to secure more PPE and testing for the facility. (FAC ¶¶ 35, 37; Ex. 3).

## 2.   Plaintiffs Plead Omissions (Failure to Act) Involving Covered Countermeasures.

The FAC also alleges that Defendants negligently or failed to administer or use certain covered countermeasures, including that:

- The facility allegedly lacked sufficient PPE, such as masks, gowns and gloves, and was actively attempting to rectify the shortage.  (FAC ¶ 35, Ex. 3).

- Staff members were allegedly observed administering medications with a mask, but no gloves or gown.  (FAC ¶ 39).

- Although Defendants were actively conducting COVID-19 diagnostic testing, they had not yet tested Mr. Garcia by June 17, 2020, and arranged for him to be taken offsite by his son to an urgent care center for diagnostic testing. (FAC ¶¶ 40-41).

1

2

- Two staff members assisted Plaintiffs with Mr. Garcia who allegedly lacked "proper" PPE. (FAC ¶ 41).

3

4

- "Proper" PPE was allegedly not used at the facility, despite the presence of COVID-19 symptoms. (FAC ¶ 42).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Plaintiffs' argument that the PREP Act does not address failure to use or administer covered countermeasures is contradicted by the plain language of the statute which addresses both "acts ***and omissions***" – the latter of which means failure to act.  42 U.S.C. § 247d-6d(c)(4).[7]  The implementing Declaration also expressly addresses inaction, as the Secretary defined "administration"[8] of covered countermeasures to include not only physical use, but *nonuse*, such as activities and decisions, as well as management and operation, of countermeasure programs generally. This distinction makes "explicit that there can be situations where ***not*** administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections."   85 Fed. Reg. 79190 (emphasis added).   As the Secretary explained, "when there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . . the administration to  . . . an individual" under [the PREP Act].  *Id*.  This can occur, for example, due to shortages, or simply in the normal allocation of available resources:

20

21

22

23

[7] Both acts and omissions can be immune from suit and liability, and the only exception are those that constitute "willful misconduct," discussed more fully in a later section. The PREP Act distinguishes the standard for "willful misconduct" as "a standard for liability that is more stringent than a standard of negligence in any form or recklessness." 42 U.S.C. § 247d-6d(c)(1)(B).

24

25

26

27

[8] "[P]hysical provision of the countermeasures to recipients, ***or activities and decisions*** directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; ***management and operation of countermeasure programs***; or ***management and operation of locations*** for purpose of distributing and dispensing countermeasures." 85 Fed. Reg. 15200 (emphasis supplied).

28

"Prioritization or purposeful allocation of a Covered Countermeasure . . . can fall within the PREP Act and this Declaration's liability protections." *Id.*

HHS provides even more examples where failure to act receives immunity under the PREP Act, including where there is conflicting guidance, or guidance allows for inaction.  One advisory opinion describes a university program planner which decides to conduct lower frequency diagnostic testing of students as recommended by a local authority, and declines to adopt higher frequency testing as recommended by the state authority.  When a student contracts COVID-19 and sues the university for failing to follow the stricter guidance, HHS explains that the program planner is still "immune from suit and liability for loss . . . . assuming that it has satisfied all other requirements of the PREP Act and Declaration," as it properly followed the local guidelines, and it was within its discretion whether or not to follow the state guidelines.[9] If there are conflicts among various guidelines, or there is no violation of the applicable guidance, then "PREP Act coverage will apply to a covered person using a covered countermeasure in accordance with ***any*** of the guidance."[10]  As shown in this example, PREP Act coverage applies even when the guidance followed is the ***less*** stringent.

Here, the FAC acknowledges that Defendants faced shortages of PPE, as well as multiple levels of guidance from various agencies with different recommendations.  Accordingly, Defendants acted in their statutory role as program planners to make reasonable choices in allocating covered countermeasures, prioritizing the administration or use of covered countermeasures, and following applicable guidance.  (Comp. ¶¶ 35-42, Ex. 3). Therefore, all of the above omissions or failures to act, as expressly pled in the FAC, are examples of covered countermeasures under the PREP Act.

---

[9]  HHS Advisory Opinion 20-04, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-publicreadiness-emergency-preparedness-act.pdf.
[10] *Id.*

7

### 3.     Plaintiffs Plead Causation.

While Plaintiffs argue that they do not plead causation between the acts or omissions involving alleged covered countermeasures and Mr. Garcia's death, their FAC plainly demonstrates that they do:

- "As a ***direct and proximate result*** of DEFENDANTS' conduct, GARCIA was allowed to suffer the injuries and death described *infra*."   (FAC ¶ 31) (emphasis added).

- "As a ***direct, actual, legal, and proximate cause*** of the conduct of DEFENDANTS, as alleged herein, GARCIA suffered unjustifiable and substantial physical pain, mental suffering, and indignity, in an amount according to proof at trial. (FAC ¶ 65) (emphasis added).

- GARCIA died on July 3, 2020, ***as an ultimate result of the acts and omissions*** of the DEFENDANTS, as set forth *supra*.   (FAC ¶ 68) (emphasis added).

- The DEFENDANTS' ***acts and omissions*** as alleged supra were the ***direct, actual, legal, and proximate causes*** of GARCIA's injuries and death.   (FAC ¶ 72) (emphasis added).

- As a ***proximate result*** by all the DEFENDANTS alleged *supra*, the HEIRS sustained the loss of love, society, comfort, and attention of their loving father, GARCIA, for which they seek general damages.   (FAC ¶ 75) (emphasis added).

- As an ***additional result of the acts and omissions*** by all DEFENDANTS alleged *supra*, GARCIA's family incurred funeral and burial expenses for the burial of GARCIA, for which they seek special damages.     (FAC ¶ 76) (emphasis added).

In short, the PREP Act applies to Plaintiffs' claims because their allegations plead that alleged acts and omissions by Defendants in the use or administration of covered countermeasures were the proximate cause of Mr. Garcia's death.

## C.     The PREP Act Completely Preempts Plaintiffs' Claims.

Plaintiffs next insist that even if the PREP Act is invoked, Plaintiffs have chosen to pursue certain California statutory and common law claims, not PREP Act claims, and that the PREP Act does not preempt their claims.  Plaintiffs also argue

that their allegations arise out of Defendants' alleged violation of guidelines and failure to meet a standard of care, rather than the use or administration of covered countermeasures. These arguments contradict Plaintiffs' own allegations in their FAC, as discussed above, and also reflect a misunderstanding of the broad and preemptive nature of the PREP Act which, during COVID-19, preempts all other state law claims for damages that a claimant may ordinarily pursue when the Secretary's declaration is not in effect.

> **1.**    **The PREP Act Preempts Plaintiffs' California Statutory and Common Law Claims.**

First, it is black letter law that a federal or state statute may be invoked in a complaint and applied in a motion to dismiss, even if it is not mentioned by name. *See JKC3H8 v. Colton*, 221 Cal. App. 4th 468, 478 (Cal. App. 2013). To allow a plaintiff to avoid the PREP Act through artful pleading "would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." *Id.*

Second, the PREP Act is not only invoked by Plaintiffs' factual allegations, it completely preempts "all claims of loss," whether statutory or common law claims, that are "caused by, arising out of, relating to, or resulting from the administration or use of a covered countermeasure." 42 U.S.C. § 247d–6d(a)(1)&(b). "Loss" broadly includes "any type of loss," including "emotional injury" and even "fear of physical, mental, or emotional injury." *Id.* at § (a)(2)(A)(ii)-(iii). Indeed, no state may establish "any provision of law" that is different from, or is in conflict with, any requirement of the PREP Act. *Id.* at § (b)(8).

In other words, during the designated period of time of the Secretary's Declaration, a claimant may *not* pursue ordinary state law claims under statutory or common law to achieve a different result or more monetary damages than provided by the PREP Act. The Secretary has emphasized that the policy reasons for complete preemption of these claims during the COVID-19 Declaration is to avoid litigation

9

in multiple different courts, with inconsistent results: "[T]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having ***a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private sector entities***. 85 Fed. Reg. 79190.  For these reasons, Plaintiffs' California statutory and common law claims are completely preempted by the PREP Act.

### 2.    Defendants Have Not Failed to Comply With Guidance.

Plaintiffs also cannot circumvent the PREP Act by framing their claims as alleged failure to comply with various federal, state, and local guidance, when their own factual allegations clearly implicate, and are preempted by, the PREP Act.  Even if they were not preempted, Plaintiffs' allegations of failure to follow "guidance" fail to state a claim upon which relief may be granted.

First, Plaintiffs' FAC is replete with conclusory allegations which lack any supporting facts as to *which* guidance applied to Defendants' conduct, or *which* guidance was purportedly violated.  This cannot pass muster on a Rule 12(b)(6) motion to dismiss, as plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Legal conclusions and mixed questions of law and fact do not receive the presumption of truth even at the pleading stage. *See id.; Ni v. Royal Bus. Bank of Los Angeles, 607 F. App'x 720 (9th Cir. 2015).*

Second, even where Plaintiffs provide specific alleged violations (e.g. provision of meals, visitation (including a barber), and wearing PPE (gowns/gloves), Plaintiff's cited "guidance" does not reveal any such restriction or prohibition.  For example, Plaintiffs allege that Defendants violated Governor Newsome's Executive Order by allowing visitors and residents to enter and leave the facility between

March 4 and March 17, but this Executive Order[11] provides no such prohibition on visitation, and in fact does not discuss visitation at all.[12]

Plaintiffs also complain that Defendants violated California Department of Public Health (DPH) guidance by allowing certain visitation, including a professional barber,[13] but DPH's COVID-19 Healthcare System Mitigation Playbook, dated March 20, 2020, provided only this guidance on visitation:

> Social distancing should include medically screening visitors, limiting visitors, and possibly restricting visitors. . . . These measures can be common-sense approaches to limiting potential symptomatic and asymptomatic individual contact between people, which reduces person-to-person transmission; however, it can also quickly result in a decline of the patient's overall mental health. Isolation measures of this magnitude may save lives, but it is important to note that anxiety, depression and other mood disorders could ensue from this level of social isolation.

Ex. A at p. 17.  This "guidance" to medically screen visitors, tempered with a caution against social isolation of residents, hardly prohibits visitation to the level characterized by Plaintiffs.  Further, Plaintiffs concede that Defendants medically

---

[11] The Executive Order and other purported "guidance" may be considered as part of this Motion to Dismiss. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015) (in deciding a motion to dismiss, a court can consider the pleadings and documents that are incorporated by reference or are properly the subject of judicial notice) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[12] *See* Executive Order N-27-20 dated March 15, 2020: https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.15.2020-COVID-19-Facilities.pdf.

[13] Plaintiffs' Motion to Remand asserts that the barber visited by Mr. Garcia was, at most, "potentially infected" with COVID-19. (Doc. No. 18 at 10-11). Plaintiffs therefore merely speculate as to whether contact with the barber caused him to contract COVID-19. These speculative allegations are insufficient to support actionable claims. *See  Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level ….").

1   screened all visitors and staff by March 2020. *See* Opp. 3. Indeed, Defendants

2   reasonably made these decisions to screen visitors in their capacity as program

3   planners who managed their infection control program of covered countermeasures.

4          Plaintiffs also allege that on two occasions, Defendants "lacked proper PPE"

5   including when a staff member was observed wearing a mask, but not a gown or

6   gloves, while administering medication; and also when two staff members met one

7   of the Plaintiffs at his car without "proper PPE." (FAC ¶¶ 35, 37, 41). These

8   allegations do not accuse Defendants of wearing *no* PPE, and fail to provide any

9   supporting facts showing which alternative PPE was required or not used. In any

10  event, Plaintiffs concede that Defendants informed Plaintiffs and other family

11  members that any lack of "proper PPE" was caused by a national shortage, and

12  Defendants were actively working to rectify the situation. (FAC ¶¶ 35, 37; Ex. 3).[14]

13          **3.     Plaintiffs Have Not Pled a Failure to Meet a Standard of Care.**

14          Finally, Plaintiffs' argument that their claims relate to "standard of care" is

15  also unpersuasive, as again, these are simply "claims for loss" that are "caused by,

16  arising out of, relating to, or resulting from the administration or use of a covered

17  countermeasure" such as PPE and temperature screening of visitors. 42 U.S.C. §

18  247d–6d(a)(1)&(b). Indeed, in their role as a program planner, Defendants

19  administered a program of covered countermeasures against COVID-19, as part of

20  their infection control program. This included diagnostic testing and screening of

21  staff and residents, including Mr. Garcia, and the use and administration of other

22  covered countermeasures such as PPE. As protected by the PREP Act, Defendants'

23  actions and decisions in this regard included determining safe and appropriate access

24

25          [14] The FAC also includes a number of irrelevant and conclusory allegations
    relating to Defendants' alleged conduct ***after*** Mr. Garcia was admitted to the hospital
26  on June 18 and no longer a resident of Sunrise Villa. These allegations cannot form
    the basis for liability for damages claimed by Plaintiffs.
27

28

by residents to select professional services, such as barber services, and mandating use of covered countermeasures, like medical screening, diagnostic testing, and use of PPE by both the service provider and the residents. Therefore, allegations regarding "standard of care" are simply a different label for the same issue – allegations involving administration and use of covered countermeasures.

Also, a ***crisis*** standard of care applies during COVID-19, not an ordinary standard of care. This is because national emergency situations such as COVID-19 demand application of a versatile, flexible standard. In a March 24, 2020 letter, HHS Secretary Azar requested the Governors of all fifty states, including California, to "develop a list of your state liability protections for in-state and out-of-state health professionals, to allow ***deviations from the standard of care***" (emphasis provided).[15] As Secretary Azar explained, "For healthcare professionals to feel comfortable serving in expanded capacities on the frontlines of the COVID-19 emergency, it is imperative that they feel shielded from medical tort liability."[16] Secretary Azar also stated, "***I do not want state variations in liability protections to confuse or deter health professionals in this COVID-19 emergency.***"[17]

### 4.   The Case Law Cited by Plaintiffs Is Inapplicable or Distinguishable.

The case law cited in Plaintiffs' Opposition is either inapplicable or distinguishable to these facts. Plaintiffs' reliance on *Casablanca v. Mount Sinai Med. Ctr., Inc., Parker v. St. Lawrence* and *Kehler v. Hood* is misplaced because the governing declarations issued in those cases authorized different covered countermeasures and defined "administration" differently than in the COVID-19 Declaration. This is a material distinction because the PREP Act expressly conditions immunity on the scope of the particular Declaration issued by HHS. "[A]

---

[15] https://www.ncsbn.org/HHS_Secretary_Letter_to_States_Licensing_Waivers.pdf

[16] Secretary of HHS, Alex Azar II, *Letter to Governors* (March 24, 2020), https://www.ncsbn.org/HHS_Secretary_Letter_to_States_Licensing_Waivers.pdf

[17] *Id.*

covered person *shall be immune from suit and liability* under federal and state law *with respect to all claims for loss . . . if a Declaration has been issued with respect to such countermeasures." See* 42 U.S.C.A. § 247d-6d(a)(1) (emphasis added). Therefore, the Declaration itself becomes a critical part of the analysis in determining immunity.

Aside from that material distinction, HHS rejected outright the holding of *Casabianca*, 2014 WL 10413521 (N.Y. Sup. Ct. 2014), a case where the claimant argued that the PREP Act did not apply simply because the decedent failed to receive a covered countermeasure. HHS bluntly stated, "The court was wrong," emphasizing that "administration" is broader than physical provision of a covered countermeasure, and can also include decisions and actions related to those activities.[18]

Similarly, *Parker* involved a variation of the H1N1 Declarations. *See Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 954 N.Y.S.2d 259 (3d Dep't App. Div. 2012). The only "covered countermeasures" under that declaration involved specific vaccines that were available at the time. For example, the 2007 Declaration was limited to "virus reference strains" and the "influenza A (H5N1) vaccine." 72 Fed. R. 4710. The 2009 Declaration was originally limited to "administration and usage of the pandemic countermeasure peramivir" (74 Fed. R. 50968) and amended to include only "the administration and usage of the pandemic countermeasures influenza A H5N1, H2, H6, H7, H9, and 2009 H1N1 vaccines and any associated adjuvants." (74 Fed. R. 51153). By contrast, the COVID-19 Declaration, as amended, includes many more "covered countermeasures," including masks, gowns, gloves, diagnostic testing, temperature screening, disinfectant, and sanitizer. The list is broader as a product of necessity, as the vaccines for COVID-19 were not available before now. Therefore, *Parker* has no

---

[18] HHS Advisory Opinion 20-04, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-publicreadiness-emergency-preparedness-act.pdf.

bearing on whether Defendants "administered" countermeasures within the meaning of the PREP Act under the COVID-19 Declaration.

Finally, in *Kehler*, the plaintiff alleged that the defendants, who impleaded the third-party defendant manufacturer for contribution, failed to disclose the risks of a vaccine. *See generally Kehler v. Hood*, 2012 WL 1945952 (E.D. Mo. May 30, 2012). That case was also decided under a different and inapplicable declaration. Accordingly, *Kehler* is irrelevant to whether Defendants in this case administered "covered countermeasures," as defined by the COVID-19 Declaration.

**D.    Plaintiffs' Allegations of Willful Misconduct Must Be Dismissed.**

If this Court finds that Defendants are not immune from certain alleged acts and omissions in the First Amended Complaint, there is only one course of action available to Plaintiffs – a willful misconduct claim under the PREP Act. The Secretary has confirmed this is the only option in pursuing money damages against Covered Persons like Defendants: "Under the PREP Act, the ***sole exception*** to the immunity from suit and liability of covered persons is an ***exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct*** by such Covered Person." *See* 85 Fed. Reg. 79190. (emphasis added).

Even this claim requires dismissal from this Court, however, as the PREP Act's jurisdictional requirements are mandatory. First, Plaintiffs must pursue administrative remedies through the federal "emergency fund" designated for eligible individuals with covered injuries. 42 U.S.C. § 247d-6(e)(a). The PREP Act's compensation program is designed to substitute a no-fault, speedy compensation system in place of expensive and uncertain litigation.

Plaintiffs incorrectly argue that CICP benefits are available only to those individuals who actually "received or used" a covered countermeasure, and cite to 42 C.F.R. §§ 110.3(g) and (n) in support. These regulations define "covered injury" and "injury countermeasure recipient," and refer to the "***administration or*** use of a

15

covered countermeasure," ***not*** "received or used" as misstated by Plaintiffs. 42 C.F.R. §§ 110.3(g) and (n) (emphasis added). In short, Plaintiffs are not without a remedy as to CICP benefits, as they would have this Court believe.

Plaintiffs' argument that their FAC does not make a claim for willful misconduct is also unpersuasive. The PREP Act defines "willful misconduct" as an "act or omission" that is taken "(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6e(c). This is the very essence of Plaintiffs' allegations, as they use the term "willful" five (5) times in the FAC, and repeatedly allege that Defendants intentionally and knowingly engaged in conduct that caused serious harm to Mr. Garcia.

If, after exhausting administrative remedies with the CICP, Plaintiffs are not satisfied with the result, they can still file suit alleging a "willful misconduct" exception to immunity before a three-judge panel in the D.D.C., which has "Exclusive Federal Jurisdiction." *See* 42 U.S.C. §§ 247d-6d(c)(4); 247d-6d(e)(1)&(5). Importantly, "exclusive jurisdiction" does not simply mean a different venue for Plaintiffs. In the D.D.C., Plaintiffs must meet the heightened pleading standards and include a special Verification and Certification required by statute. *See id.* § 247d-6d(e)(4). The PREP Act also provides for special discovery rules and motions practice afforded to Covered Persons like Defendants, as well as caps on damages. For all of these additional reasons, these claims should be dismissed from this Court because Defendants are being deprived of the proper forum, special procedural protections, and strict pleading standards that they would otherwise be entitled to under the PREP Act.

///

///

16

**E.    Plaintiffs' Intentional Infliction of Emotional Distress Claim Must Be Dismissed.**

Plaintiffs offer no compelling argument to sustain their intentional infliction of emotional distress ("IIED") claim.  While Plaintiffs argue that Defendants' Motion is improperly based on evidence, they point to no specific evidentiary arguments, and in fact there are none. Defendants' legal arguments are based solely on the pleadings, and Plaintiffs fail to show how they state a claim upon which relief may be granted under Rule 12(b)(6).

First, the PREP Act expressly bars Ronald Garcia's IIED claim as a matter of law because, again, the statute bars "***all claims for loss*** caused by, arising out of, relating to, or resulting from the administration or use of a covered countermeasure." 42 U.S.C. § 247d–6d(a)(1)&(b) (emphasis added). "Loss" broadly includes "any type of loss," including "emotional injury" and even "fear of physical, mental, or emotional injury." *Id.* § 247d-6d(a)(2)(A)(ii)-(iii).  As Plaintiffs' IIED claim arises out of, relates to, or results from Mr. Garcia allegedly contracting COVID-19, despite Defendants' use or administration of covered countermeasures, this claim is barred.

Second, PREP Act immunity applies because Plaintiffs' IIED claim is derivative of their other claims related to his father's illness and death, as well as Defendants' administration and use of covered countermeasures. As these claims fail for all of the reasons in Defendants' Motion, so too does Mr. Garcia's IIED claim. *See Galvan v. Walt Disney Parks & Resorts*, U.S., Inc., No. SACV1801721ABFFMX, 2019 WL 8017809 (C.D. Cal. Nov. 27, 2019) (IIED claim dismissed where it was derivative of other failed claims).

Third, even if not barred by the PREP Act, Plaintiffs' claim still fails to pass muster under Rule 12(b)(6).  Under California law, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is a question of law, not fact, for the court. *See Berkley v. Dowds*, 152 Cal.App.4th 518

17

(2007) (affirming dismissal and finding as a matter of law that "as alleged, respondent's conduct cannot reasonably be found to be outrageous").  As such, federal courts in California routinely dismiss IIED claims on a motion to dismiss. *See e.g. Aguinaldo v. Ocwen Loan Servicing, LLC*, 5:12-CV-01393-EJD, 2012 U.S. Dist. LEXIS 125400, at *19-20, (N.D. Cal. Sept. 04, 2012) (finding that conduct was not sufficiently outrageous as a matter of law and dismissing IIED claim on motion to dismiss); *Khan v. 7-Eleven, Inc.*, 14-00522-DMG, 2015 U.S. Dist. LEXIS 186848, *13 (C.D. Cal. May 6, 2015) (dismissing IIED claim at motion to dismiss stage).

Further, conduct that is "extreme and outrageous" is a very high bar that is certainly not met in this case:  A defendant's conduct is outrageous only when it is "***so 'extreme as to exceed all bounds of that usually tolerated in a civilized community*.'**" *See Hugh v. Pair*, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (emphasis added) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001, 25 Cal. Rptr. 2d 550, 863 (1993)).  In this case, Plaintiffs merely allege that Defendants suggested that Ronald Garcia transport his own father to an urgent care center, and that Ronald Garcia feared he might contract COVID-19 if he did so (but did not). This alleged conduct, if true, is hardly so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hugh v. Pair*, 46 Cal. 4th at 1050.  Other courts have found that stronger communications by a defendant to family members of a patient do not constitute outrageous conduct. *See Berkley v. Dowds*, 152 Cal.App.4th 518 (2007), (affirming dismissal where defendants allegedly urged family members to authorize caregivers to "pull the plug" on life support, purportedly to reduce the cost of treatment).  At least one federal court has held that IIED claims cannot lie in California where they are simply tied to a defendant's alleged failure to follow a standard of care. *See Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, *16 (E.D. Cal. Feb. 18, 2009) (dismissing claims alleging that failure to test for Group B Streptococcus resulted in the death of a baby and caused the plaintiff emotional distress).  "Plaintiff has not cited to any case

which holds the failure to follow the standard of care is extreme and outrageous conduct. Indeed, California law is the opposite. In light of California case law, plaintiff's cause of action for intentional infliction of emotional distress cannot stand." *Id.*

Finally, in the COVID-19 context, at least one other federal court has held that an IIED claim cannot survive a motion to dismiss based simply on a plaintiff's exposure to and fear of COVID-19, because of the defendant's alleged conduct or failure to follow protocols. *See Kantrow v. Celebrity Cruises, Inc.*, 2020 U.S. Dist. LEXIS 245374, *33-34 (S.D. Fla. Dec. 29, 2020) (dismissing IIED claim, finding "that [p]laintiffs' allegations that Defendant lied, concealed, and misrepresented to its passengers that everybody onboard the Eclipse was healthy . . . fails to rise to the level of outrageousness.").

The cases cited by Plaintiffs are distinguishable from these alleged facts, or actually support Defendants' position. In *Kerins v. Hartley*, 27 Cal. App. 4th 1062, 33 Cal. Rptr. 2d 172 (1994), for example, the court affirmed summary judgment in favor of the defendants on an IIED claim where the plaintiff expressed similar fears of contracting a disease:  "[A]ppellant cannot recover damages for fear of AIDS on a theory of [IIED]."  *Id.* at 1075-76.

In another case cited by Plaintiffs, *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, a plaintiff recovered on an IIED claim only where the defendant used insulting and threatening language, and then battered the plaintiff's dog to death – facts which have no relevance here.  Similarly, in *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, the defendant corporation illegally disposed of toxic wastes immediately near the plaintiff residents, subjecting them to prolonged exposure to carcinogens against their will, and enhanced their risk of developing cancer in the future.  These extreme case examples bear no similarity to this case.  Accordingly, Plaintiffs have failed to rebut any of Defendants' arguments, and the IIED claim must be dismissed.

### F.     All Meet and Confer Requirements Were Met.

Plaintiffs' argument that the Motion should be denied based on failure to comply with meet and confer requirements[19] is disingenuous for several reasons. First, the Local rule simply requires counsel to meet and confer regarding "the substance of the contemplated motion and any potential resolution."  L.R. 7-3. Plaintiffs' counsel concedes in his sworn declaration that he and Defendants' counsel met and conferred by telephone regarding a potential Motion to Dismiss this matter.

Second, Plaintiffs' counsel complains that he was unaware that the basis of the Motion would be subject matter jurisdiction under Rule 12(b)(1) (as opposed to 12(b)(6)), but concedes that he conferred regarding "the PREP Act and its applicability to the case at bar."  As fully explained in the Motion to Dismiss and this Reply, the PREP Act (and not federal venue statutes) is, in fact, the only basis for Defendants' argument that this Court lacks subject matter jurisdiction. Plaintiffs' counsel was therefore on notice of all potential arguments and grounds for dismissal. Indeed, these 12(b)(1) arguments regarding immunity and failure to exhaust administrative remedies also may be heard on a Rule 12(b)(6) motion.  *See Moore v. Avery*, 125 F. App'x 763, 764 (9th Cir. 2005) (addressing failure to exhaust on Rule 12(b)(6) motion); *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (addressing immunity on Rule 12(b)(6) motion).  Plaintiffs' arguments regarding the meet and confer requirements are immaterial and should be disregarded.[20]

### G.     Defendants' Motion to Dismiss Should Not Be Stayed Pending Remand.

Plaintiffs provide no compelling reason to stay this Motion pending a decision on Plaintiffs' ill-founded Motion for Remand.  As fully briefed in Defendants'

[19] Plaintiffs' counsel cites to Local Rule 7.2, but presumably means Local Rule 7.3.
[20] Counsel for Defendants disagrees with Plaintiffs' counsel's recollection of the phone conversation, as all of these issues were, in fact, discussed.  It is possible that the associate handling the call for Plaintiffs was unfamiliar with the legal issues raised by the PREP Act at the time.

20

Opposition to Remand, this case was properly removed based on diversity of citizenship, complete preemption under the PREP Act, and the *Grable* doctrine. Plaintiffs cannot destroy diversity jurisdiction by fraudulently joining a non-diverse and non-essential party, or otherwise manipulate the jurisdiction of this Court. Further, there is federal jurisdiction in this Court because Plaintiffs' state law claims are completely preempted by the PREP Act, and the amended Declaration confirms that federal jurisdiction must lie because "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private sector entities." 85 Fed. Reg. 79190.

Rather than delay a decision on this Motion, this Court should decide at the earliest opportunity whether Defendants are immune from liability. *See Physicians Com. For Responsible Medicine v. Tyson Foods, Inc.* (2004) 119 Cal. App. 4th 120, 129. "The court has repeatedly . . . stressed the importance of resolving immunity questions at the *earliest* stage in litigation." *Orsonio v. Armond*, No. B174092, 2005 Cal. App. Unpub. LEXIS 6054, at *24–25 (July 13, 2005) (emphasis added) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Delaying this determination until a later stage of the proceedings will only force care providers such as Defendants to engage in expensive, disruptive, and protracted discovery in the middle of an unprecedented pandemic, thus diverting resources and depriving them of the very protections the federal immunities are intended to confer. This is especially so where, in cases like this, "the PREP Act exists, in part, to remove legal uncertainty and risk."[21]

If the Court determines there are insufficient facts to decide this Motion to Dismiss immediately, it should permit a hearing and jurisdictional discovery under

---

[21] HHS Advisory Opinion 20-04, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-publicreadiness-emergency-preparedness-act.pdf.

Fed.R.Civ.P. 12(b)(i), for all of the reasons cited in Defendants' Motion. Alternatively, if any claim is not dismissed with prejudice, this case may be dismissed without prejudice or stayed pending Plaintiffs' pursuit of their administrative remedies and willful misconduct claim in the District of Columbia.

## III.  CONCLUSION

Plaintiffs' claims should be dismissed because Defendants are immune from liability under the PREP Act, and any exceptions to that immunity must be handled first administratively, and then litigated in the District of Columbia.   These jurisdictional requirements are mandatory, and have been confirmed by the Fourth Amendment, and the PREP Act itself.  For all of the reasons in Defendants' Motion and this Reply, the Complaint should be dismissed.

Respectfully submitted this 25th day of January, 2021.

Respectfully submitted,
**CLARK HILL LLP**

By:   /s/Michael P. West
        Michael P. West
        Ashley A. Escudero
        **CLARK HILL LLP**
        One America Plaza
        600 West Broadway, Suite 500
        San Diego, CA 92101
        Telephone: (619) 557-0404
        Facsimile: (619) 557-0460
        mwest@clarkhill.com
        aescudero@clarkhill.com
        *Attorneys for Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of January, 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

Dated: January 25, 2021           /s/ Michael P. West
                                  Michael P. West
                                  *Attorneys for Defendants,*
                                  Defendants Welltower OPCO Group LLC
                                  dba Sunrise Villa Bradford, Sunrise Senior
                                  Living Management, Inc., and Ruzica
                                  Calabrese

*Attorney for Plaintiffs:*

Ayman R. Mourad, Esq.
Alexander N. Rynerson, Esq.
**LANZONE MORGAN LLC**
5001 Airport Plaza Dr., Suite 210
Long Beach, CA  90815
Tel:  (562) 596-1700
Fax:  (562) 596-0011
Email:  eservice@lanzonemorgan.com
Email: arm@lanzonemorgan.com
Email: asr@lanzonemorgan.com

4820-6960-6104, v. 1

CLARKHILL\61560\416158\261840007.v1-1/25/21