UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] Order Regarding Motion to Dismiss [29]**

     Defendants, Welltower OpCo Group LLC and Sunrise Senior Living Management, Inc. (collectively, "Defendants"), move to dismiss the First Amended Complaint ("FAC"). (Mot., Dkt. No. 29.) Plaintiffs, Gilbert Garcia ("Gilbert"), Paul Garcia, Ronald Garcia ("Ronald"), and Gary Garcia (collectively, "Plaintiffs"), opposed.[1] (Opp'n, Dkt. No. 37.) Defendants replied. (Reply, Dkt. No. 40.) On August 23, 2023, the Court requested the parties to submit supplemental briefing on the issue of immunity under the Public Readiness and Emergency Preparedness (the "PREP") Act, 42 U.S.C. §§ 247d-6d, 247d-6e. (Dkt. No. 88.) On September 11, 2023, Defendants filed their supplemental brief. (Supplemental Brief, Dkt. No. 92.) On September 27, 2023, Plaintiffs filed their supplemental opposition. (Supplemental Opp'n, Dkt. No. 94.) On October 4, 2023, Defendants filed their supplemental reply. (Supplemental Reply, Dkt. No. 97.) After the Court posted its tentative order, Defendants filed a request for hearing. (Request for Hearing, Dkt. No. 100.) At the Court's request, Plaintiffs filed a response to the request for hearing. (Response to Request for Hearing, Dkt. No. 102.) The Court considered the arguments raised by both parties and finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15.

     For the following reasons, the Court **DENIES in part** and **GRANTS in part** the motion to dismiss. The Court **DENIES** the motion to dismiss the first and second causes of action because the Court finds that Defendants are not entitled to immunity under the PREP Act. The Court **GRANTS** the motion to dismiss the third cause of action with leave to amend. Plaintiffs shall have thirty (30) days' leave to amend the third cause of

---

[1] To avoid confusion, the Court will refer to individuals by their first name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

action.

## I. BACKGROUND

*A.   Factual Background*

Defendants are in the business of providing custodial care and services to residents as a residential care facility for the elderly. (FAC ¶ 4.) Residential care facilities "are not health care providers; they only provide care and supervision to elderly residents." (Id.) Gilbert was a resident of Defendants' facility from August 12, 2017 through the time of his death in 2020, and he had become a resident "due to his inability to independently perform his activities of daily living and need for assistance from facility staff in such." (Id. ¶¶ 24, 26.) Gilbert was thus a resident at Defendants' facility when the COVID-19 pandemic began. (Id. ¶ 26.) At that time, Gilbert had just turned 89 years old and "suffered from a history of heart attacks and stroke, glaucoma, and hypertension." (Id.) Despite this, at the start of the pandemic, he was "in relatively good health and spirits . . . mentally alert and oriented to person, place, and time . . . ." (Id. ¶ 32.)

Plaintiffs contend that at the start of the pandemic and even after California's Governor issued a state of emergency within the state, the facility "failed to implement appropriate infection control measures or follow local or public health guidelines in preparing for and preventing COVID-19 spread." (Id. ¶ 33.) For example, while the facility initially allowed (but discouraged visitors), the facility soon reversed course. (Id. ¶¶ 33–34.) Defendants also sent mixed messages regarding the availability of personal protective equipment ("PPE"). (Id. ¶ 35) (May 12, 2020 Letter indicating a lack of appropriate PPE and May 15, 2020 Letter stating that the facilities had sufficient equipment).

On May 28, 2020, Gilbert exhibited weight loss and his physician ordered monitoring for the next few days. (Id. ¶ 36.) On May 31, 2020, the facility sent another request to secure more PPE, but nonetheless announced a resumption of group dining the same day. (Id. ¶ 37.) On June 12, 2020, a staff member tested positive for the virus. (Id. ¶ 38.) The next day, the facility arranged for Gilbert to have his hair cut by a third-party barber as well, despite the no-visitor policy. (Id.)

On June 13, 2020, Gilbert began feeling especially tired. (Id. ¶ 39.) His symptoms

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

persisted and worsened over the next few days, but he was not isolated from others despite these COVID-like symptoms. (Id. ¶¶ 39, 49.) On June 17, 2020, Sunrise called Gilbert's son, Ronald, and suggested that he personally take Gilbert to urgent care because he had been experiencing chills. (Id. ¶ 40.) Ronald feared that doing so would put him at an increased risk of contracting COVID-19. (Id. ¶ 41.) But because Defendants could not care for him, Ronald felt as if he had no choice but to pick Gilbert up. (Id.) Ronald eventually took Gilbert to urgent care. (Id.) Gilbert was then tested for the virus on June 17, 2020, and an urgent care physician "suspected a positive result" because of his fever, cough, and recent exposure to the virus. (Id. ¶ 41.) Gilbert's symptoms continued to persist, and on June 18, 2020, he was taken to the emergency room. (Id. ¶ 43.) On June 20, 2020, his COVID-19 test result came back positive. (Id. ¶ 44.)

On July 3, 2020, Gilbert passed away from the virus. (Id. ¶ 48.) Prior to his death, a staff member conceded to Gilbert's children that the facility was "not ready" to receive Gilbert when he returned from urgent care on June 17, 2020. (Id. ¶ 47.)

      B.    *Procedural Background*

Plaintiffs filed the instant action in the Superior Court of the County of Orange on October 26, 2020, asserting three state claims of elder abuse and neglect, wrongful death, and intentional infliction of emotional distress. (See generally, Notice of Removal, Dkt. No. 1.) Defendants removed the action to this Court on November 27, 2020, on the basis of diversity jurisdiction and federal question jurisdiction. (Id.) Welltower and Sunrise are citizens of states other than California, and the amount in controversy exceeded the required amount. (Id. ¶¶ 9–12.) Defendants argued that the Complaint reflected allegations that would give rise to immunity afforded to them by the PREP Act.

After removal, Defendants moved to dismiss the complaint. (Dkt. No. 13.) Plaintiffs first amended their complaint nineteen days later, adding defendant Calabrese, who is a citizen of California. (See FAC). Accordingly, Plaintiffs moved to remand the action on the basis of a lack of diversity jurisdiction. (Dkt. No. 18.) Defendants then moved to dismiss the FAC on January 6, 2021. (See Mot.)

On February 10, 2021, the Court denied a motion to remand and granted a motion to dismiss, ending the case. (Dkt. No. 47.) Upon appeal, the Ninth Circuit remanded the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

case mandating the Court reconsider in light of Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679 (9th Cir. 2022), and address diversity jurisdiction. (Dkt. No. 50.) Accordingly, this Court satisfied the mandate and denied the motion to remand as the Court retained subject-matter jurisdiction. (Order on Supplemental Motion to Remand, Dkt. No. 75, at 16.) The Ninth Circuit's mandate also vacated this Court's prior Order on Defendants motion to dismiss based on immunity under the PREP Act. (Dkt. No. 50.)

The Court now reviews the motion to dismiss *de novo*.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678–80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. Discussion

A. PREP Act Immunity

Defendants assert that all claims are barred by the PREP Act, which "provides immunity from federal and state law claims relating to the administration of certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

medical countermeasures during a declared public health emergency." Polanco v. Diaz, 76 F.4th 918, 932 (9th Cir. 2023) (quoting Cannon v. Watermark Ret. Cmtys., Inc., 45 F.4th 137, 138 (D.C. Cir. 2022)).  Plaintiffs contend that Defendants infection control policies or procedures are the basis for their claims.  (Supplemental Opp'n at 17.) Defendants argue that Plaintiffs allegations include "Defendants affirmative use and administration of numerous covered countermeasures in connection with [Plaintiffs] COVID-19 infection-control program and activities, falling directly within the PREP Act's broad scope of immunity."  (Supplemental Brief at 10.)

The Court finds that Defendants are not entitled to immunity under the PREP Act on the facts of the FAC.

"Congress passed the [PREP] Act in 2005 to encourage during times of crisis the 'development and deployment of medical countermeasures' (such as diagnostics, treatments, and vaccines) by limiting legal liability relating to their administration." Polanco, 76 F.4th at 932 (quoting Cannon, 45 F.4th at 139).  The PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Department of Health and Human Services ('HHS') Secretary] has been issued with respect to such countermeasure."  42 U.S.C. § 247d-6d(a)(1).  "Covered persons" include "program planner[s]" of "covered countermeasure[s]," "qualified person[s] who prescribed, administered, or dispensed such countermeasure[s]," and their officials, agents, and employees.  Id. § 247d-6d(i)(2).  A "covered countermeasure" is (a) a "qualified pandemic or epidemic product"; (b) a "security countermeasure"; (c) a drug, biological product, or device that is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act; or (d) a respiratory protective device that the Secretary deems to be a priority for use during a public health emergency.  Id. § 247d-6d(i)(1).  A "security countermeasure" is a drug, biological product or device, or an approved respiratory protective device that the HHS Secretary determines to be a priority for use during the declared public health emergency.  Id. § 247d-6d(i)(1).

"The [HHS] Secretary 'controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act.'" Saldana, 27 F.4th at 687.  On March 17, 2020, the HHS Secretary invoked the PREP Act by issuing a declaration in response to the COVID-19 pandemic.  See Declaration Under the Public Readiness and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020) ("Declaration"). The Declaration has amended "covered countermeasure" to include "[a]ny antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine, used . . . to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19." Fourth Amendment to the Declaration, 85 Fed. Reg. 79,190, 79,196 (Dec. 9, 2020) ("Fourth HHS Amendment").

In the Fourth HHS Amendment, the HHS Secretary also described when inaction by a covered person could entitle that person to immunity under the PREP Act:

> Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d. For example, consider a situation where there is only one dose of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

Id. at 79,197.

Additionally, the Fourth HHS Amendment clarified that the Declaration "must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration (Advisory Opinions)," and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

"incorporated the Advisory Opinions for that purpose." Id. at 79,190. The January 8, 2021, HHS Advisory Opinion distinguishes between "allocation which results in non-use by some individuals" and supports immunity under the PREP Act, and "nonfeasance . . . that results in non-use" and does not support immunity. HHS Office of the General Counsel Advisory Op. 21-01 (Jan. 8, 2021) at 4. As a result, courts have held that "there is only immunity for 'inaction claims'" where a defendant's "failure to administer a covered countermeasure to one individual has 'a close causal relationship' to the administration of that covered countermeasure to another individual." Lyons v. Cucumber Holdings, LLC, 520 F. Supp. 3d 1277, 1285–86 (C.D. Cal. 2021) (quoting Anson v. HCP Prairie Vill. KS OPCO LLC, 523 F. Supp. 3d 1288, 1300 (D. Kan. 2021)).

Here, Plaintiffs contend that at the start of the pandemic and even after California's Governor issued a state of emergency within the state, the facility "failed to implement appropriate infection control measures or follow local or public health guidelines in preparing for and preventing COVID-19 spread." (FAC ¶ 33.) Plaintiffs allege that Defendants also "fail[ed] to properly manage, train, and supervise staff to ensure that staff was adequate in training, supervision, and numbers to properly care for [Gilbert]." (Id. ¶ 18.) Moreover, Plaintiffs contend that "[d]espite that the pandemic showed no signs of slowing and local and public health recommendations continued to stress the importance of infection control in communities like the facility, the facility began relaxing its procedures[,]" by resuming group dining. (Id. ¶ 37.) Plaintiffs further claim that "the facility was supposedly still maintaining a strict no-visitor policy, with exceptions for emergencies. [But] Defendants failed to adhere to infection control protocols by allowing third-parties, such as barbers, to enter the facility" and cut Gilbert's hair. (Id. ¶ 38.) Plaintiffs also assert that Defendants' facility "failed to follow infection protocol guidelines" because a staff member did not wear gloves or a gown when administering medications and eye drops to Gilbert. (Id. ¶ 39.) Thus, Plaintiffs allege that "Defendants did not have appropriate plans in place to control and prevent COVID-19 from entering the facility." (Id. ¶ 50.)

"[C]ourts in this circuit have found that 'the plain language of the PREP Act does not provide immunity for the administration of covered countermeasures *generally*." Crupi v. Heights of Summerlin, LLC, No. 2:21-cv-954, 2022 U.S. Dist. LEXIS 28681, at *17 (D. Nev. Feb. 17, 2022) (emphasis in original) (quoting Ramirez v. Windsor Care Ctr. Nat'l City, No. 21-cv-1051, 2022 U.S. Dist. LEXIS 23703, at *9 (S.D. Cal. Feb. 9, 2022). Thus, contrary to Defendants' claims, district courts in the Ninth Circuit have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

held that infection control measures are not "covered countermeasures" under the PREP Act.[2] See Crupi, 2022 U.S. Dist. LEXIS 28681, at *16 ("Under the plain language of the PREP Act, the Court agrees with Plaintiff that an infection control program or COVID-19 response policy is not a covered countermeasure. To put it simply, a program or policy is not a product, drug, or device."); Ramirez, 2022 U.S. Dist. LEXIS 23703, at *10 (finding that because plaintiff's "claims are premised on allegations that Defendant has failed to implement a proper infection control policy," they do not arise out of or relate to "the administration to or the use by an individual of a covered countermeasure"); Kulhanek v. Atria Rancho Pensaquitos, No. 21-cv-1917, 2022 U.S. Dist. LEXIS 7272, at *10–11 (S.D. Cal. Jan. 13, 2022) ("Plaintiffs correctly note that their claims do not relate to the use or administration of any such drug, device, or product. Rather, Plaintiffs' claims are based on, among other things, allegations that Defendants knowingly failed to timely seek medical treatment for [decedent's] worsening COVID-19 symptoms and that Defendants failed to implement basic infection prevention protocols."); Reed v. Sunbridge Hallmark Health Servs., LLC, No. CV 21-3702, 2021 U.S. Dist. LEXIS 119092, at *12 (C.D. Cal. June 25, 2021) ("[T]he gravamen of Plaintiffs' Complaint (as it

---

[2] Defendants argue that each case Plaintiffs cite to support their position that failure to follow infection prevention policies do not constitute "covered countermeasures" is inapplicable because the cases "considered only jurisdiction questions of complete preemption." (Supplemental Brief at 16; Supplemental Reply at 13.) However, Defendants argument is unavailing because in their Supplemental Brief, Defendants urge the Court to adopt its prior analysis in its vacated Order on the motion to dismiss. (Supplemental Brief at 12.) And as Defendants acknowledge, "the Court's prior analysis included some overlapping discussions of complete preemption and immunity." (Id.) Indeed, the Court stated that "[i]mmunity applies for the same reason that the Court found the PREP Act conferred federal question jurisdiction." (Dkt. No. 47, at 16.) Moreover, the definition of "covered countermeasure" under the PREP Act is essentially the same for jurisdictional and immunity questions. Thus, although the cases cited in the following paragraphs involve interpretations of "covered countermeasures" in motions to remand as opposed to motions to dismiss, nothing suggests that the definition of "covered countermeasures" for jurisdictional purposes is different from the definition of "covered countermeasures" for immunity purposes. Other district courts in the Ninth Circuit have also relied on interpretations of "covered countermeasures" in motions to remand when determining whether a plaintiff's allegations fall within a "covered countermeasure" in motions to dismiss. See, e.g., Harris v. Allison, No. 20-cv-9393, 2022 U.S. Dist. LEXIS 111484, at *26 (N.D. Cal. May 18, 2022) (citing Crupi, 2022 U.S. Dist. LEXIS 28681, at *17; Smith v. Colonial Care Ctr. Inc., No. 2:21-cv-494, 2021 U.S. Dist. LEXIS 53554, at *10–12 (C.D. Cal. Mar. 19, 2021)); Shah v. Drew Chain Sec. Corp., No. 2:22-cv-1335, 2022 U.S. Dist. LEXIS 215888, at *15 (C.D. Cal. Aug. 22, 2022) (citing Crupi, 2022 U.S. Dist. LEXIS 28681, at *16).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

relates to COVID-19) is that Defendant failed to implement an infection prevention and control program or care program for COVID-19."); Estate of McCalebb v. AG Lynwood, LLC, No. 2:20-cv-9746, 2021 U.S. Dist. LEXIS 47239, at *12, 15 (C.D. Cal. Mar. 1, 2021) ("Plaintiffs in this case do not appear to allege that Defendant is liable for using a covered countermeasure; rather, Plaintiffs claim that Defendant did not comply with CDC guidelines and otherwise failed to use appropriate precautions to protect the Facility's residents from the transmission of the virus. . . . The lawsuit in this case does not appear to be about a purposeful allocation of scarce resources carried out in accordance with federal guidelines.  The gravamen of the Complaint is that Defendant was generally neglectful in operating the Facility."); Smith v. Heights of Summerlin, LLC, No. 2:21-cv-1685, 2021 U.S. Dist. LEXIS 230767, at *6–7 (D. Nev. Dec. 1, 2021) ("[T]he plaintiffs' allegations center on the defendants' failure 'to follow proper safety protocols and procedures related to COVID-19, as well as general protocols for nursing care facilities generally,' not on their use or non-use of a particular countermeasure.  The defendants maintain that such allegations 'necessarily implicate Defendants' use and administration of PPE and other covered countermeasures' and thus implicate the PREP Act.  This is an overgeneralization."); Padilla v. Brookfield Healthcare Ctr., No. CV 21-2062, 2021 U.S. Dist. LEXIS 75846, at *14–15 (C.D. Cal. Apr. 19, 2021) ("Defendant's policies regarding social distancing, use of medication for conditions unrelated to COVID-19, and reporting COVID-19 cases thus do not constitute covered countermeasures under the PREP Act."); Smith v. Colonial Care Ctr. Inc., No. 2:21-cv-494, 2021 U.S. Dist. LEXIS 53554, at *10–12 (C.D. Cal. Mar. 19, 2021) ("Plaintiffs' allege that Decedent's injuries were caused by Defendant's failure to 'implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting its residents from exposure to COVID-19.'  In its Opposition, Defendant argues that such allegations 'by their very nature relate to the use of covered countermeasures, and/or the management and operation of Defendant's countermeasures, for which Defendant has immunity.'  Defendant further argues that Plaintiffs' allegations that Defendant 'failed to protect decedent's right to dignity and privacy by failing to protect her from infection with the Covid-19 virus', 'clearly relate to the use of PPE and whether Defendant properly utilized a covered countermeasure[,] bringing this case within the . . . immunity of the PREP Act.' . . . What Plaintiffs do allege is that Decedent's injuries were caused by Defendant's failure to 'implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting its residents from exposure to COVID-19.'  These allegations refer to policies and a failure to protect, not to any covered countermeasure, i.e., drug, product, or device.  Thus, the square peg of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

Plaintiffs' allegations does not fit into the round hole of the PREP Act's definition of a covered countermeasure.") (internal citations omitted); Acra v. Cal. Magnolia Convalescent Hosp., Inc., No. EDCV 21-898, 2021 U.S. Dist. LEXIS 124484, at *16–17 (C.D. Cal July 1, 2021) ("Plaintiffs premise their state law causes of action on the allegations that Defendants failed to implement effective infection control policies throughout the facilities, failed to provide for Decedent's health and safety including in ways unrelated to COVID-19, and failed to staff their facilities properly and adequately. . . . As such, Defendants' alleged deficiencies, including their lack of effective infection control policies, do not constitute covered countermeasures under the PREP Act."); Ostrander v. Heights of Summerlin, LLC, No. 2:21-cv-1418, 2021 U.S. Dist. LEXIS 230784, at *6 (D. Nev. Dec. 1, 2021) ("[T]he plaintiffs' allegations center on the defendants' failure 'to develop and follow proper policies, procedures, and precautions to prevent the transmission and spread of SARS COVID-19,' not on their use or non-use of a particular countermeasure.").

Nor does Plaintiffs mention of PPE or COVID-19 testing in their Complaint warrant a different result. See Crupi, 2022 U.S. Dist. LEXIS 28681, at *17 ("[T]he Complaint sparsely mentions covered countermeasures at all, and not once in any of the eight causes of action. The Complaint merely alleges that Defendants failed to implement a COVID-19 response policy, which includes the use of PPE generally. In other words, the fact that the Complaint mentions some covered countermeasures as examples of Defendants' failure to enact a COVID-19 response policy, does not rise to the level of alleging that [the] death was specifically caused by Defendants' use (or misuse) of covered countermeasures."); Ramirez, 2022 U.S. Dist. LEXIS 23703, at *10 ("Nothing in the Complaint connects Decedent's death to the administration to, or use by, her of any mask, personal protective equipment, or any other covered countermeasure."); Reed, 2021 U.S. Dist. LEXIS 119092, at *12–13 ("Although Plaintiffs mention certain covered countermeasures in their complaint, and allege that Defendant failed to 'properly enforce and enable PPE,' . . . there are no allegations linking Decedent's death to the *use* of that personal protective equipment or linking Decedent's death to the *purposeful* allocation of personal protective equipment to other individuals.") (internal citations omitted) (emphasis in original); Estate of McCalebb, 2021 U.S. Dist. LEXIS 47239, at *15 ("While Plaintiffs refer to the failure to provide adequate PPE (and training in its use), this allegation is one of 19 claims of negligence in a complaint that describes overall inattention rather than conscious decision-making about covered countermeasures while delivering care."); Holman v. Sunrise Villa Culver City, No. 2:21-cv-1054, 2021 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

Dist. LEXIS 74922, at *12 (C.D. Cal. Apr. 16, 2021) ("Plaintiffs' complaint appears to reference covered countermeasures in several places.  For example, Plaintiffs allege that when Ms. Hopman visited her father at Terrace Club on April 18, 2020, 'she noticed that Defendants' staff and the residents were wandering the halls and common areas without masks and without making any attempts to socially distance.'  Plaintiffs also allege that '[o]n April 30, 2020, Mr.[Hopman] and the other residents in Terrace Club were tested for COVID-19.'  But Plaintiffs do not allege that their injuries are connected to Defendants' non-administration of masks or administration of tests.") (internal citations omitted); Harris v. Allison, No. 20-cv-9393, 2022 U.S. Dist. LEXIS 111484, at *26 (N.D. Cal. May 18, 2022) ("Plaintiff's lone allegation about mask usage in the FAC, that Defendants Broomfield, Cryer, and Pachynski failed to provide personal protective equipment until late April 2020 has no real bearing on his constitutional claims regarding the prisoner transfer that took place in May 2020. . . . [A]t most it would only constitute one part of the story of the transfer and the resulting outbreak.  The mere mention of countermeasures in the complaint does not confer immunity.").

Thus, the Court disagrees with Defendants that Plaintiffs' allegations fall within the PREP Act's broad scope of immunity.  As mentioned above, Defendants specifically allege that Defendants "failed to implement appropriate infection control measures or follow local or public health guidelines in preparing for and preventing COVID-19 spread." (FAC ¶ 33.)  This failure included resuming group dining, allowing non-essential workers into the building, such as barbers, and allowing outside visitors to check people in and out of the facility.  (Id. ¶¶ 33, 37, 38.)  Plaintiffs also allege that Defendants "fail[ed] to properly manage, train, and supervise staff to ensure that staff was adequate in training, supervision, and numbers to properly care for [Gilbert]."  (Id. ¶ 18.)  Thus, the mere mention of COVID-19 testing in the Complaint does not grant Defendants immunity because Plaintiffs do not allege that their injuries are connected to Defendants' administration of testing.  See Harris, 2022 U.S. Dist. LEXIS 111484, at *26 ("The mere mention of countermeasures in the complaint does not confer immunity.").  Nor do Plaintiffs' claims that Defendants' failed to use PPE warrant granting Defendants immunity.  As the Ninth Circuit recently held, "the PREP Act provides immunity only from claims that relate to 'the administration to or the use by an individual of' a covered countermeasure—not such a measure's *non*-administration or *non*-use." Hampton v. California, No. 22-15481, 2023 U.S. App. LEXIS 26135, at *15 (9th Cir. Oct. 3, 2023) (emphasis in original).  In Hampton, Defendants invoked the hypothetical in the Fourth HHS Amendment, which "illustrates the fact that, for a countermeasure with limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

availability, administering the countermeasure to one person could mean withholding it from another." Id. at *17.  However, the Ninth Circuit quickly distinguished the hypothetical because "[t]he Complaint nowhere suggests (and Defendants do not argue) that tests were in short supply and that Defendants saved the limited tests for others." Id.

In this case, there are no allegations that Gilbert's death was the result of PPE being used to care for other individuals.  (See generally FAC.)  Defendants concede this by only arguing that "in contrast to Hampton, the first amended complaint specifically alleges that PPE was in short supply." (Supplemental Reply at 4.)  There are two instances in the FAC where Plaintiffs allege that Defendants sent a plea to residents and family members to contact their local congresspersons to secure more PPE.  (FAC ¶¶ 35, 37.)  On May 12, 2020, Defendants sent a letter indicating a lack of PPE.  (Id. ¶ 35.)  But just three days later, Defendants sent a letter stating that the facility "maintained sufficient PPE."  (Id.)  These mixed messages regarding the availability of PPE cannot be relied upon by Defendants to show that PPE was in short supply.  Instead, Defendants seek to rely on Plaintiffs allegations that the facility sent another letter indicating a lack of PPE on May 31, 2020.  (Id. ¶ 37; Supplemental Reply at 4.)  Nevertheless, the facility announced a resumption of group dining that same day.  (FAC ¶ 37.)  Here,  Plaintiffs do not allege that the lack of PPE caused Gilbert to contract COVID-19, resulting in his death.  Rather, Plaintiffs claim that "the facility failed to follow infection protocol guidelines" when a staff member administered Gilbert's medication and eye drops while only wearing a mask and no gloves or gown.  (Id. ¶ 39.)  As previously stated, there is no indication in the FAC that gloves or gowns were not used around Gilbert because they were being used for other residents.  Thus, although the FAC mentions one staff member's failure to follow infection protocol guidelines by not using gloves or a gown, that allegation "is of non-use resulting from non-feasance rather than allocations."  In re CIM-SQ Transfer Cases, No. 22-mc-80066, 2022 U.S. Dist. LEXIS 125757, at *21–22 (N.D. Cal. July 15, 2022), appeal filed, No. 22-16088 (9th Cir. July 25, 2022).  See Reed, 2021 U.S. Dist. LEXIS 119092, at *12–13 ("Although Plaintiffs mention certain covered countermeasures in their complaint, and allege that Defendant failed to 'properly enforce and enable PPE,' . . . there are no allegations linking Decedent's death to the *use* of that personal protective equipment or linking Decedent's death to the *purposeful* allocation of personal protective equipment to other individuals.") (internal citations omitted) (emphasis in original); Lyons, 520 F. Supp. 3d at 1285–86 ("[T]here is only immunity for inaction claims when the failure to administer a covered countermeasure to one individual has a close causal relationship to the administration of that covered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

countermeasure to another individual.") (internal quotation marks omitted); see also Harris, 2022 U.S. Dist. LEXIS 111484, at *26 ("Plaintiff's lone allegation about mask usage in the FAC . . . . would only constitute one part of the story of the transfer and the resulting outbreak."). Moreover, Plaintiffs allegations that Gilbert "was assisted inside by two staff members who lacked proper PPE and therefore did not follow infection control protocols" occurred *after* Gilbert had already contracted COVID-19, which cannot form the basis for Plaintiffs' causes of action. (FAC ¶ 41–42.) Defendants themselves concede this. "[T]he alleged encounter when staff did not wear PPE[] could not have caused his COVID-19 because they occurred *after* he contracted it." (Supplemental Brief at 16 (emphasis in original).) Thus, Plaintiffs single allegation of Defendants' failure to follow guidelines concerning the use of PPE results from non-feasance and is insufficient to confer immunity on Defendants.

As this Court held in its prior Order, none of Defendants' actions giving rise to Plaintiffs' intentional infliction of emotional distress claim were taken pursuant to a "covered countermeasure." (Order on Supplemental Motion to Remand at 7.). Ronald alleges that Defendants intentionally inflicted emotional distress by asking him to take Gilbert to urgent care, despite knowing that doing so would pose serious risks of harm and death to Ronald. (FAC ¶¶ 78–79.) However, "[t]he foregoing conduct, i.e., asking Ronald to take his father to urgent care, did not result from or relate to the administration to or use by an individual of a 'covered countermeasure.'" (Order on Supplemental Motion to Remand at 7–8.)

For the aforementioned reasons, the Court finds Plaintiffs claims do not concern the administration or use of a "covered countermeasure." Thus, Defendants are not entitled to immunity under the PREP Act. See 42 U.S.C. § 247d-6d(a)(1). Moreover, "'because the Court finds that the administration or use of a covered countermeasure is not at stake in this case, Defendants can neither qualify as a program planner nor qualified person' under the PREP Act based on the FAC's allegations." Shah, 2022 U.S. Dist. LEXIS 215888, at *17 (quoting Crupi, 2022 U.S. Dist. LEXIS 28681, at *19.)

In their Request for Hearing, Defendants argue that "Plaintiffs cannot establish a causal link between the[] events [alleged] and Mr. Garcia's COVID-19." (Request for Hearing at 1.) Specifically, Defendants refer to an immunity test requiring "some type of causal relationship" in Hampton v. California, No. 22-15481, 2023 U.S. App. LEXIS 26135, at *18 (9th Cir. Oct. 3, 2023). (Id. at 3.) However, that "causal relationship" is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

only required when the allegations in the Complaint relate to the use or administration of a covered countermeasure. Hampton, 2023 U.S. App. LEXIS 26135, at *18 . As the Ninth Circuit stated, "[a]t the very least, then, for PREP Act immunity to apply, the underlying use or administration of a covered countermeasure must have played some role in bringing about or contributing to the plaintiff's injury. It is not enough that some countermeasure's use could be described as relating to the events underpinning the claim in some broad sense." Id. As stated above, Plaintiffs' allegations in this case are for failure to implement appropriate infection control measures or follow local or public health guidelines in preparing for and preventing COVID-19 spread. (FAC ¶ 33.) In their Request for Hearing, Defendants failed to meaningfully distinguish the several cases cited above, which held that failure to implement infection control measures are not "covered countermeasures" and the mere mention of COVID-testing or PPE does not warrant a different result. Rather, Defendants attempt to distinguish only a small subset of cases based on the fact that they were appealed and affirmed by the Ninth Circuit only on jurisdictional grounds. (Request for Hearing at 4.) But Defendants fail to cite any authority that distinguishes the definition of "covered countermeasures" for jurisdictional and immunity purposes. (See generally id.) Thus, Defendants still fail to show how Plaintiffs' allegations in the FAC constitute a "covered countermeasure" under the PREP Act.

Additionally, Defendants claim that failing to wear gloves or a gown when administering Gilbert's medication and eye drops is a "quintessential claim of improper administration." (Id. at 2.) To support their assertion, Plaintiffs cite an out-of-circuit Kansas Court of Appeals case, M.T. v. Walmart Stores, 63 Kan. App. 2d 401 (2023). However, that case is inapposite because the administration of a COVID-19 vaccine, which is a covered countermeasure, was at issue. Here, Plaintiffs do not allege the administration or non-administration of a vaccine. Moreover, the Kansas Appellate Court held that the case involved the improper administration rather than the non-administration of the COVID-19 vaccine because the vaccine was actually administered but given to a minor without parental consent. Id. at 416–17. The facts in M.T. are thus unrelated to the facts in this case, which does not involve the administration of any vaccine or other covered countermeasure.

      B.    *Intentional Infliction of Emotional Distress Claim*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

Defendants also seek to dismiss Ronald's intentional infliction of emotional distress claim. To state a claim for intentional infliction of emotional distress under California law, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009)). "Even assuming that Defendants' actions can be considered extreme or outrageous, there are no allegations in the Complaint that Defendants acted with intent or reckless disregard for the probability of causing emotional distress." Campbell v. Carnival Corp., No. CV 21-266, 2021 U.S. Dist. LEXIS 222390, at *11 (C.D. Cal. Nov. 16, 2021). Although Defendants were allegedly aware that Gilbert was exhibiting COVID-19 symptoms and allegedly knew that a staff member had tested positive for COVID-19, Defendants still called Ronald and suggested he take Gilbert to urgent care. (FAC ¶¶ 40, 78.) While doing so may have "put Ronald at risk to COVID-19 exposure due to [Gilbert's] symptoms and the presence of COVID-19 positive person(s) in the facility," it is implausible on the facts alleged that Defendants requested Ronald to take Gilbert to urgent care with any intent or reckless disregard to inflict severe emotional distress on him. (Id. ¶ 41.) Plaintiffs conclusory statement that "Defendants engaged in conduct alleged herein with reckless disregard as to whether it would cause extreme emotional distress to Ronald" is not sufficient to survive a motion to dismiss. (Id. ¶ 81.)

Defendants also argue that "Plaintiffs merely allege that Ronald Garcia 'suffered severe emotional distress,' without explanation or detail." (Mot. at 40.) Defendants contend that "[t]his threadbare and conclusory allegation is insufficient, and Plaintiffs' [intentional infliction of emotional distress] claim should be dismissed." (Id.) The Court agrees. Ronald merely states that he "suffered severe emotional distress due to being exposed to a COVID-19 infected individual." (FAC ¶ 82.) But the FAC does not include any allegations describing the degree or nature of Ronald's emotional stress beyond the conclusory allegation that he suffered severe emotional distress. Thus, the FAC is deficient in alleging severe emotional distress as well.

Accordingly, the Court dismisses Defendants third cause of action with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-02250-JVS (KESx) | Date | November 15, 2023 |
| Title | Gilbert Garcia et al. v. Welltower OpCo Group LLC et al. | | |

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES in part** and **GRANTS in part** the motion to dismiss. The Court **DENIES** the motion to dismiss the first and second causes of action because the Court finds that Defendants are not entitled to immunity under the PREP Act. The Court **GRANTS** the motion to dismiss the third cause of action with leave to amend. Plaintiffs shall have thirty (30) days' leave to amend the third cause of action.

**IT IS SO ORDERED.**